UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

| | |
|---|---|
| Psychic Readers Network, Inc., | CASE NO. 24-CV-8155 |
| Plaintiff, | |
| v. | Complaint for Copyright and Trademark Infringement |
| | DEMAND FOR JURY TRIAL |
| A&E Television Networks, LLC and Hillionaire Productions, LLC, | |
| Defendants. | |

------------------------------------------------------X

Plaintiff Psychic Readers Network, Inc. ("PRN"), by their attorneys, Dichter Law LLC, for its complaint against Defendants A&E Television Networks, LLC ("A&E") and Hillionaire Productions, LLC ("Hillionaire") (collectively "Defendants") alleges as follows:

### Jurisdiction and Venue

1. This action arises under the United States Copyright Act, 17 U.S.C. §101 et seq., and New York law as to unfair competition and defamation.

2. Jurisdiction of the subject matter of this action is conferred on this Court by 28 U.S.C. §§1331, 1338, and 1367.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391 and 1400.

### The Parties

4. Plaintiff Psychic Readers Network, Inc. ("PRN") is a corporation organized and existing under the laws of the State of Delaware, with it primary place of

business in Ft. Lauderdale, FL. PRN operates a business offering psychic-related services and products to the public including the production of television commercials, services and products featuring the psychic known as "Miss Cleo". PRN offered or offers services through a number of wholly-owed subsidiaries and affiliates including: (1) Radar Communications, Inc. ("Radar"), a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Ft. Lauderdale FL, and (2) Oshun 5 Communications, Inc. ("Oshun"), a corporation organized and existing under the laws of the State of Florida. PRN is the holder of copyrights (including copyrights assigned to PRN by Radar) and trademarks (including trademarks assigned to PRN by Oshun) pertaining to the production of marketing materials, advertisements, products, promotions and services related to "Miss Cleo" visual, artistic and written works.

  5. Plaintiff is informed and believes, and thereon alleges, that Defendant A&E is a limited liability corporation organized and existing under laws of the State of Delaware with its principal office located in New York, New York.  A&E is the owner of several brands, including Lifetime.  A&E produces, sells, distributes and streams media throughout the United States, internationally, in the State of New York and within the district, including a film entitled "Miss Cleo: Her Rise and Fall."

  6. Plaintiff is informed and believes that Defendant Hillionaire is a limited liability corporation organized and existing under the laws of the State of Florida with its primary places of business in Casselberry, Florida.  Plaintiff is further informed and believes that Defendant Hillionaire is responsible for the creation and production of films and other media, including Miss Cleo: Her Rise and Fall.

Background Facts

7. In the 1990's, Plaintiff commenced offering psychic reading services over the telephone. Plaintiff's business grew over the years and generated hundreds of millions of dollars in revenue through the sale of pay-per-call services and products.

8. In or about the late-1990's, Youree Dell Harris became one of many psychic advisors on the telephone for psychic services offered by Plaintiff ("Ms. Harris"). Plaintiff advised psychic advisors for its services that they were looking for technical assistance on accurately utilizing tarot cards in marketing media. Plaintiff ultimately selected Ms. Harris to provide the assistance. Thereafter, Plaintiff decided to test Ms. Harris to be a spokesperson for the business. Plaintiff then, through various iterations, created the Miss Cleo persona, portrayed by Ms. Harris, including Plaintiff coining the name that became known to the world as "Miss Cleo". Plaintiff retained all worldwide rights, title and interest to the Miss Cleo mark and associated copyrights.

9. Commencing in or around 2000, Plaintiff created television commercials, infomercials, press relations, campaigns, radio spots, books, tarot cards and numerous other materials all featuring the Miss Cleo ("Miss Cleo Creatives") character, portrayed by Ms. Harris, promoting its psychic service and products. Plaintiff selected Ms. Harris's wardrobe, set design, dialect and wrote the scripts and otherwise was entirely responsible for the "look," "feel" and "sound" the public associates with Miss Cleo (collectively the "Look"). Plaintiff disseminated the Miss Cleo Creatives nationwide and was entitled to all revenues arising therefrom. Plaintiff spent in excess of $100 million in advertising and promoting their services through the Miss Cleo Creatives.

10. The frequency of the commercials airing by Plaintiff on television was so prevalent that the Miss Cleo persona became famous. The Miss Cleo persona is so famous that the commercials were parodied on Saturday Night Live, (by Tracy Morgan and Will Ferrell), MAD TV (by Leona Campbell) and the Dave Chappelle show among others. More recently, the Miss Cleo character was used by General Mills, LVMH and Take Two interactive to promote products. PRN sought to protect its IP rights in each instance.

