**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PSYCHIC READERS NETWORK, INC.<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>A&E TELEVISION NETWORKS, LLC AND<br>HILLIONAIRE PRODUCTIONS LLC,<br><br>　　　　　　Defendants. | Case No.:  1: 24-cv-08155-DEH |

**DEFENDANTS A&E TELEVISION NETWORKS, LLC AND HILLIONAIRE
PRODUCTIONS LLC'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

Scott J. Sholder, Esq.
CeCe M. Cole, Esq.
COWAN DEBAETS ABRAHAMS
& SHEPPARD, LLP
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Fax: (212) 974-8474

*Attorneys for Defendants A&E Television Networks,
LLC and Hillionaire Productions LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT & BACKGROUND .................................................................... 1

ARGUMENT .................................................................................................................... 2

I.    PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM (COUNT I) FAILS. .................. 3

  A.    Plaintiff Does Not Have Registrations for All the "Miss Cleo Creatives". ....................... 4

  B.    Plaintiff Fails to Plead the Essential Elements of Copyright Infringement. ...................... 4

    1.    Plaintiff Fails to State Which Works Were Infringed and How. ................................... 5

    2.    Plaintiff Fails to Plead Access to Any of the Miss Cleo Works. ................................... 6

    3.    Plaintiff Fails to Plead Substantial Similarity. ................................................................ 6

II.   PLAINTIFF'S LANHAM ACT CLAIM (COUNT II) FAILS. ........................................... 7

  A.    Plaintiff Does Not Have Standing to Bring a Claim under 15 U.S.C. § 1114. ................... 7

  B.    Plaintiff's Trademark Claim is Barred by *Rogers v. Grimaldi* and Its Progeny. ................ 8

    1.    Defendants Do Not Use "Miss Cleo" as a Source Identifier. ........................................ 9

    2.    The Title "Miss Cleo: Her Rise and Fall" is Artistically Relevant. ............................... 9

    3.    The Title "Miss Cleo: Her Rise and Fall" is Not Explicitly Misleading. ..................... 10

  C.    There Is No Likelihood of Confusion. ............................................................................... 11

    1.    Plaintiff Fails to Plead Likelihood of Confusion. ......................................................... 12

    2.    There is No Plausible Basis for a Likelihood of Confusion. ......................................... 13

  D.    Defendants are Protected by the Fair Use Doctrine. .......................................................... 15

III.  PLAINTIFF'S STATE LAW CLAIMS (COUNTS III & IV) ARE PREEMPTED. ........ 17

  A.    Plaintiff's N.Y. Gen. Bus. L. § 349 Claim is Preempted. .................................................. 17

  B.    Plaintiff's Unjust Enrichment Claim is Preempted. ........................................................... 18

IV.   PLAINTIFF'S DEFAMATION CLAIM (COUNT V) FAILS. ........................................ 19

  A.    The Defamation Claims About PRN are True or Inadequately Pled ................................. 19

    1.    Plaintiff Cannot Base its Defamation Claims on True Statements. ............................... 19

2.    All Other Claimed Defamatory Statements About PRN are Inadequately Pled...........21

B.    Plaintiffs Defamation Claims About Its Corporate Officers Fail. .....................................21

1.    Plaintiff Lacks Standing to Assert Defamation on Behalf of Corporate Officers. .......21

1.    Statements That are Not in the Film Cannot be a Basis for Defamation......................22

2.    Plaintiff Cannot Base Its Defamation Claims on Opinions or Hyperbole. ...................22

V.    PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND.................................25

CONCLUSION....................................................................................................................................25

# TABLE OF AUTHORITIES

Cases                                                                      Page(s)

*1-800 Contacts, Inc. v. JAND, Inc.*,
   608 F. Supp. 3d 148 (S.D.N.Y. 2022) ................................................................. 7

*Afftrex, Ltd. v. Gen. Elec. Co.*,
   161 A.D.2d 855 (3d Dep't 1990) ....................................................................... 22

*Ahmed v. GEO USA LLC*,
   2015 WL 1408895 (S.D.N.Y. Mar. 27, 2015) .................................................... 13

*AM Gen. LLC v. Activision Blizzard, Inc.*,
   450 F. Supp. 3d 467 (S.D.N.Y. 2020) ............................................................... 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 3, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 2, 12

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d. Cir. 2004) ...................................................................... 17, 18

*Brown v. Showtime Networks, Inc.*,
   394 F. Supp. 3d 418 (S.D.N.Y. 2019) ....................................................... 9, 10, 11

*CarFreshner Corp. v. S.C. Johnson & Son, Inc.*,
   70 F.3d 267 (2d Cir. 1995) .............................................................................. 15

*Castro v. Cusack*,
   2019 WL 3385218 (E.D.N.Y. July 26, 2019) ..................................................... 6

*Celle v. Filipino Rep. Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000) ............................................................................ 23

*Cole v. John Wiley & Sons*,
   2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) .................................................... 5, 6

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
   125 F.3d 28 (2d Cir. 1997) .......................................................................... 16, 17

*Crawford v. Franklin Credit Mgmt. Corp.*,
   758 F.3d 473 (2d Cir. 2014) ............................................................................ 17

*Cuoco v. Moritsugu,*
  222 F.3d 99 (2d Cir. 2000) ............................................................................ 25

*DeClemente v. Columbia Pictures Indus., Inc.,*
  860 F. Supp. 30 (E.D.N.Y. 1994) ................................................................. 14

*DiFolco v. MSNBC Cable L.L.C.,*
  622 F.3d 104 (2d Cir. 2010) ............................................................................. 3

*Dillon v. City of New York,*
  261 A.D.2d 34 (1st Dep't 1999) ......................................................... 19, 21, 24

*Down to Earth Organics, LLC v. Efron,*
  2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024) ................................................ 9

*Erickson v. Pardus,*
  551 U.S. 89, (2007) .......................................................................................... 2

*Fairstein v. Netflix, Inc.,*
  553 F. Supp. 3d 48 (S.D.N.Y. 2021) ..................................................... 22, 24, 25

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.,*
  726 F.3d 62 (2d Cir. 2013) ............................................................................... 8

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.,*
  2011 WL 4005321 (S.D.N.Y. Sept. 1, 2011) .................................................. 8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991) ......................................................................................... 4

*Fizz Soc. Corp. v. Flower Ave, Inc.,*
  2024 WL 4264842 (S.D.N.Y. Aug. 5, 2024) ................................................ 16

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC,*
  586 U.S. 296 (2019) ......................................................................................... 4

*Ganske v. Mensch,*
  480 F. Supp. 3d 542 (S.D.N.Y. 2020) ........................................................... 23

*Gayle v. Allee,*
  2021 WL 120063 (S.D.N.Y. Jan. 13, 2021) .................................................. 15

*Georgia Malone & Co. v. Rieder,*
  19 N.Y.3d 511 (2012) ..................................................................................... 18

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
   590 F. Supp. 2d 625 (S.D.N.Y. 2008)...................................................................13

*Grgurev v. Licul*,
   229 F. Supp. 3d 267 (S.D.N.Y. 2017).....................................................................8

*Gross v. N.Y. Times Co.*,
   82 N.Y.2d 146 (1993)............................................................................................23

*Gruner + Jahr USA Pub. v. Meredith Corp.*,
   991 F.2d 1072 (2d Cir. 1993).................................................................................12

*Intellect Art Multimedia, Inc. v. Milewski*,
   24 Misc. 3d 1248(A) (Sup. Ct. 2009) ....................................................................23

*JA Apparel Corp. v. Abboud*,
   568 F.3d 390 (2d Cir. 2009)...................................................................................16

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
   599 U.S. 140 (2023)................................................................................................9

*Jacob v. Lorenz*,
   626 F. Supp. 3d 672 (S.D.N.Y. 2022)............................................................19, 25

*Jacobs v. Carnival Corp.*,
   2009 WL 856637 (S.D.N.Y. Mar. 25, 2009) ..........................................................5