11. Pursuant to a series of agreements in which Ms. Harris was represented by Attorney William J. Cone (who is listed as an executive producer of the Film), Ms. Harris was paid a fee for her participation and held no rights whatsoever to the Miss Cleo trademark or Miss Cleo Creatives. Any services performed by Ms. Harris for Plaintiff were works for hire. Per the Agreement, Ms. Harris had no right to utilize the Miss Cleo character in any fashion. Ms. Harris passed away in July, 2016.

12. Radar obtained two copyright registrations for Miss Cleo Creatives, See Exhibit 1 hereto. The Miss Cleo Creatives, including a tarot deck, book and other materials, were registered on August 7, 2002. The copyright registrations have been assigned to Plaintiff PRN. See Exhibit 2.

13. Plaintiff PRN produced countless copyrighted television commercials and infomercials featuring the Miss Cleo Look. PRN is the holder of a seven registered copyright for Miss Cleo Creatives. See Exhibit 3. The Miss Cleo Creatives contain copyright notices of PRN reserving all rights.

14. Oshun 5 Communications, Inc. ("Oshun") applied for registration of the mark "Miss Cleo" with the United States Patent and Trademark Office with a date of first

use of July 3, 2000 (Serial No. 98201700).  ("the Mark"). Ms. Harris consented to the registration of the trademark by Oshun and acknowledged that all ownership rights in the trademark "Miss Cleo" belong to Oshun.  See Exhibit 4. Oshun has assigned all rights to the "Miss Cleo" Mark to PRN.

15. Plaintiff is informed and believes that Defendants produced and began distributing the film "Miss Cleo: Her Rise and Fall" ("the Film") in the United States commencing with the release of an official trailer on July 16, 2024 and the prime time premier of the Film on the Lifetime Network on August 10, 2024. Lifetime Network is owned by Defendant A&E.

16. According to USTVDB, the Film debuted to an audience of 398,000, which exceeds Lifetime purported normal primetime audience by 33%.  The Film remains available for rent or purchase through various outlets including Amazon Prime.

17. The Film freely copies and recreates Plaintiff's copyrighted materials including, but not limited to, use of the look and feel of Plaintiff's television commercials including the Miss Cleo character's appearance, dress and tag lines such as "Call Me Now".

18. The copying of the Miss Cleo copyrighted materials by Defendants was at all times, and is, without the authorization or permission of Plaintiff.

19. The Film is marketed by Defendants as telling the true story.  Nothing could be further from the truth.  The Film is replete with false statements and inaccuracies.  For example, Plaintiff was not found to violate any laws and resolved any actions related to the Miss Cleo brand without any admission of wrongdoing.  Ms. Harris never worked in a on-premises call center as portrayed in the film, never was asked to

read from or provided scripts to use in speaking with customers, and she did not create or have any rights in the Miss Cleo character. Further, contrary to the assertion in the Film, Plaintiff worked at all times to protect Ms. Harris.

20. The Film has been repeatedly published to hundreds of thousands of viewers, if not millions globally.

21. The Film uses actual names of the Company and its officers, despite including the usual disclaimer at the end of the Film of not using real names and being fictionalized. The false portrayal of an officer of PRN as a drunken, ruthless Wall Street CEO is totally inaccurate and offensive. There are countless examples of falsehoods throughout the Film.

22. The Film uses Plaintiff's intellectual property related to the Miss Cleo Creatives and Mark without consent.

23. Plaintiff provided a DMCA notice to Defendant A&E pursuant to the instructions provided on the A&E homepage. No response has been received.

24. The actions of Defendants have created actual harm to the Plaintiff and to its reputation and rise to the level of "per se" harm.

## COUNT I

### FOR COPYRIGHT INFRINGEMENT
### PURSUANT TO 17 U.S.C §§ 106 and 501

25. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 24 as if fully stated herein.

26. Through their conduct as alleged herein, Defendants have infringed Plaintiff's copyrights in Plaintiff's Miss Cleo Creatives by reproducing, distributing, and making available to the public the infringing "Miss Cleo: Her Rise and Fall" production without authorization in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

27. Defendants' acts of infringement were willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

28. As a direct and proximate result of the infringement by Defendants, Plaintiff is entitled to damages in an amount to be proven at trial.

29. Plaintiff is also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

30. Alternatively, the Plaintiff is entitled to maximum statutory damages of $150,000 for each act of copyright infringement or such other amount as may be proper under 17 U.S.C. § 504 (c).

31. Plaintiff is further entitled to its attorney's fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

32. As a direct and proximate result of Defendants' acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis allege, that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in Plaintiff's Miss Cleo Creatives. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing and infringing conduct.