*JTH Tax LLC v. AMC Networks, Inc.*,
   694 F. Supp. 3d 315 (S.D.N.Y. 2023)..........................................................9, 10, 15

*Kaplan v. Stock Mkt. Photo Agency, Inc.*,
   133 F. Supp. 2d 317 (S.D.N.Y. 2001)......................................................................5

*Kelly v. L.L. Cool J.*,
   145 F.R.D. 32 (S.D.N.Y. 1992) ...............................................................................5

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006)...................................................................................22

*Klauber Bros., Inc. v. QVC, Inc.*,
   2020 WL 7029088 (S.D.N.Y. Nov. 30, 2020)........................................................6

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004)...............................................................................................15

*Kregos v. Assoc. Press*,
    3 F.3d 656 (2d Cir. 1993) ................................................................................ 5

*Leidig v. BuzzFeed, Inc.*,
    371 F. Supp. 3d 134 (S.D.N.Y. 2019) .......................................................... 19

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
    83 F. Supp. 3d 501 (S.D.N.Y. 2015) ............................................................. 5

*Lopez v. Adidas Am., Inc.*,
    2020 WL 2539116 (S.D.N.Y. May 19, 2020) ........................................... 7, 15

*Lopez v. Nike, Inc.*,
    2021 WL 128574 (S.D.N.Y. Jan. 14, 2021) ................................................ 12

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't, Inc.*,
    868 F. Supp. 2d 172 (S.D.N.Y. 2012) .................................................. passim

*Marks v. Energy Materials Corp.*,
    2015 WL 3616973 (S.D.N.Y. June 9, 2015) ............................................... 19

*Marvullo v. Gruner & Jahr*,
    105 F.Supp.2d 225 (S.D.N.Y. 2000) .............................................................. 3

*McDonald v. West*,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015) ........................................................... 7

*Medina v. Dash Films, Inc.*,
    2016 WL 3906714 (S.D.N.Y. July 14, 2016) .............................. 3, 7, 9, 11

*Miller v. Richman*,
    184 A.D.2d 191 (4th Dep't 1992) ........................................................... 24, 25

*Monbo v. Nathan*,
    623 F. Supp. 3d 56 (E.D.N.Y. 2022) ........................................................... 25

*Myrieckes v. Woods*,
    2009 WL 884561 (S.D.N.Y. Mar. 31, 2009) ......................................... 18, 25

*OffWhite Prods., LLC v. Off-White LLC*,
    480 F. Supp. 3d 558 (S.D.N.Y. 2020) ............................................. 12, 13, 14

*Olivet Univ. v. Newsweek Digital LLC*,
    2024 WL 1892563 (S.D.N.Y. Apr. 30, 2024) ......................................... 19, 21

*O'Loughlin v. Patrolmen's Benev. Ass'n of City of N.Y., Inc.*,
    178 A.D.2d 117 (1st Dep't 1991) ........................................................... 23

*Outhouse PR, LLC v. Northstar Travel Media, LLC*,
    2020 WL 2512092 (S.D.N.Y. May 15, 2020) ........................................ 16

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010) ............................................................... 3, 7

*Pickett v. Migos Touring, Inc.*,
    420 F. Supp. 3d 197 (S.D.N.Y. 2019) ................................................ 3, 7

*Piuggi v. Good for You Prods. LLC*,
    2024 WL 3274638 (S.D.N.Y. July 2, 2024) ............................................ 7

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961) .......................................................... 11, 13

*Pub. Free Will Corp. v. Verizon Commc'ns Inc.*,
    2017 WL 1047330 (E.D.N.Y. Mar. 17, 2017) ........................................ 13

*Rodriguez v. Redbubble, Inc.*,
    2023 WL 6294180 (S.D.N.Y. Sept. 27, 2023) ........................................ 19

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ....................................................... 8, 9, 11

*Savitt v. Vacco*,
    1998 WL 690939 (N.D.N.Y. Sept. 28, 1998) ........................................ 24

*Seljak v. Pervine Foods, LLC*,
    2023 WL 2354976 (S.D.N.Y. Mar. 3, 2023) ........................................ 16

*Spin Master v. Aciper*,
    2022 WL 992888 (S.D.N.Y. Apr. 1, 2022) ...................................... 13, 14

*Star Indus., Inc. v. Bacardi & Co.*,
    412 F.3d 373 (2d Cir. 2005) .......................................................... 12, 13

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
    588 F.3d 97 (2d Cir. 2009) .............................................................. 13

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017) ............................................................ 19

*Thea v. Kleinhandler*,
  807 F.3d 492 (2d Cir. 2015) ................................................................. 25

*Tiffany (NJ) Inc. v. eBay Inc.*,
  600 F.3d 93 (2d Cir. 2010) ................................................................... 16

*Torres v. CBS News*,
  1995 WL 810041 (N.Y. Sup. Ct. Oct. 11, 1995) ................................... 24

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*,
  155 F. Supp. 2d 1 (S.D.N.Y. 2001) ...................................................... 18

*Twentieth Century Fox Television v. Empire Dist., Inc.*,
  875 F.3d 1192 (9th Cir. 2017) ............................................................... 8

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
  996 F.2d 1366 (2d Cir. 1993) ............................................................... 10

*U.S. Shoe Corp. v. Brown Grp., Inc.*,
  740 F. Supp. 196 (S.D.N.Y. 1990) ....................................................... 15

*We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.)*,
  221 F. Supp. 3d 396 (S.D.N.Y. 2016) ............................................ 17, 18

*Williams v. Varig Brazilian Airlines*,
  169 A.D.2d 434 (1st Dep't 1991) ......................................................... 24

*Wolstenholme v. Hirst*,
  271 F. Supp. 3d 625 (S.D.N.Y. 2017) .................................................... 3

Statutes

15 U.S.C. § 1114 .......................................................................... 2, 7, 8, 12
15 U.S.C. § 1115 ...................................................................................... 8
15 U.S.C. § 1115(b)(4) ........................................................................... 15
15 U.S.C. § 1127 ...................................................................................... 8
15 U.S.C. § 1127(1)(A) ........................................................................... 12
17 U.S.C. § 102 ...................................................................................... 18
17 U.S.C. § 102(b) ................................................................................. 18
17 U.S.C. § 106 ................................................................................. 4, 18
17 U.S.C. § 301(a) ................................................................................. 17
17 U.S.C. § 411(a) ................................................................................... 4
N.Y. Gen. Bus. L. § 349 .................................................................... 17, 18

Rules

Fed. R. Civ. P. 8 ................................................................................................ 2, 3, 5
Fed. R. Civ. P. 12 ............................................................................................... 3, 25
New York CPLR 3016(a) .......................................................................................... 21

Other Authorities

Compendium of U.S. Copyright Office Practices § 1904.3 (3d ed. 2021) ..................................... 6

Defendants A&E Television Networks, LLC ("AETN") and Hillionaire Productions LLC ("Hillionaire", together with AETN, "Defendants") hereby move to dismiss Plaintiff Psychic Readers Network, Inc.'s ("Plaintiff" or "PRN") Complaint ("Compl.", ECF 1).

## PRELIMINARY STATEMENT & BACKGROUND

Defendant Hillionaire is the creator and producer of "Miss Cleo: Her Rise and Fall" ("Film") which, based on true events, tells the story of single mother Youree Harris who took a job as a psychic advisor at the Psychic Readers Network—only to become one of the network's most beloved TV personalities, her "psychic" character, Miss Cleo. (*See* Compl. ¶ 8). But when the Federal Trade Commission ("FTC") charged Plaintiff with deceptive advertising, billing, and collection practices, Miss Cleo suddenly found herself with bad fortune. (*See id.* ¶ 50; Declaration of Scott J. Sholder, Ex. A (FTC press release).) The Film aired on Lifetime®, one of the networks of AETN, on August 10, 2024. (*See* Compl. ¶ 15.)