## COUNT II

## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. §1114)

33. Plaintiff's repeats and realleges the allegations set forth in Paragraphs 1 through 32 as if fully set forth herein.

34. Defendants' production, advertising, promotion, distribution, offering for sale and sale of the Film is likely to cause confusion, mistake or deception as to the source or sponsorship of the Infringing Film.

35. As a result of Defendants' unauthorized use of PRN's "Miss Cleo" Mark, consumers are likely to believe that the Infringing media has been approved by or is otherwise associated with Plaintiff.

36. Such usage falsely represents that Defendants are legitimately connected with and/or authorized by PRN and places beyond PRN's control its own reputation and ability to control the use of the "Miss Cleo" Mark and/or the quality of the program or services bearing the Mark.

37. Defendants' infringement of PRN's trademark is willful, intended to reap the benefit of the goodwill of PRN, and violates Section 32(1) of the Lanham Act, 15 U.S.C. §1114.

38. Defendants' conduct has caused and is causing irreparable injury to PRN and will continue to both damage PRN and deceive the public unless enjoined by this Court.

39. Defendants' aforementioned acts have been conducted willfully and intentionally, with deceptive intent, thereby making this an exceptional case under 15 U.S.C. §1117 and under common law.

## COUNT III

### NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES LAW

40. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 39 as if fully stated herein.

41. Defendants, without the consent of Plaintiff, intended to and did trade on the Miss Cleo Creatives willfully and in bad faith, misappropriated Plaintiff's business ideas and concepts by using them in the infringing material in commerce without Plaintiff's authorization or approval in a false and misleading manner.

42. Defendants' actions constitute unfair and deceptive acts in violations of the New York Unfair Competition Law.

43. As a result, Plaintiff has suffered and is entitled to injunction relief, an accounting of Defendant's profits, damages, punitive damages and costs.

## COUNT IV

### UNJUST ENRICHMENT

44. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 43 as if fully stated herein.

45. By using the Miss Cleo Creatives in the Film without paying Plaintiff, Defendants acquired a benefit from Plaintiff.

46. Defendant has retained the benefit under circumstances that would make it unjust and inequitable for Defendants to retain the benefits without paying Plaintiff for the value of the benefits acquired.

## COUNT V

## DEFAMATION

47. Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 46 as if fully stated herein.

48. The Film sets forth numerous false and misleading statements that portray Plaintiff and its officers in a false light.

49. PRN's CEO Steven Feder is portrayed as a drunk and ruthless wall street type. Mr. Feder does not even drink alcohol. Yet, rather than holding the Film out as a fiction, it is instead stated to be the "real story." PRN is defamed and harmed by such fabricated dialogue and portrayals of the Company and its officers.

50. It is represented that PRN was fined by a Federal Agency. This has no basis in fact, The actions were settled without any admission of wrongdoing.

51. The defamatory statements during the one-hour and twenty-four minute duration are too numerous to set forth. A sample of the defamatory statements are as follows:

   a. Falsely Alleges about Mr. Feder "Guy drunk at his home, fell down steps and died" and Feder "laughed" due to his "sick sense of honor;" The event never happened.

   b. Alleges Plaintiff's officers are "stupid and lazy;"

10

    c.    Manufactures the quote that an officer of Plaintiff stated as to Ms. Harris we "own her ass."

    d.    Alleges falsely that Plaintiff bills customers who's phones had been "disconnected months or years ago;"

    e.    States about Plaintiff's CEO, "he's an asshole."

52.    The Film stylized as a biopic is a commercial for profit enterprise that contains countless falsehoods, makes up events that never occurred, and portrays PRN in a false light.

53.    The false statements recklessly and willfully are disseminated without any regard to the actual truth thereof. No effort was made to contact Plaintiff or its representatives prior to filming and airing the Film.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1.    For statutory, compensatory and/or punitive damages in such amount as may be found, or as otherwise permitted by law;

2.    For an accounting of, and the imposition of constructive trust with respect to, Defendants' profits attributable to their infringements of Plaintiff's copyrights and Mark.

3.    For a preliminary and permanent injunction prohibiting Defendants, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from continuing to infringe Plaintiff's copyright and trademark in the Miss Cleo Creatives.

    4.      For the value of the benefits they have acquired from the use of the look and feel of the Miss Cleo Creatives;

    5.      For prejudgment interest according to law;

    6.      For Plaintiff's attorneys' fees, costs, and disbursements in this action;

    7.      For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

DATED:    Bedford Hills, New York
             October 26, 2024

                                      DICHTER LAW, LLC

                                      By:____/Joel R Dichter/____
                                      Joel R. Dichter, Esq.
                                      483 Cherry Street, Suite 100
                                      New York, NY 10507
                                      Telephone: (212) 593-4202
                                      Fax: (212) 994-5394

                                        Attorneys for Plaintiff