Plaintiff allegedly "operates a business offering psychic-related services and products to the public including the production of television commercials, services and products featuring the psychic known as 'Miss Cleo.'" (Compl. ¶ 4.) Plaintiff claims responsibility for creating the "Miss Cleo" character, who is known for her hallmark "wardrobe, set design, [and] dialect." (*See id.* ¶¶ 8-9.) By assignment, Plaintiff claims to own copyright registrations to a tarot card deck ("Miss Cleo Tarot Cards") and a book titled *Keepin' It Real: A Practical Guide for Spiritual Living* by Miss Cleo ("Miss Cleo Book"). (*Id.* ¶ 12; *see* ECF 1-1, 1-2.) Plaintiff also claims to hold a copyright registration for the video, *The Gifts of Miss Cleo: From My Heart to Yours* ("Miss Cleo Video"). (Compl. ¶ 13; ECF 1-3.) Plaintiff further claims its affiliate, Oshun 5 Communications, Inc., "applied for registration of the mark 'Miss Cleo'" with the U.S. Patent and Trademark Office (Serial No. 98201700) and assigned the rights to Plaintiff. (*Id.* ¶¶ 4, 14.)

The Complaint consists of five counts, but as shown below, they cannot proceed because Plaintiff does not state any claims for which relief can be granted. Plaintiff's copyright infringement claim fails because PRN does not have copyright registrations for most of the works it claims were infringed, and Plaintiff does not even satisfy the basic pleading requirements for copyright infringement under Rule 8. The trademark infringement claim fails because the statutory provision Plaintiff cites—15 U.S.C. § 1114—requires Plaintiff to have a registered trademark at the time of filing, which Plaintiff did not. Additionally, Defendants' use of the name "Miss Cleo" in the Film's title is squarely protected by the binding *Rogers v. Grimaldi* decision, and in any event, Plaintiff does not and cannot allege a likelihood of confusion. Defendants' use of the phrase "Miss Cleo" in the Film's title is also not being used as a source identifier and constitutes fair use. Plaintiff's state law claims are preempted by the copyright claim. Plaintiff does not have standing to bring a defamation claim on behalf of its corporate officer, and statements about a CEO cannot be imputed to his company. And in any event, the allegedly defamatory statements are either hyperbole or opinion, or are true, and therefore not defamatory.

If Plaintiff really did have a crystal ball, it would already know an order dismissing its Complaint is in its future.

## **ARGUMENT**

Plaintiff's Complaint fails to satisfy even the most basic pleading standards under Federal Rule 8(a)(2), which is designed "to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true ...." *Id.* at 555. While generally "[s]pecific facts are not necessary," *Erickson v. Pardus*, 551 U.S. 89, 93, (2007),

"[b]road, sweeping allegations of infringement do not comply with Rule 8," *Marvullo v. Gruner & Jahr,* 105 F.Supp.2d 225, 230 (S.D.N.Y. 2000); "legal conclusions" need not be accepted as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plaintiff's Complaint fails to "state a claim to relief that is plausible on its face" under Rules 8 and 12, nor could it ever. *Id.*[1]

## I.    PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM (COUNT I) FAILS.

Plaintiff's Complaint (1) does not identify most of the works it claims were infringed, let alone allege they are registered; (2) fails to allege access to, or copying of, any of its works; and (3) fails to allege substantial similarity. While a motion to dismiss is generally confined to the pleadings, a court may "consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken." *Wolstenholme v. Hirst,* 271 F. Supp. 3d 625, 633 (S.D.N.Y. 2017); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). In a copyright case, the works at issue "although not attached to the complaint, are incorporated by reference" and may be considered on a motion to dismiss. *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 206 (S.D.N.Y. 2019); *see also Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("[The works themselves supersede and control contrary descriptions of them[.]"); *cf. Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *4 (S.D.N.Y. July 14, 2016) (considering films in trademark action).

Here, the Court may consider (a) Defendants' Film (Sholder Ex. B); (b) the Miss Cleo Tarot Cards (Sholder Ex. C); and (c) the Miss Cleo Book (Sholder Ex. D). Plaintiff purports to have copyright registrations in the latter two works. (*See* ECF 1-1, 1-2.)

---

[1] Citations and quotations are omitted from, and emphasis added to, all citations herein unless otherwise indicated.

A.    <u>**Plaintiff Does Not Have Registrations for All the "Miss Cleo Creatives".**</u>

As a threshold matter, the Supreme Court has clarified that, per 17 U.S.C. § 411(a), a plaintiff must "apply for registration and receive the Copyright Office's decision on [the] application before instituting suit." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 308 (2019). Of the seemingly numerous works Plaintiff claims have been infringed, Plaintiff only offers up three registration certificates. (*See* ECF 1-1, 1-3.)

Plaintiff claims "Defendants have infringed copyrights in Plaintiff's so-called "Miss Cleo Creatives" by reproducing, distributing, and making the Film available to the public.[2] (Compl. ¶ 26.) Per the Complaint, the "Miss Cleo Creatives" include "television commercials, infomercials, press relations, campaigns, radio spots, books, tarot cards and numerous other materials all featuring the Miss Cleo [] character" supposedly created by Plaintiff. (*Id.* ¶ 9.) Despite this long list, Plaintiff only provides copyright registrations covering the (1) Miss Cleo Book (ECF 1-1); (2) Miss Cleo Tarot Cards (*id.*); and (3) Miss Cleo Video (ECF 1-3) (collectively, the "Miss Cleo Works"). Accordingly, as a matter of law, Plaintiff can only claim copyright infringement as to the Miss Cleo Works; its claims as to the remaining unspecified "Miss Cleo Creatives", including the character herself, cannot survive. *See Fourth Estate Pub.*, 586 U.S. at 299.  But the claims regarding the Miss Cleo Works also fail on the merits as set forth below.

B.    <u>**Plaintiff Fails to Plead the Essential Elements of Copyright Infringement.**</u>

Aside from registration, to prove copyright infringement, Plaintiff must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of that work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Absent the "rare scenario" of direct evidence of copying—and, here, Plaintiff does not accuse Defendants of

---

[2] Making a work available to the public is not an exclusive right under the Copyright Act. *See* 17 U.S.C. § 106.

actually copying any particular work, much less provide any evidence thereof—to prove actionable copying, Plaintiff must show that Defendants "had access to the copyrighted work," and that there is "substantial similarity of protectable material in the two works." *Kaplan v. Stock Mkt. Photo Agency, Inc*., 133 F. Supp. 2d 317, 321 (S.D.N.Y. 2001) (quoting *Kregos v. Assoc. Press*, 3 F.3d 656, 662 (2d Cir. 1993)). To satisfy Rule 8, Plaintiff also must plead "which specific original works are the subject of the copyright claim," and "by what acts and during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994); *see also Jacobs v. Carnival Corp.*, 2009 WL 856637, at *4 (S.D.N.Y. Mar. 25, 2009). Assuming, solely for purposes of this motion, that Plaintiff owns valid copyrights in the Miss Cleo Works, Plaintiff's claim fails all the remaining material elements.

1.    Plaintiff Fails to State Which Works Were Infringed and How.

*First*, besides the Miss Cleo Works, Plaintiff does not identify any other purportedly copyrighted works, and instead claims, without elaboration, that the Film somehow infringes the "Miss Cleo Creatives." (Compl. at ¶ 9.) Even if these works were registered, this vague list does not give Defendants notice under Rule 8 of what exactly Plaintiff claims is infringed. *See, e.g.*, *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 507-09 (S.D.N.Y. 2015); *Cole v. John Wiley & Sons*, 2012 WL 3133520, at *11-14 (S.D.N.Y. Aug. 1, 2012); *Kelly*, 145 F.R.D. at 36.

*Second*, even though Plaintiff has copyright registrations for the Miss Cleo Works, Plaintiff fails to allege how and when Defendants infringed them. *See Kelly*, 145 F.R.D. at 36. Beyond Plaintiff's vague assertions that the "Defendants have infringed copyrights in Plaintiff's Miss Cleo Creatives by reproducing, distributing, and making available to the public the infringing [Film] production without authorization" (Compl. ¶ 26), Plaintiff has failed to plead any facts alleging that the Miss Cleo Works actually appeared in the Film, let alone where or during what time the

infringement occurred. (*See generally* Compl. & Sholder Ex. B.) Plaintiff could have included

demonstrative screenshots from the Film showing the reproduction of any of the Miss Cleo Works

if such a thing happened; the absence of such simple proof speaks volumes. *See, e.g.*, *Cole*, 2012

WL 3133520, at *13 (S.D.N.Y. Aug. 1, 2012).

        2.    <u>Plaintiff Fails to Plead Access to Any of the Miss Cleo Works.</u>

**First**, the Complaint does not allege that Defendants had access to any of the Miss Cleo

Works. This is fatal to Plaintiff's claim "as a matter of law." *Klauber Bros., Inc. v. QVC, Inc.*,

2020 WL 7029088, at *8 (S.D.N.Y. Nov. 30, 2020).

**Second**, with respect to the Miss Cleo Video, Plaintiff fails to demonstrate that the work was

ever published. Plaintiff's registration for the Miss Cleo Video lists no publication date, (*see* ECF

1-3), whereas the registrations for the Miss Cleo Book and Miss Cleo Tarot Cards do. (*See* ECF

1-1 (both published "2001-10-31").) "As a general rule, if the applicant…fails to provide a date of

first publication in the application, the Office will register the work as an unpublished work, unless

the information provided…clearly indicates that the work has been published." *See* Compendium

of U.S. Copyright Office Practices § 1904.3 (3d ed. 2021), *available at*

https://www.copyright.gov/comp3/chap1900/ch1900-publication.pdf. There is no mention—

either in the Complaint or in the copyright registration—that the Miss Cleo Video was ever

published. It stands to reason, then, that Defendants did not have access to it, which is likely why

PRN did not plead access. (*See generally* Compl.) *See Castro v. Cusack*, 2019 WL 3385218, at *7

(E.D.N.Y. July 26, 2019) (claim dismissed where plaintiff could not show access or substantial

similarity; "unpublished works" are "considered not to have been widely disseminated").

        3.    <u>Plaintiff Fails to Plead Substantial Similarity.</u>

Finally, Plaintiff does not plead any specific instances of copying and does not claim

substantial similarity between the Film and any of the Miss Cleo Works. (*See generally*, Compl.)

While the Court "need not decide whether [Plaintiff] has pleaded substantial similarity" because PRN "has failed to plead access," *see Piuggi v. Good for You Prods. LLC*, 2024 WL 3274638, at *9 (S.D.N.Y. July 2, 2024), if the Court reviews the Film, it will see that the Film depicts completely different tarot cards and contains minimal passing references to Miss Cleo's book and her desire to write another one. (*See* Sholder Ex. B at 01:29-03:30, 20:05, 21:30, 22:40-22:50, 23:01-23:03, 24:22-26:19, 48:13-48:19 (showing generic Medieval-themed tarot cards); 40:54, 59:51 (general references to a book written by Miss Cleo), 41:16 (Miss Cleo wanting to write "more books").) *See Pickett*, 420 F. Supp. 3d at 206; *McDonald v. West*, 138 F. Supp. 3d 448, 453 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016); *Gaito*, 602 F.3d at 64; *Medina*, 2016 WL 3906714, at *4.

## II.    PLAINTIFF'S LANHAM ACT CLAIM (COUNT II) FAILS.

To prevail on a trademark infringement claim under Section 32 of the Lanham Act, 15 U.S.C. § 1114, "the plaintiff must (1) demonstrate that its mark is protected, and (2) that the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods." *1-800 Contacts, Inc. v. JAND, Inc.*, 608 F. Supp. 3d 148, 154 (S.D.N.Y. 2022), *aff'd*, 119 F.4th 234 (2d Cir. 2024). Plaintiff's trademark infringement claim fails for lack of standing and on the legal merits.

### A.    Plaintiff Does Not Have Standing to Bring a Claim under 15 U.S.C. § 1114.

As a matter of law, Plaintiff fails to state a claim for trademark infringement under 15 U.S. § 1114 because PRN did not have a registered trademark at the time it filed the Complaint. The Complaint refers to an *application* ("Serial No. 98201700") for the MISS CLEO mark ("Miss Cleo Mark"), not a registration. (*See* Compl. ¶ 14.) Publicly available USPTO records of which the Court may take judicial notice, *Lopez v. Adidas Am., Inc.*, 2020 WL 2539116, at *6 (S.D.N.Y. May 19, 2020), confirm that the Miss Cleo Mark only achieved registration on January 7, 2025,

which is nearly three months *after* the Complaint was filed. (*See* Sholder Ex. E.)[3]

Section 32 of the Lanham Act "protects only registered trademarks"; simply having a pending application at the time the Complaint was filed is not sufficient because a mere applicant cannot be considered a "registrant" and therefore does not have statutory standing to sue. *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013) (citing 15 U.S.C. §§ 1114, 1127); *see also Grgurev v. Licul*, 229 F. Supp. 3d 267, 283 (S.D.N.Y. 2017); *cf.* 15 U.S.C. § 1115. Courts have also held there is no subject matter jurisdiction over § 1114 claims absent registration. *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 2011 WL 4005321, at *4-8 (S.D.N.Y. Sept. 1, 2011), *aff'd*, 726 F.3d 62.

### B.    Plaintiff's Trademark Claim is Barred by *Rogers v. Grimaldi* and Its Progeny.

Even if Plaintiff had standing to bring its trademark infringement claim, it would fail under *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989), and cases expanding its reach. *Rogers* held that the Lanham Act is inapplicable to the titles of "artistic works" so long as the defendant's use of the mark is both "artistically relevant" to the work and is not "explicitly mislead[ing] as to the source or the content of the work," and subsequent cases have broadened the test to include the body of expressive works. *See*, *e.g.*, *Twentieth Century Fox Television v. Empire Dist., Inc.*, 875 F.3d 1192, 1197–98 (9th Cir. 2017) (use of "Empire" in title and body of TV show); *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't, Inc.*, 868 F. Supp. 2d 172, 177-84 (S.D.N.Y. 2012) (use of Luis Vuitton bag in movie "The Hangover: Part II"). This line of cases is dispositive.

---

[3] The Court should look to these records because Exhibit 4 to the Complaint (ECF 1-4) inexplicably includes an entirely different trademark application ("Serial No. 76360545") for a now-abandoned "Miss Cleo" mark (*see* Sholder Ex. I), as opposed to the application referenced in the Complaint "(Serial No. 98201700)" (Compl. ¶ 14). The application for this dead trademark cannot form the basis of a trademark infringement claim. *See* 15 U.S.C. § 1114.

1.    Defendants Do Not Use "Miss Cleo" as a Source Identifier.

Defendants are "undoubtedly using ["Miss Cleo"] simply to identify the subject matter" of the Film, and not as a source identifier for their own services (e.g., film production or distribution), which means *Rogers* applies.[4] *Down to Earth Organics, LLC v. Efron*, 2024 WL 1376532, at *4 (S.D.N.Y. Mar. 31, 2024); *JTH Tax LLC v. AMC Networks, Inc.*, 694 F. Supp. 3d 315, 332-33 (S.D.N.Y. 2023) (use of "Liberty Tax" trademark in TV show *Better Call Saul* was relevant to plot and not a source identifier). Indeed, numerous courts have applied *Rogers* on a motion to dismiss, especially where claims are based on titles of expressive works. *See, e.g.*, *Down to Earth Organics*, 2024 WL 1376532, at *9 (applying *Rogers* to dismiss trademark claim alleging defendant's online series infringed plaintiff's health-food and clothing brand); *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 441-44 (S.D.N.Y. 2019) (same regarding claims over a documentary about Whitney Houston); *Medina*, 2016 WL 3906714, at *6 (same regarding claims over series entitled "Loisaidas" that allegedly infringed plaintiff's band name).

2.    The Title "Miss Cleo: Her Rise and Fall" is Artistically Relevant.

Defendants need only show that the Miss Cleo Mark has any "artistic relevance to the underlying work whatsoever," i.e., that the use was "not arbitrarily chosen just to exploit the publicity value of [the plaintiff's mark] but instead ha[d] genuine relevance to the film's story." *Rogers*, 875 F.2d at 999, 1001. This bar is "purposely low." *Louis Vuitton*, 868 F. Supp. 2d at 178. "The artistic relevance prong ensures that the defendant intended an artistic—*i.e.,* noncommercial—association with the plaintiff's mark," rather than intent "to associate with the mark to exploit the mark's popularity and good will." *Brown*, 394 F. Supp. 3d at 442.

---

[4] The Supreme Court recently held that *Rogers* does not apply if defendants used plaintiff's trademark "as a designation of source for the [defendants'] own goods," *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 148 (2023). That is not the case here.

Here, the title "Miss Cleo: Her Rise and Fall" is artistically relevant because the Film is literally about Miss Cleo, specifically the highs and lows of her career and how the woman who portrayed Miss Cleo, once a mega-star, fell from the public's graces. (*See generally*, Sholder Ex. B.) Plaintiff cannot plausibly allege that the Film's title was arbitrarily chosen just to exploit the alleged publicity value of Plaintiff's Miss Cleo Mark. The same is true as to use of the mark in the body of the Film. *See e.g., JTH Tax LLC*, 2023 WL 6215299, at *8 (reference to plaintiff's mark in defendants' television episode was artistically relevant); *Louis Vuitton*, 868 F. Supp. 2d at 178.

### 3.    The Title "Miss Cleo: Her Rise and Fall" is Not Explicitly Misleading.

The second Rogers prong considers "whether the defendant's use of the mark is misleading in the sense that it induces members of the public to believe the work was prepared or otherwise authorized by the plaintiff." *Louis Vuitton*, 868 F. Supp. 2d at 179 (cleaned up). To satisfy this prong, "the finding of likelihood of confusion [by assessing the Second Circuit's *Polaroid* factors] must be particularly compelling to outweigh the First Amendment interest recognized in *Rogers*." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993). On motions to dismiss, "courts have disposed of trademark claims where simply looking at the work itself, and the context in which [the mark] appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work." *Brown*, 394 F. Supp. 3d at 443. Such is the case here. As a threshold matter, Plaintiff only claims that "[a]s a result of Defendants' unauthorized use of PRN's 'Miss Cleo' Mark, consumers are likely to believe that the [i]nfringing media has been approved by or is otherwise associated with Plaintiff." (Compl. ¶ 35.) This conclusory allegation "fails to even allege the type of confusion that could potentially overcome the *Rogers* protection," *Louis Vuitton*, 868 F. Supp. 2d at 181, and certainly does not meet the requirements of "stat[ing] a cognizable claim of confusion." *Id*.

The Film's title is exactly the type of usage of a celebrity's name/trademark that *Rogers* seeks to protect. According to *Rogers*, "the slight risk that such use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, and the Lanham Act is not applicable." 875 F.2d at 1000. There, the Second Circuit found that the movie title at issue, "Ginger and Fred," contained "no explicit indication that [Ginger] Rogers endorsed the film or had a role in producing it." *Id.* at 1001. The same logic applies here, but is even stronger, because "Miss Cleo: Her Rise and Fall" implies some degree of non-flattering overtones (i.e., the "fall") such that consumers would be unlikely to believe the owner of the Miss Cleo Mark would endorse it (assuming they even associate the mark with Plaintiff, rather than the late celebrity herself). *Brown*, 394 F. Supp. 3d at 443–444.

Finally, while the explicitly misleading analysis is governed by the likelihood of confusion factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961), the Court need not individually address these factors because there is simply no plausible allegation in the Complaint that "the public would [ ] interpret [the Film's title] to be, a source-denoter."[5] *Medina*, 2016 WL 3906714, at *5. Because it is implausible that Plaintiff, which claims to own all Miss Cleo-related intellectual property, would be the source of a documentary that recounts her journey from a beloved personality to embroiled in documented fraud and deception allegations aimed at Plaintiff itself, Defendants' use of the Miss Cleo Mark is not explicitly misleading.

### C.    <u>There Is No Likelihood of Confusion.</u>

In any event, Plaintiff fails to state a claim for trademark infringement. In addition to ownership of a valid mark, Plaintiff must demonstrate that "defendant used the protected mark in commerce, without plaintiff's consent" and the use "is likely to cause consumers confusion as to

---

[5] If the Court were to address those factors, Defendants would still prevail for the reasons set forth *infra*.

the origin or sponsorship of the defendant's goods." *Lopez v. Nike, Inc.*, 2021 WL 128574, at *4 (S.D.N.Y. Jan. 14, 2021); *see* 15 U.S.C. § 1114; *Louis Vuitton*, 868 F. Supp. 2d at 177. "Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 383 (2d Cir. 2005). There is no likelihood of confusion here and the Complaint does not allege so.

### 1.    Plaintiff Fails to Plead Likelihood of Confusion.

Assuming Defendants engaged in a use in commerce of the Miss Cleo Mark (which Defendants do not concede, and Plaintiff has not pled),[6] Plaintiff has failed to plead, let alone plausibly allege, the key element of any trademark infringement claim. (*See generally* Compl.) "Ultimately, satisfaction of the likelihood-of-confusion standard requires a probability of confusion [of numerous ordinary prudent purchasers], not a mere possibility." *OffWhite Prods., LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 564 (S.D.N.Y. 2020); *see also Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993). On a motion to dismiss, the Court must determine whether Plaintiff's allegations meet this standard and rise "above the speculative level." *Twombly*, 550 U.S. at 555. They do not.

When determining whether there is a likelihood of confusion, courts rely on the *Polaroid* test, which sets forth the following factors:

> (1) [the] strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

---

[6] One "uses" a mark "in commerce" when the mark "is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or ... on documents associated with the goods or their sale." 15 U.S.C. § 1127(1)(A). Defendants have done no such thing; as discussed herein, they are not using "MISS CLEO" as a source indicator or in any other trademark sense.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009); *Polaroid Corp.*, 287 F.2d at 495. No factor is dispositive and the "ultimate question [is] whether, looking at the products in their totality, consumers are likely to be confused." *Starbucks Corp.*, 588 F.3d at 115. Many courts have dismissed Lanham Act claims without conducting this fact-intensive analysis where, as here, the complaint lacks any details regarding likelihood of confusion. *See*, *e.g.*, *Pub. Free Will Corp. v. Verizon Commc'ns Inc.*, 2017 WL 1047330, at *4 (E.D.N.Y. Mar. 17, 2017) (complaint failed to plausibly allege likelihood of confusion); *Ahmed v. GEO USA LLC*, 2015 WL 1408895, at *3 (S.D.N.Y. Mar. 27, 2015) ("conclusory" and "broad statements[] devoid of any factual detail" regarding likelihood of confusion were "insufficient as a matter of law").

Here, Plaintiff makes the sweeping, conclusory allegation that "Defendants' production, advertising, promotion, distribution, offering for sale and sale of the Film is likely to cause confusion, mistake or deception as to the source or sponsorship of the Infringing Film." (Compl. ¶ 34.) This broad statement is insufficient to plausibly plead likelihood of confusion and can "easily [be] put to one side, because it is conclusory and unsupported by any pled facts." *OffWhite Prods., LLC*, 480 F. Supp. 3d at 565; *cf. Spin Master v. Aciper*, 2022 WL 992888, at *5 (S.D.N.Y. Apr. 1, 2022) (court could not "rely on 'legal conclusions'") (quoting *Iqbal*, 556 U.S. at 678)).

        2.    <u>There is No Plausible Basis for a Likelihood of Confusion.</u>

Basic pleading failures aside, even if the Court were to consider the *Polaroid* factors, on the face of the Complaint there is no basis to believe that there is or would be any likelihood of confusion. To plausibly allege that the public likely believes that Plaintiff "sponsored or otherwise approved the [Defendants'] use of the trademark," *Star Indus., Inc.*, 412 F.3d 384, Plaintiff must raise "a serious question as to the likelihood of confusion." *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 634 (S.D.N.Y. 2008). Plaintiff cannot, as almost all the

*Polaroid* factors weigh in Defendants' favor, and the Court can discern implausibility by "looking at the work itself, and the context in which [the Miss Cleo Mark] appears." *OffWhite Prods., LLC*, 480 F. Supp. 3d at 564; *see Louis Vuitton*, 868 F. Supp. 2d at 183 (collecting cases).

    ***Second Factor.***[7] The Miss Cleo Mark and the Film's title "are used for different purposes and are presented to the public differently," so "even though they say the same thing, they are dissimilar." *See DeClemente v. Columbia Pictures Indus., Inc.*, 860 F. Supp. 30, 48 (E.D.N.Y. 1994) (no similarity between "The Karate Kid" for "karate training schools and exhibitions" and "The Karate Kid" film title for films and proceeds thereof). Plaintiff "suppl[ies] no facts" about how "Defendants' production, advertising, promotion, distribution, offering for sale and sale of the Film" "would create [a] likelihood of confusion." *Spin Master*, 2022 WL 992888, at *5.

    ***Third Factor.*** Plaintiff's Miss Cleo Mark and the Film's title are not in proximity with one another given that the parties operate in different markets. Plaintiff's application (now registration) is for "psychic reading services" and Defendants are in the documentary film production and program distribution industry; there is no plausible competition between them. *See* Sholder Ex. E; *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 481 (S.D.N.Y. 2020) (no proximity between "Plaintiff's vehicles and Defendants' video games").

    ***Fourth Factor.*** Plaintiff does not allege it would "bridge the gap" by expanding into feature films, including "biopics" or "docudramas." *See Louis Vuitton*, 868 F. Supp. 2d at 184 n.19 (finding that "there is little chance that Louis Vuitton will 'bridge the gap' to movie production").

    ***Fifth Factor.*** Plaintiff has not offered any examples of actual consumer confusion.

    ***Sixth Factor.*** Plaintiff has not pleaded beyond mere conclusory statements that Defendants named the Film in bad faith; as discussed above, the Film's name is directly artistically relevant to

---

[7] Defendants currently take no position on the first *Polaroid* factor, which would not be dispositive anyway.

the subject matter thereof. *Gayle v. Allee*, 2021 WL 120063, at *4 (S.D.N.Y. Jan. 13, 2021) (favoring defendant where plaintiff only made conclusory allegations regarding adoption of the mark in bad faith) (*see* Compl. ¶ 37).

**Seventh Factor.** Plaintiff has not made any claims about the quality of Defendants' Film, which on its face is a professionally produced feature production created by reputable filmmakers. *Adidas Am., Inc.*, 2020 WL 2539116, at *12.

**Eighth Factor.** Plaintiff has not pleaded that the sophistication level of Defendants' audience would cause confusion. *See JTH Tax LLC*, 694 F. Supp. 3d at 340. Indeed, Defendants' Film is on its face *about* Miss Cleo, is not presented as sponsored by Plaintiff, and explores the dark side of Miss Cleo's career and Plaintiff's legal woes. And Plaintiff's defamation claims belie any notion that audiences of reasonable intelligence would believe Plaintiff sponsored the Film.

## D.    Defendants are Protected by the Fair Use Doctrine.

Defendants' use of the Mark is also a textbook example of fair use. The fair use doctrine provides a statutory defense to a trademark infringement claim where the use of the mark "is a use, otherwise than as a mark . . . which is descriptive of and used fairly and in good faith only to describe the goods . . . of such party . . . ." 15 U.S.C. § 1115(b)(4). It was established "to prevent the trademark rights of one party from being extended to preclude another party from the description of his product to the public." *U.S. Shoe Corp. v. Brown Grp., Inc.*, 740 F. Supp. 196, 198 (S.D.N.Y. 1990), *aff'd*, 923 F.2d 844 (2d Cir. 1990); *see also See also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004); *CarFreshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995).

While fair use "often requires consideration of facts outside of the complaint," it "may be adjudicated at a motion to dismiss stage . . . where the facts necessary to establish the defense are

evident on the face of the complaint." *Outhouse PR, LLC v. Northstar Travel Media, LLC*, 2020 WL 2512092, at *4 (S.D.N.Y. May 15, 2020) (cleaned up). This is one of those cases.

*First*, "nominative fair use allows a defendant to use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of the defendant's product or the mark-holder's sponsorship or affiliation." *Fizz Soc. Corp. v. Flower Ave, Inc.*, 2024 WL 4264842, at *4 (S.D.N.Y. Aug. 5, 2024) (quoting *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010)). Here, Defendants use "Miss Cleo" to describe the Film's subject matter, not endorse Plaintiff's products or suggest an affiliation between them. *See Outhouse PR,* 2020 WL 2512092, at *6 ("A use of a mark is descriptive if the words were used to describe the ingredients, quality or composition of a product, not the source of the product.").

*Second*, when the alleged use of a plaintiff's mark is accompanied "by the prominent display of the defendants' own trademarks," this generally does not constitute trademark use. *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30–31 (2d Cir. 1997). Here, Plaintiff complains that Defendants infringed the Miss Cleo Mark through "advertising" and "promotion" of the Film. (Compl. ¶ 34.) Noticeably, however, Defendants' promotional poster for the Film prominently displays the Lifetime® trademark in not one but *two places*. (Sholder Ex. F.); *Seljak v. Pervine Foods, LLC*, 2023 WL 2354976, at *2-3, nn. 3-5 (S.D.N.Y. Mar. 3, 2023) (taking judicial notice of defendant's publicly available materials).

*Finally*, Plaintiff has pleaded no factual basis that Defendants used the name "Miss Cleo" in bad faith. "[T]he inquiry into the defendant's good faith concerns the question whether the user of a mark intended to create consumer confusion as to source or sponsorship." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 401 (2d Cir. 2009). Defendants' Film is *about* Miss Cleo, and the source of the film (Defendants) "is clearly identified by the prominent display of" the Lifetime trademark.

*Cosmetically Sealed Indus.*, 125 F.3d at 30. Defendants' use of the name Miss Cleo in the title of their Film of the same name was in good faith; Plaintiff cannot demonstrate otherwise.

## III.     PLAINTIFF'S STATE LAW CLAIMS (COUNTS III & IV) ARE PREEMPTED.

Section 301 of the Copyright Act preempts state law claims that seek to assert the same rights as those protected under the Copyright Act. *See* 17 U.S.C. § 301(a). Preemption applies when: (1) "the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act" and (2) "the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d. Cir. 2004).

### A.    Plaintiff's N.Y. Gen. Bus. L. § 349 Claim is Preempted.

Count III claims Defendants violated New York's Deceptive and Unfair Trade Practices Law, which prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349; Compl. ¶¶ 40-43. To establish a claim under § 349, Plaintiff must plead that: (1) "the challenged act or practice was consumer-oriented"; (2) "it was misleading in a material way"; and (3) "the plaintiff suffered injury as a result of the deceptive act." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014).

Plaintiff alleges that Defendants "trade[d] on the Miss Cleo Creatives willfully and in bad faith, misappropriated Plaintiff's business ideas and concepts by using them in the infringing material in commerce without Plaintiff authorization or approval in a false and misleading manner." (Compl. ¶ 41.) Plaintiff is referring, at least in part, to works within the scope of copyright protection (i.e., the "Miss Cleo Creatives"). And "[t]he right being challenged through this claim is the very right protected by the Copyright Act," *We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.)*, 221 F. Supp. 3d 396, 412 (S.D.N.Y. 2016), i.e., alleged copying and distribution

of supposedly copyrighted works. The Complaint essentially "contend[s] that the Defendants are misleading the public by asserting their copyright," *id.*, making preemption appropriate here.

To the extent Plaintiff's misappropriation claim is based on "Plaintiff's business ideas and concepts" (Compl. ¶ 41), which are not copyrightable, 17 U.S.C. § 102(b), it still fails because it does not plead a sufficient showing of "public harm" as required by § 349. *See Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 155 F. Supp. 2d 1, 26 (S.D.N.Y. 2001), *aff'd in part and remanded,* 277 F.3d 253 (2d Cir. 2002). There is no plausible public harm under these facts.

## B.  Plaintiff's Unjust Enrichment Claim is Preempted.

Plaintiff's copyright claim is rooted in its allegation that Defendants "infringed Plaintiff's copyrights in Plaintiff's Miss Cleo Creatives" which are all presumably protectable works under 17 U.S.C. § 102. (Compl. ¶¶ 9, 26.) Plaintiff claims Defendants were unjustly enriched because Defendants "[used] the Miss Cleo Creatives in the Film without paying Plaintiff, [and] Defendants acquired a benefit from Plaintiff." (Compl. ¶ 45.) But this claim also involves the exclusive rights enumerated in 17 U.S.C. § 106, e.g., reproduction and distribution. Plaintiff's unjust enrichment claim is bare of any other elements that differentiate it from its copyright claim and should be dismissed as preempted. (*Compare* Compl. ¶¶ 25-32 (copyright claim), *with* ¶¶ 44-46 (unjust enrichment claim).) *See Briarpatch,* 373 F.3d at 306 (unjust enrichment preempted by copyright claim); *Myrieckes v. Woods*, 2009 WL 884561, at *6 (S.D.N.Y. Mar. 31, 2009) (same).

Regardless, this claim fails as a matter of law. "[W]hile a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment, there must exist a relationship or connection between the parties that is not too attenuated." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012). "Although the nature of the relationship required to establish an unjust enrichment claim has not been clearly defined, the relationship is too attenuated if the parties were not connected in a manner that could have caused reliance or inducement, or if they simply had no

dealings with each other." *Marks v. Energy Materials Corp.*, 2015 WL 3616973, at *6 (S.D.N.Y. June 9, 2015). Here, Plaintiff fails to allege any relationship between itself and Defendants—because there was none—and its threadbare allegation that "[b]y using the Miss Cleo Creatives in the Film without paying Plaintiff, Defendants acquired a benefit from Plaintiff" is not enough (Compl. ¶ 45). *See Rodriguez v. Redbubble, Inc.*, 2023 WL 6294180, at *6 (S.D.N.Y. Sept. 27, 2023) (dismissing unjust enrichment claim where plaintiff failed to plead any "sufficient facts to allege unjust enrichment").

## IV.   PLAINTIFF'S DEFAMATION CLAIM (COUNT V) FAILS.

### A.   The Defamation Claims About PRN are True or Inadequately Pled.

#### 1.   Plaintiff Cannot Base its Defamation Claims on True Statements.

Truth is an absolute defense to defamation. *Dillon v. City of New York*, 261 A.D.2d 34, 39 (1st Dep't 1999). To plead defamation, "a plaintiff must plausibly allege that the challenged statement is 'substantially false.'" *Olivet Univ. v. Newsweek Digital LLC*, 2024 WL 1892563, at *4 (S.D.N.Y. Apr. 30, 2024), *aff'd*, 2024 WL 5001841 (2d Cir. Dec. 6, 2024). "The inverse is also true: if the challenged statement is 'substantially true,' then a claim for defamation is legally insufficient and must be dismissed." *Id.*; *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 686 (S.D.N.Y. 2022). "A statement is substantially true if [it] would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017); *Olivet Univ.*, 2024 WL 1892563, at *4. When "analyzing a claim for defamation relating to a publication, the entire publication and the circumstances of its issuance must be considered." *Lorenz*, 626 F. Supp. 3d at 686–87.

"Despite truth often being framed as a defense to [defamation], the burden of proving the falsity of a statement rests with the plaintiff." *Leidig v. BuzzFeed, Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019), *aff'd*, 788 F. App'x 76 (2d Cir. 2019). Here, Plaintiff cannot meet its burden of

plausibly alleging that the statements about PRN are substantially false. Plaintiff alleges that Defendants made the following allegedly defamatory statements about PRN: (1) "that PRN was fined by a Federal Agency" (Compl. ¶ 50) and (2) "that Plaintiff bills customers who's [sic] phones had been 'disconnected years ago'" (*id*. ¶ 51(d)). Despite Plaintiff's claims, both statements are true or at least substantially true.

In February 2002, the FTC sued Plaintiff, Steven Feder, and others ("FTC Defendants") for violations of the FTC Act in the Southern District of Florida ("FTC Lawsuit"). (*See* Sholder Ex. G (Complaint, *Federal Trade Commission v. Psychic Readers Network, Inc., et al.*, No. 02-cv-60226 (S.D. FL Feb. 13, 2002) ("FTC Complaint").) As part of the FTC Complaint, the agency detailed the FTC Defendants' pay-per-call billing practices and explained that they "often bill consumers for 900 calls placed from *telephone lines that consumers had disconnected months or years before the date of the 900 call*.") (FTC Compl. ¶ 48.) In November 2002, the court entered a stipulated final judgment (*see* Sholder Ex. H ("FTC Judgment")), wherein the FTC Defendants (while not admitting to any wrongdoing) "acknowledge[d] that the FTC *has a good faith basis for the allegations* made in its Complaint." (FTC Judgment ¶ 8.)

The FTC Judgment also found the FTC Defendants liable for monetary damages, required them to "cease all collection efforts on accounts or claims totaling approximately Five Hundred Million Dollars" from outstanding consumer charges, and ordered them to pay the FTC $5 million. (FTC Judgment §§ VI, VII; *see* Sholder Ex. A (FTC press release explaining that "[t]he settlement also requires the defendants to pay $5 million to the FTC.").) A payment such as this to a government agency is, by definition, a fine. *See* as Black's Law Dictionary 750 (10th ed. 2014) (defining "fine" as "[a] pecuniary criminal punishment or civil penalty payable to the public treasury").

The Film's dialogue nearly mirrors the allegation in the FTC Complaint, and in fact, specifically states that Plaintiff reached a settlement with the FTC that required it to pay "hefty sums." (*See* Sholder Ex. B at 52:00-52:15, 1:22:05-1:22:49, 1:25:40; Sholder Exs. G, H.) And while the word "fine" was not specifically used in the FTC Judgment (nor in the Film, *see generally* Sholder Ex. B), at a minimum, the "gist" of this payment to the FTC can reasonably be considered a fine, such that it was substantially true. *See Olivet Univ.*, 2024 WL 1892563, at *4.

  2. <u>All Other Claimed Defamatory Statements About PRN are Inadequately Pled.</u>

Aside from the above, Plaintiff has failed to delineate any other claimed instances of defamation within the Film, and as such, has failed to adequately plead its claim for defamation. New York CPLR 3016(a) states that "[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally." N.Y. C.P.L.R. 3016(a). Conclusory claims of defamatory statements that "fail to specify time, place and manner of the communication" do not satisfy CPLR 3016(a) and warrant dismissal. *Dillon*, 261 A.D.2d at 40.

Plaintiff makes the blanket allegation that "[t]he defamatory statements during the one-hour and twenty-four-minute duration are too numerous to set forth." (Compl. ¶ 51.) By failing to plead what the claimed statements are, when they were said, who said them, and how they were delivered, Plaintiff fails to notify both Defendants and the Court precisely what other aspects of the Film are allegedly defamatory. Accordingly, Plaintiff's defamation claim, as it pertains to these nondescript statements, should be dismissed for failure to state a claim.

**B.** <u>**Plaintiffs Defamation Claims About Its Corporate Officers Fail.**</u>

  1. <u>Plaintiff Lacks Standing to Assert Defamation on Behalf of Corporate Officers.</u>

***First***, many of the alleged defamatory statements concern Plaintiff's CEO, non-party Steven Feder (*see* Compl. ¶¶ 47-53), but Plaintiff lacks standing to bring such a claim. Under New

York law, corporations lack standing to sue over allegedly defamatory statements about a corporate officer rather than the corporation itself. *See Afftrex, Ltd. v. Gen. Elec. Co.,* 161 A.D.2d 855, 856 (3d Dep't 1990) (defamatory statement reflected directly on plaintiff company's president, not on plaintiff company, such that plaintiff lacked standing to bring defamation action).

**Second**, assertions of defamation against Feder cannot be imputed to Plaintiff merely by virtue of their business association. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006). To "mak[e] out a prima facie case . . . [the plaintiff must] prove that the matter is published of and concerning the plaintiff." *Id.* (collecting cases); *Afftrex, Ltd.,* 161 A.D.2d at 856 (allegedly defamatory statement about company's "owner" did not defame the company). Plaintiff cannot make such a showing. Here, Plaintiff improperly seeks to impute alleged defamation "of and concerning" Feder to PRN merely due to their business connection. The alleged defamatory comments—including, for example, that Feder was an "asshole" or had a "sick sense of [humor]" (Compl. ¶ 51)—are personal to him and do not reflect on Plaintiff as a corporation and cannot defame PRN itself.

### 1.    Statements That are Not in the Film Cannot be a Basis for Defamation.

Plaintiff's claim that the Film describes its officers as "stupid and lazy" cannot proceed because such statement was never made in the Film. (Compl. ¶ 51.) *See Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 80 (S.D.N.Y. 2021) (dismissing defamation claim "not supported by actions or dialogue"). Instead, Feder exclaims that he is "not going down because **the public** is too stupid or lazy to read the fine print." (Sholder Ex. B at 55:29-55:35.)

### 2.    Plaintiff Cannot Base Its Defamation Claims on Opinions or Hyperbole.

Statements of "pure opinion," including "imaginative expression" or "rhetorical hyperbole" are privileged against defamation claims. *See, e.g.*, *Fairstein*, 553 F. Supp. 3d at 65; *see also Kirch*, 449 F.3d at 402 ("New York law absolutely protects statements of pure opinion,

such that they can never be defamatory."); *Dillon*, 261 A.D.2d at34, 38 ("Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable."). "Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false,…only statements alleging facts can properly be the subject of a defamation action." *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152-53 (1993). Conversely, there is "no such thing as a false idea," so courts must "distinguish[] between statements of fact, which may be defamatory, and expressions of opinion, which are not." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020); *O'Loughlin v. Patrolmen's Benev. Ass'n of City of N.Y., Inc.*, 178 A.D.2d 117, 117-18 (1st Dep't 1991).

Courts examine "the content of the whole communication, its tone and apparent purpose, in order to determine whether a reasonable person would view them as expressing or implying any facts," *Intellect Art Multimedia, Inc. v. Milewski*, 24 Misc. 3d 1248(A), at *5 (Sup. Ct. 2009), "what the average person . . . would take it to mean and the context of the entire communication and of the circumstances in which they were spoken or written." *Ganske*, 2020 WL 4890423, at *4. This analysis is based on four non-exhaustive factors: (1) "whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous"; (2) "whether the statement is capable of being objectively characterized as true or false"; (3) examining "the full context of the communication in which the statement appears"; and (4) considering "the broader social context or setting surrounding the communication." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 178–79 (2d Cir. 2000).

Here, any reasonable viewer would understand the statements and depictions of Feder and other PRN officers to be expressive opinions without precise meaning or objective characterization as true or false. Viewing the context of the entire Film and against the backdrop of a story, which

was based on true events, the statements concerning Feder are obvious hyperbolic representations of a CEO figure. Statements such as Feder being an "asshole" or having a "sick sense of [humor]" (Compl. ¶ 51; Sholder Ex. B at 1:01:00-1:01-14), are cut-and-dry opinions or hyperbole. *See, e.g.*, *Dillon*, 261 A.D.2d at 36-37, 41 (describing plaintiff as a "fucking asshole" "could not reasonably have been construed to communicate actual facts, and thus evades defamation"); *Savitt v. Vacco*, 1998 WL 690939, at *8 (N.D.N.Y. Sept. 28, 1998) (references to employees as "dead wood" were not defamatory). In the overall context of the Film, the average viewer would understand these statements as the filmmakers' perception of the subjects. *See Fairstein*, 553 F. Supp. 3d at 80-82.

The same is true about the depiction of Feder saying PRN "own[s] [Harris's] ass" (Compl. ¶ 51; Sholder Ex. B at 45:02-45:11.) *See, e.g.*, *Fairstein*, 553 F. Supp. 3d at 80-82 (depicting plaintiff calling purported criminals "animals" did not "rise[] to the level of defamation"); *Miller v. Richman*, 184 A.D.2d 191, 192–93 (4th Dep't 1992) (statements such as "one of the worse [sic] secretaries at the firm" and "work habits are bad" were non-actionable opinions); *Williams v. Varig Brazilian Airlines*, 169 A.D.2d 434, 435-36 (1st Dep't 1991) (memo "regarding plaintiff's purportedly unsatisfactory performance and poor attitude" was non-actionable opinion*)*.

With respect to Plaintiff's claims that "Steven Feder is portrayed as a drunk and ruthless wall street [sic] type" (and that Feder does not drink) (Compl. ¶ 49), this claim sounds in false light rather than defamation, and New York "does not recognize any tort of false light invasion of privacy." *See Torres v. CBS News*, 1995 WL 810041, at *5 (N.Y. Sup. Ct. Oct. 11, 1995). In any event, instances where Feder is shown with alcohol merely consist of him ordering, pouring, or holding a drink, or at the bare minimum briefly taking a single sip, and he is never shown as drunk (Sholder Ex. B at 27:20-27:35, 28:53-29:06, 45:35-45:45, 1:19:42-1:19:50). Further, showing one acting "callous" or "ruthless" may be properly categorized as parody or a loose, figurative

24

characterization akin to hyperbole or opinion about that person. *See Miller*, 184 A.D.2d at 192-93; *Fairstein*, 553 F. Supp. 3d at 68.

## V.    PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND.

While courts freely grant leave to amend, such requests will be denied where amendment would be futile, i.e., when the proposed claim could not withstand a Rule 12(b)(6) motion or if it would "fail to cure prior deficiencies." *Thea v. Kleinhandler*, 807 F.3d 492, 496–97 (2d Cir. 2015); *see e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

*First*, amending the copyright claim would be futile as most of the "Miss Cleo Creatives" are not registered and none of the Miss Cleo Works are referenced or appear in the Film. This is a "substantive" problem and "better pleading will not cure it." *Cuoco*, 222 F.3d at 112.

*Second*, even if Plaintiff repleaded that it has a registered trademark, its claim is still barred by *Rogers*, the absence of a plausible likelihood of confusion, and fair use. *See*, *e.g.*, *Monbo v. Nathan*, 623 F. Supp. 3d 56, 144 (E.D.N.Y. 2022) (*Rogers* barring leave to amend).

*Third*, Plaintiff's state law claims cannot be saved because "[t]here is no way for Plaintiff to reformulate [them] such that they do not derive from the" alleged unauthorized use of the Miss Cleo Creatives. *Myrieckes*, 2009 WL 884561, at *7 (collecting cases). These claims also fail on their merits for the reasons stated above.

*Finally*, amending Plaintiff's defamation claim is futile because Plaintiff will never have standing to allege defamation for its corporate officers and "statements dismissed due to being true, lacking defamatory meaning, or being hyperbole or opinion cannot be saved by amendment." *See Lorenz*, 626 F. Supp. 3d at 694.

## CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: New York, New York
      January 24, 2025

Respectfully submitted,

**COWAN DEBAETS ABRAHAMS
& SHEPPARD, LLP**

By: /s/ Scott J. Sholder
Scott J. Sholder, Esq.
CeCe M. Cole, Esq.
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Fax: (212) 974-8474
ssholder@cdas.com
ccole@cdas.com

*Attorneys for Defendants A&E Television Networks,
LLC and Hillionaire Productions LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Scott J. Sholder, hereby certify that a true and correct complete copy of the foregoing Defendants A&E Television Networks, LLC and Hillionaire Productions LLC's Memorandum of Law in Support of their Motion to Dismiss has been served on all counsel of record via the Court's CM/ECF service.

/s/ Scott J. Sholder
Scott J. Sholder
