**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------X
PSYCHIC READERS NETWORK, INC.,

Plaintiff,

v. Case No.: 1:24-cv-08155-DEH

A&E TELEVISION NETWORKS, LLC
AND HILLIONAIRE PRODUCTIONS, LLC,

Defendants.
-----------------------------------------------------X

# PLAINTIFF PSYCHIC READERS NETWORK, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO A&E TELEVISION NETWORKS, LLC AND HILLIONAIRE PRODUCTIONS LLC'S MOTION TO DISMISS

Joel R. Dichter, Esq.
DICHTER LAW LLC
483 Cherry Street, Suite 100
New York, NY 10507
Telephone: (212) 593-4202
Fax: (212) 994-5394

*Attorneys for Plaintiff*
*Psychic Readers Network, Inc.*

# TABLE OF CONTENTS

**Page**

**Preliminary Statement** ... 1

**Statement of the Case** ... 5

**The Law in Reviewing a Motion to Dismiss** ... 8

**Argument** ... 9

1. **The Complaint Sufficiently Pleads Allegations of Copyright Infringement to Withstand a Motion to Dismiss** ... 9
   a. **The Miss Cleo Character, Created By PRN and For Which PRN Holds All Rights, Is a Protected Form of Expression** ... 9
   b. **The Character Within a Copyright Work is Protected** ... 11
   c. **The Similarities Are More Than Substantial Enough for a Jury to Plausibly find that Defendants Infringed Upon PRN's Copyrights** ... 13
   d. **Defendants Outright Copied PRN's Commercials** ... 14
   e. **Contrary to Defendants' Assertions, Plaintiff Pleads All Essential Elements of Copyright Infringement** ... 16
2. **Plaintiff's State a Claim for Trademark Infringement** ... 18
   a. **PRN Holds a Registered Trademark for "Miss Cleo"** ... 18
   b. **Defendants Cannot Hide Behind the Rogers Case to Escape Liability** ... 19
   c. **Defendants' Use of the Mark is for a Commercial Purpose and Does Not Qualify As Fair Use** ... 20
3. **A Corporation May Maintain An Action for Defamation for Harm to the Corporation** ... 22

**4. State Law Claims** ........................................................................ 23

**5. Leave to Amend Would Be Appropriate** ............................................ 23

**Conclusion** ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

Anderson v. Stallone, 1989 U.S. Dist. Lexis 11107,
1989 WL 206438 (CD CA 1989)........................................................................ 11

Arista Records, LLC v. Doe, 3, 604 F.3d 110, 119 (2nd Cir. 2010)................................. 2

Atari, Inc. v. North American Phillips Consumer Electronics Corp.,
672 F. 2d 607, 617 (7th Cir.), cert. denied, 459 U.S. 880,
103 S. Ct. 176, 74 L. Ed. 2d 145 (1982)............................................................ 14

Capital Records, Inc. v. Wings Digital Corp., 218 F. Supp. 2d 280
(E.D.N.Y. 2002)................................................................................................ 17

Cariou v. Prince, 714 F.3d 594 (2nd Cir. 2013)............................................................ 23

Chuck Biore and Don Richman, Inc. v. 20/20 Advertising, Inc.,
674 F. Supp. 671, 677 (Minn 4th Div. 1987)....................................................... 14

Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).......................... 8

Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984) ...................... 9

Deere and Co. v. MTD Prods, Inc., 2001 WL 435613 (SDNY 2001)............................. 21

ESPN, Inc. v. Quicksilver, Inc., 586 F.Supp.2d 219, 230 (S.D.N.Y. 2008).................... 19

First Nat'l Bank of Waverly v. Winters, 235 N.Y. 47 (1918) ......................................... 24

Fizz 30 Corp. v. Flower Au., Inc., 2024 WL 4264842 (SDNY 2024)............................. 22

Fourth Estate Public Benefit Corp. v. Wall Street Journal,
586 U.S. 296 (2019)......................................................................................... 12

Gruner and John USA Publishing v. Meredith Corp.,
991 F.2d 1072 (2nd Cir. 1993)........................................................................... 19

Home & Home, Inc. v. Sherman Specialty Co.,
322 F. Supp. 2d 260 (E.D.N.Y. 2004) ............................................................... 18

International Info. Sys., Inc. v. Security University, LLC,
823 F.3d 153 (2nd Cir. 2016)............................................................................. 22

Jack Daniels v. VIP Products, 599 U.S. 140 (2023) ...................................................... 20

Kramer v. Time Warner, 937 F. 2d 767, 773 (2nd Cir. 1991); FRE 201(b) ...................... 2

LaLuna Enterprises, Inc. v. CBS Corp., 74 F.Supp.2d 384 (SDNY 1999) .................. 5, 24

Leigh v. Warner Brothers, Inc., 212 F. 3d 1210, 1216 (11th Cir. 2000) ............................ 9

Luis Sportswear, USA v. Levi Strauss & Co., 799 F.2d 867,
871 (2nd Cir. 1986) .......................................................................................... 19

Marketran, LLC v. Brooklyn Water Enterprises, Inc., 2016 U.S. Dist.
LEXIS 188381 (SD FL 2016) .................................................................................. 9

MGM v. Honda, 900 F. Supp. 128 (CD CA 1995) .......................................................... 11

N.Y. Soc. For Suppression of Vice v. Macfaddin Publ.,
260 N.Y. 167 (1932) .......................................................................................... 24

Picket v. Magos Touring, Inc., 420 F.Supp.3d 197 (SDNY 2012) .................................... 3

Psychic Readers Network, Inc. v. General Mills et al., 15-cv-61769 ......................... 13, 25

Repp & K & R Music v. Andrew Lloyd Weber, 132 F.3d 882,
889 (2 Cir. 2010) ............................................................................................ 18

Restis v. American Coalition against Nuclear Iran,
53 F.Supp.3d 705 (SDNY 2014) .......................................................................... 25

Ritani v. Aghjayan, 880 F.Supp.2d 415, 440 (SDNY 2012) ............................................ 9

Salinger v. Colting, 641 F. Supp. 2d 250, 254 (S.D.N.Y. 2009) ............................... 12, 23

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683,
40 L. Ed. 2d 90 (1974) ........................................................................................ 9

Scotch & Soda BV v. Scotch & Iron LLC, 2018 WL 2224997
(SDNY 2018) .................................................................................................... 21

Sid and Marty Krofft Television Productions, Inc. v. McDonald's Corp.,
562 F.2d 1157, 1168 (9th Cir. 1977) ...................................................................... 14

Vans, Inc. v. MSCHF Product Studio, 88 F.4th 136 (2nd Cir. 2023),
cert. denied 144 S. Ct. 1339 (2024) ................................................................ 20, 22

Walt Disney Prods. v. Air Pirates, 581 F. 2d 751, 754-755 (9th Cir. 1978) ..................... 11

Warner Bros. Ent. v. RDR Books, 575 F.Supp.2d 513 (SDNY 2008) ............................. 23

Yurman Designs v. PAJ Inc., 263 F.3d 101 (2nd Cir. 2001) ........................................... 15

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X
PSYCHIC READERS NETWORK, INC.,

Plaintiff,

v. Case No.: 1:24-cv-08155-DEH

A&E TELEVISION NETWORKS, LLC
AND HILLIONAIRE PRODUCTIONS, LLC,

Defendants.
---------------------------------------------------X

**PLAINTIFF PSYCHIC READERS NETWORK, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO A&E TELEVISION NETWORKS, LLC AND HILLIONAIRE PRODUCTIONS LLC'S MOTION TO DISMISS**

Plaintiff Psychic Readers Network, Inc. ("Plaintiff" or "PRN") respectfully submits the following Memorandum of Law in Opposition to the Motion to Dismiss of Defendants A&E Television Networks, LLC ("A&E") and Hillionaire Productions, LLC ("HP") (collectively "Defendants").

## Preliminary Statement

This case involves the Defendants' production of a movie entitled "Miss Cleo: Her Rise and Fall" (the "Film") that appeared on the A&E-owned Lifetime Channel about the character, Miss Cleo. The Miss Cleo persona became an iconic character in the early 2000's. (Complaint ⁋9). So famous was the character, that it was parodied on late

night talk shows such as Leno and Saturday Night Live. (Complaint ⁋10). The Film, produced by Defendant Hillionaire and aired on A&E's Lifetime Network, infringes upon Plaintiff's copyrighted television commercials and other works featuring the Miss Cleo character, created and owned by Plaintiff. Defendants' entire movie is an unauthorized recreation of the character Miss Cleo, including the character's clothing, voice, mannerisms and catch phrases. (Complaint ⁋17).

Defendants' Motion to Dismiss is premised upon applying a heightened pleading standard of review by the Court that simply doesn't exist under the law. Arista Records, LLC v. Doe, 3, 604 F.3d 110, 119 (2nd Cir. 2010). The Complaint fully meets all of the notice requirements of Rule 8 to defeat a Motion to Dismiss on each of the causes of action. To make out a claim for copyright infringement, the Plaintiff need only show it owns a registered copyright and allege that the Defendants infringed upon the copyright through copying or substantial similarity. Defendants cannot dispute that Plaintiff holds copyright registrations related to the Miss Cleo character, including movies, commercials, a book, an instructional videotape, and tarot cards. (Complaint ⁋⁋12, 13). All of which are based around the Miss Cleo character created by PRN. In addition to the registrations attached to the Complaint as Exhibits 2 and 3 (DKT. 1), Plaintiff has additional registrations attached to the Declaration of Joel R. Dichter filed herewith that are referenced in the Complaint (⁋13), but not attached to the Complaint. (Dichter Decl. Ex. 1). The Court may take judicial notice of such registrations. Kramer v. Time Warner, 937 F. 2d 767, 773 (2nd Cir. 1991); FRE 201(b). The registered works are incorporated by reference and may be considered on a motion to dismiss. (Def. Memo of

Law, p.3, citing Picket v. Magos Touring, Inc., 420 F.Supp.3d 197 (SDNY 2012)). A link is provided to a Dropbox with the registered works. (Dichter Decl. ⁋4).

The allegation in the Complaint is that the featured character and entire storyline of the Film is undeniably taken whole cloth from the Miss Cleo character. Defendants copied the appearance and voice of Miss Cleo and recreated audiovisual works of Plaintiff (Complaint ⁋⁋17, 26) – In fact, Defendants recreated one of PRN's copyrighted television commercials word for word. – That is all that is required to defeat a Motion to Dismiss, where the facts set out in the Complaint must be deemed true for this purpose.

The argument by Defendants of a lack of access or proof of copying is belied by the materials Defendants attached to the Motion. This case involves the misappropriation of a character within copyrighted works and the entire look and feel of PRN's commercials. Defendants say the omission of a comparison is somehow a shortfall. One only need compare the official poster for the Film with the copyrighted cover for the tarot cards or book to see Defendants' outright duplication of the Miss Cleo character's look in violation of Plaintiff's copyright and Mark (DKT. 28, Sholder Decl. Exs. C and F). Here is a side-by-side comparison:



Defendants' poster recreates the turban, caftan, tarot cards, color and entire look and persona of the copyrighted Miss Cleo character. Attached to the Dichter Declaration are screenshots from the Film compared with screenshots of PRN's registered works (Ex. 2). But it goes even further, Defendants' Film copies verbatim the dialogue from PRN's copyrighted commercial. (Dichter Decl. ⁋9). Thus, while there is substantial similarity, there is also actual outright copying by Defendants.

The law is clear that copyright protection extends not to just the registered work, but to the character embodied in the work. The whole reason Defendants selected the story of the "Miss Cleo" character for the Film is that the character is iconic, commercially viable, and clearly entitled to protection.

Plaintiff has been zealous in its protection of its rights in the character, bringing actions against Fortune 500 companies for unauthorized use of the character. In one case, the Court denied the Defendants' Motion to Dismiss involving a character derived from Miss Cleo. Here, the Defendants exploited for profit the Miss Cleo character itself. In instances where it is alleged that the work is the recreation of the same character, access need not be shown. It is presumed and obvious.

The Defendants' position on trademark is an attempt to hide behind a moot point and the decisions in the Rogers and Down To Earth cases. Plaintiff now holds a registered trademark for Miss Cleo, with a date of first use back to 2000. (Dichter Decl. ⁋6; Ex. 3). As for Rogers and Down To Earth, the facts here are easily distinguishable. The use of the Miss Cleo Mark by Defendants isn't limited to the title of the Film, it is the premise of the Film. The credits list the actor, "Robin Lady of Rage Allen" as portraying not the PRN actor that portrayed Miss Cleo, Ms. Harris, but "Miss Cleo." The

poster uses the Mark "Miss Cleo." The promotional materials all feature the Mark. In the Rogers and Down To Earth decisions cited by Defendants, the use of the Mark was limited to the title of the movie and television series, respectively. It was not used within the content of the television series. Here, the Miss Cleo character and associated Mark, owned by PRN, are the raison d'etre for the Film, and the use of Miss Cleo is rightfully alleged to create a likelihood of confusion.

As for the defamation claim, the Plaintiff is mistaken on the law. It is well settled that a defamation action may be maintained by the corporation for harm to the Company's reputation. LaLuna Enterprises, Inc. v. CBS Corp., 74 F.Supp.2d 384 (SDNY 1999). Here, it is properly alleged that statements in the Film, such as they are "ripping off millions of people," are defamatory per se. (Complaint ⁋51; Dichter Decl. ⁋7). Defendants argue that they are true. The FTC case resulted in no fine or any admission of wrongdoing. (Sholder Ex. H). Moreover, the Film is replete with slander against the company and its principals. (Complaint ⁋51). While Plaintiff vehemently disagrees with the assertion that the defamatory statements are true, on a Motion to Dismiss, the allegation of the Complaint are deemed to be true. It is for the jury to determine whether the allegations are true or not. The Complaint meets all the elements required to be pled.

## **Statement of the Case**

Commencing in 2000, PRN created a new concept for a dramatically different commercial and held auditions for a spokesperson to appear in this concept. (Complaint ⁋9). PRN selected Ms. Youree Dell Harris, who was a psychic advisor for PRN and an

actress. (Complaint ¶8). PRN created every aspect of the character known as Miss Cleo, played by Youree Dell Harris. (Complaint ¶9). PRN produced tens of dozens of television commercials, infomercials, print ads, books, tarot cards, syndicated talk shows, a Pay-Per-View Show, etc., featuring the Miss Cleo character. (Complaint ¶¶9-10). PRN created a unique look, feel and trade dress for her appearance, including her persona, clothing, set designs, staging, dialect, and the dialogue. (Complaint ¶9). Prior to this point, psychic services had relied upon a famous spokesperson such as Dionne Warwick. PRN spent over a hundred million dollars on advertising to build the "Miss Cleo" brand, generating over one billion dollars in gross sales. (Complaint ¶19). The Miss Cleo character was so persuasive that it became the subject of a Jay Leno monologue, Saturday Night Live and numerous other comedy skits, a scene from a movie, lyrics for a rap song, among many other references in movies, in print and on television shows. (Complaint ¶¶10).

PRN owns eleven (11) registered copyrights featuring its Miss Cleo created character. (Dichter Decl., Ex. 2). Four (4) copyrights are for a Pay-Per-View video, book, tarot cards and tarot video registered by PRN or its subsidiaries and affiliates with the U.S. Copyright Office in 2001. (Complaint ¶12; Ex. 2). In addition, PRN holds copyrights for six (6) television commercials and a movie. (Complaint ¶13, Ex. 3; See Dichter Decl. Ex. 2). Per the Contract between PRN and Ms. Harris, all services performed by Ms. Harris were work-for-hire. (Complaint ¶11). Ms. Harris also acknowledged in an Affidavit accompanying PRN's USPTO Trademark Application for the name "Miss Cleo" that the Miss Cleo name itself was the sole intellectual property of PRN and not of Ms. Harris. (Complaint ¶14; Ex. 4).

The copyrighted works of PRN were infringed without the knowledge or consent of Plaintiff, the owner of the intellectual property in the Miss Cleo brand. (Complaint ¶18). The brand "Miss Cleo" had been established in the consciousness of the public by way of a long, detailed advertising campaign. (Complaint ¶¶9, 23). Defendants elected to usurp that character and recreate PRN's copyrighted works in producing the Film based upon the "Miss Cleo" brand. Defendants did not compensate Plaintiff. (Complaint ¶26). Thereby, effectively piggy backing on the Miss Cleo character's iconic recognition in this country and Canada to enhance the promotion and buzz for its Film that debuted on A&E's Lifetime Channel following an extensive media campaign, including the release of a trailer. (Complaint ¶15). According to public reporting, the Film debuted to an audience of about 400,000. (Complaint ¶16). The Film is available for rent or purchase through Hulu and other streaming services. (Dichter Decl. ¶8).

There should be no debate over the unauthorized use of PRN's intellectual property by Defendants to copy the character included in the Film. The Miss Cleo in the Film wears the same style of clothing and headdress as Miss Cleo, is of a similar build, has the same facial characteristics as Miss Cleo, utilizes the same faux Jamaican accent as the Miss Cleo character, and even uses the Miss Cleo character's most famous catch phrases: "Call Me Now." (Complaint ¶17; Dichter Decl. ¶¶4-5; Ex. 2). Defendants recreated and copied the television commercials and persona of Miss Cleo that were ubiquitous in late night television for a purely commercial purpose.

**The Law in Reviewing a Motion to Dismiss**

In the context of a motion to dismiss a complaint for copyright infringement, this Court has opined that the standard is as follows: A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is a motion attacking the legal sufficiency of a complaint. When considering Rule 12(b)(6) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See, Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

> "To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted **[*6]** only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (*abrogating Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556).
>
> The Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n.8 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984)).

Marketran, LLC v. Brooklyn Water Enterprises, Inc., 2016 U.S. Dist. LEXIS 188381 (SD FL 2016).

Neither "Twombly or Iqbal requires a plaintiff in a copyright infringement action to plead specific evidence or extra facts beyond what is needed to make the claim plausible." Ritani v. Aghjayan, 880 F.Supp.2d 415, 440 (SDNY 2012). On a motion to

dismiss, as opposed to a summary judgment motion, the Court need not "consider differences between the copyrighted work and the allegedly infringing work other than find that the allegation of infringement are sufficient to satisfy pleading requirements … 'Substantial similarity' is usually a question for the jury." Leigh v. Warner Brothers, Inc., 212 F. 3d 1210, 1216 (11th Cir. 2000).

Here, the essential inquiry is whether based upon the four corners of the Complaint and materials referenced therein, PRN has raised a plausible claim such that Plaintiff should be able to present evidence demonstrating that Defendants' Film, based entirely upon the Miss Cleo character, infringes upon PRN's copyrights and trademark.

## Argument

**1. The Complaint Sufficiently Pleads Allegations of Copyright Infringement to Withstand a Motion to Dismiss**

**a. The Miss Cleo Character, Created By PRN and For Which PRN Holds All Rights, Is a Protected Form of Expression.**

There can be no debate that PRN owns the requisite copyrights to bring this action for infringement. (Complaint ¶¶12-13; Dichter Decl., Ex. 1). The Miss Cleo character therein has garnered a place in American pop lore. The Copyright Act does not require that each and every work be registered. Rather, each registered work is entitled to protection under the Act. The eleven registrations include television commercials, infomercials, an instructional video, a book and tarot cards.

Plaintiff created the distinctive Miss Cleo character. PRN created and controls all aspects of the character. (Complaint ¶¶8-11). PRN undertook extensive efforts and investment in creating the Miss Cleo character and her resultant overwhelming

popularity. In fact, PRN owns all rights to both the Miss Cleo character and Miss Cleo name. (Complaint ¶¶11, 14). All services performed by Ms. Harris were work-for-hire. (Complaint ¶11). ("Any copyrightable work prepared in whole or part by Independent Contractor will be deemed 'work for hire' under section 201(b) of the 1976 Copyright Act"). The Copyright Act provides:

> "In the case of work for hire, the employer or other person for which the work was prepared is considered the author for purposes of this title and … own all the rights comprised in the copyright."

17 U.S.C. §201. Ms. Harris also signed a waiver acknowledging that the Miss Cleo name is the sole property of PRN, which was filed with the USPTO. (DKT. 1, Complaint ¶14, Ex. 4). The Miss Cleo character is unequivocally a creation of PRN entitled to copyright protection. As PRN holds all rights to the character, PRN is exercising its right to protect its copyrights in this action.

**b. The Character Within a Copyright Work is Protected**

For audio/visual works, not only is the entire work protected, but the well-developed characters within the film are protected as well. Thus, although Sylvester Stallone is world renowned for portraying a run-of-the-mill prize fighter in the Rocky films, the Rocky Balboa character within the films is itself entitled to full copyright protection. The character is protected even though the character is not separately copyrighted. Anderson v. Stallone, 1989 U.S. Dist. Lexis 11107, 1989 WL 206438 (CD CA 1989). Similarly, while the James Bond character may be broken down in its stock elements, when taken as a whole, the character is an individualized expression entitled to protection. See also, MGM v. Honda, 900 F. Supp. 128 (CD CA 1995) ("James Bond"). Walt Disney Prods. v. Air Pirates, 581 F. 2d 751, 754-755 (9th Cir. 1978) (cartoon characters protected).

That is certainly the case with Miss Cleo. Defendants' arguments to the contrary are without foundation. In its reply letter on its motion for a stay of discovery (DKT. 37), Defendants cite the Supreme Court's Fourth Estate case for the proposition that the character must be registered separately from the copyrighted work in which it is embodied. (DKT. 370). That case makes no such finding. Rather, the sole issue before the Court was whether a registration had to be obtained prior to commencing an action for copyright infringement. Fourth Estate Public Benefit Corp. v. Wall Street Journal, 586 U.S. 296 (2019). There is absolutely no discussion about a character within a copyrighted work. Here, there are eleven (11) registered works. Beyond the copying of a script, phases and setting, it is the recreation of the character by Defendants for use through its entire Film that is one of the infringing acts upon Plaintiff's rights.

Defendants' approach runs contrary to applicable law by ignoring the overall development of the character. Defendants would have the Court miss the forest for the trees. In Salinger v Colting, the Court found "the character of Holden Caulfield ("Holden" or "Caulfield") is sufficiently delineated so that a claim for infringement will lie. 2 Nimmer on Copyright § 2.12 (2009) ("[I]n those cases recognizing such protection, the character appropriated was distinctively delineated in the plaintiff's work.")." Salinger v. Colting, 641 F. Supp. 2d 250, 254 (S.D.N.Y. 2009).

The Complaint asserts the Miss Cleo character is a one-of-a-kind expression of an idea to the point of becoming part of America's pop culture. So famous a character that it was parodied on late night television repeatedly and, as the Film shows, is still of interest to the public. There is no further pleading requirement. Her image, voice and expressions are the result of PRN's creative endeavors and have little in common to a psychic with a globe. As such, just like Rocky or James Bond, it qualifies for copyright protection. It is the uniqueness of the character that led to Miss Cleo references in a panoply of media and artistic endeavors and Defendants' exploitation of the character for profit in the Film.

The Miss Cleo character is so unique, it is attractive to Fortune 500 companies. This is not the first time PRN has had to take action to protect its rights in the Miss Cleo character. In previous actions for unauthorized use of the character, Plaintiff commenced actions against General Mills, LVMH's Benefit Cosmetic's subsidiarity, and Take-Two Interactive's "Grand Theft Auto" videogame. After the defendants filed answers to the complaint (Take-Two's motion to dismiss was denied by the Court), the cases were settled through mediation. (Psychic Readers Network, Inc. v. General Mills et al., 15-cv-

61769; Psychic Readers Network, Inc. v. LVMH Moet Hennessey Louis Vuitton, Inc. et al., 16 Civ. 62267 (WJZ); Psychic Readers Network, Inc. v. Take-Two Interaction et al., 17-Civ-61492 (SD of Fla.).

Therefore, characters such as Miss Cleo are protected by copyright law. The Miss Cleo character is a well-developed brand rising to a level of pop culture icon. It far exceeds the threshold needed to be protectable expression.

**c. The Similarities Are More Than Substantial Enough for a Jury to Plausibly find that Defendants Infringed Upon PRN's Copyrights.**

In comparing two television commercials using the same actress, the Court noted that:

> The expressive aspects of audiovisual works, and of television in particular, necessarily include both images and sounds since without either there can be no communication and hence no expression. See, e.g. Atari, Inc. v. North American Phillips Consumer Electronics Corp., 672 F. 2d 607, 617 (7th Cir.), cert. denied, 459 U.S. 880, 103 S. Ct. 176, 74 L. Ed. 2d 145 (1982) (expressive aspects of video game included audio component and concrete details of visual presentation). Thus, the expressive aspects of the Biore commercials extend to the individual artistic choices such as a particular montage style, camera angle, framing, hairstyle, jewelry, décor, makeup and background. These choices express the concept behind any given commercial and distinguish its images and sounds from the otherwise infinite universe of commercials which might have been made. *See* Sid and Marty Krofft Television Productions, Inc. v. McDonald's Corp., 562 F.2d 1157, 1168 (9th Cir. 1977) (complexity and artistry of expression of an idea separates it from the idea itself). They cannot be divorced from the verbal script and deemed irrelevant to the total communicative impact of the medium. Indeed, defendants' position to the contrary reflects a radical departure from existing copyright law."

Chuck Biore and Don Richman, Inc. v. 20/20 Advertising, Inc., 674 F. Supp. 671, 677 (Minn 4th Div. 1987). Here, Defendants did everything in their power to accurately recreate the Miss Cleo character's look, sound and persona through the actress portraying Miss Cleo in the Film. (Complaint ⁋⁋17, 26). Attached to the Dichter Declaration as

Exhibit 2 are screenshot comparisons that clearly demonstrate that the Film's Miss Cleo is nothing more than a recreation of PRN's Miss Cleo. No scientific or forensic analysis is necessary to discern that the Miss Cleo in the Film is made up to resemble the PRN's Miss Cleo character as exactly as possible. One viewing the Film and PRN's commercials is left with no doubt as to the substantial similarity of the respective works. (Dichter Decl. ⁋4; Sholder Decl. Ex. B). At the end of the day, determination of "substantial similarity" by the Court on a motion to dismiss comes down to "common sense" under an "ordinary observer test." Yurman Designs v. PAJ Inc., 263 F.3d 101 (2nd Cir. 2001). Anyone reviewing the Film's Miss Cleo would associate the character as being PRN's protected Miss Cleo, and the entire Film is a recreation of PRN's copyrighted works. After all, the whole reason for the Lifetime movie is to generate profits from the unauthorized taking of PRN's intellectual property. Nothing more is required to demonstrate that Plaintiff is entitled to present evidence of infringement to a jury.

**d. Defendants Outright Copied PRN's Commercials**

In the Film (at the 34-minute mark), Defendants recreate PRN's television commercials. Not only did Defendants clearly review and copy the look and feel of PRN's commercials, but they outright copied them. In doing so, Defendants copied dialogue from PRN's copyrighted television commercial, which can be viewed through the link referred to in Dichter Declaration (⁋4). It is labeled "Miss Cleo Commercial" in a green turban and is a commercial derived from the Take Me to Church registered infomercial. In PRN's copyrighted commercial, the Miss Cleo character gives a reading by telephone to a caller. The commercial has the following dialogue:

Miss Cleo: Who asked you to go out of town, the stupid young one or the married one?

Caller: The married one.

Miss Cleo: That is what I thought. Don't go. You hear me?

Caller: Hmm.

Miss Cleo: I see you are not listening to me. I see you going.

Caller: Hmm.

Miss Cleo: I am just trying to spare the heartbreak.

The Film actually exactly duplicates the above script (at the 34:23 second mark) as well as Miss Cleo's famous catch phrase "Call Me Now." (Sholder, Ex. B). A link is provided in Dichter Declaration paragraph 9 so that the Court may review the commercial and infringing clip of the Movie back-to-back. This isn't a case of substantial similarity, this is the explicit copying of copyrighted work.

Even under the Liveperson.com and Klauber cases, cited by Defendants (Def. Memo of Law, pp.5-6), outright copying clearly identifies the infringing material and negates any requirement to show access.

Defendants cannot make a colorable claim of a lack of access where it has outright copied a script and the substantial similarity between the Film's depiction of PRN's commercials and Miss Cleo mirrors PRN's registered works. The access of Defendants is obvious from the comparisons. PRN's Miss Cleo commercials and products are obtainable through a simple search for "Miss Cleo television commercials." Dichter Ex. 2). As for access, Defendants' counsel had no trouble procuring copies of copyrighted materials that are attached to his declaration. (Sholder ⁋5). In the Film, during this recreated commercial, a toll-free number is displayed on screen. Defendants

used an actual number formerly held by PRN that was displayed in PRN television commercials. (Dichter Dec. ⁋10). The outright copying and recreation of the look, feel and persona of the commercials is all that is required to show access.

**e. Contrary to Defendants' Assertions, Plaintiff Pleads All Essential Elements of Copyright Infringement**

Defendants argue that the Complaint does not identify which works were infringed (Defendants' MOL, p. 5). This is false. In the Complaint, Plaintiff states that it has copyright registrations for works embodying the Miss Cleo character. (Complaint ⁋⁋ 12-13). "Plaintiff PRN is the holder of eleven (11) registered copyrights for Miss Cleo Creatives." (Complaint ⁋13, Dichter Decl. Ex. 1). The Complaint states: "The Film freely copies and recreates Plaintiff's copyrighted materials including, but not limited to, use of the look and feel of Plaintiff's television commercials including the Miss Cleo character's appearance, dress and tag lines, such as 'Call Me Now,' 'Listen to me sweet pea,' 'Listen to Cleo now," using 'me' instead of 'I' and 'Tings' instead of 'Things.'" (Complaint ⁋17; Dichter Decl. ⁋11).

As the Complaint identified the registered copyrights, the infringing work of Defendants and that it infringed by recreating the Miss Cleo character's look and feel, the Complaint fully satisfies the requirements of Rule 8. A plaintiff need not provide a description of the individual instances or exact time of infringement. Capital Records, Inc. v. Wings Digital Corp., 218 F. Supp. 2d 280 (E.D.N.Y. 2002). Further, a plaintiff need only generally describe how the defendant infringed to state a claim. Home & Home, Inc. v. Sherman Specialty Co., 322 F. Supp. 2d 260 (E.D.N.Y. 2004). In short, a claim is sufficient when it contains "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009). Here, the Complaint and materials referenced therein meet that standard.

To the extent the Court deems more detail to be required at this stage, Plaintiff can easily amend the Complaint to address Defendants' arguments including adding the comparisons and copied dialogue. As previously stated, attached to the Dichter Declaration are screenshots taken from the Film and associated promotional materials compared side by side with screenshots or snapshots of PRN's copyrighted works and the copied dialogue. (Dichter Decl. ⁋⁋5, 9; Ex. 2). The comparisons show unequivocally the "substantial similarity." Repp & K & R Music v. Andrew Lloyd Weber, 132 F.3d 882, 889 (2 Cir. 2010).

As the Complaint identifies the copyrighted materials, the infringing materials, and alleges the recreation of the Miss Cleo character's look and feel by Defendants, the Complaint more than satisfies Rule 8. As the Film and copyrights are referred in the Complaint, the Court is free to review, itself, the videos and comparisons. They undeniably demonstrate the substantial similarities sufficient to survive a motion to dismiss.

**2. Plaintiff's State a Claim for Trademark Infringement**

There is a two-prong test for copyright infringement: (1) whether the Mark is entitled to protection; and (2) whether Defendants' use of the Mark is likely to cause consumer confusion as to the origin or sponsorship of the Defendants' product or services. Gruner and John USA Publishing v. Meredith Corp., 991 F.2d 1072 (2nd Cir. 1993).

Defendants' raise four (4) arguments for dismissal of the Lanham Act claims. They are: Plaintiff's Mark was pending at the time of the action; that the claim is barred by the Rogers case; there is no likelihood of confusion; and, fair use. The allegation lacks merit and improperly call upon the Court to make findings of facts at the motion to dismiss stage.

**a. PRN Holds a Registered Trademark for "Miss Cleo"**

Defendants admit that the final registration was issued by the USPTO on January 7, 2025. (Def. Memo of Law, p. 7). Thus, it is undisputable that Plaintiff's Mark is entitled to protection under both the Lanham Act and New York's unfair competition law. ESPN, Inc. v. Quicksilver, Inc., 586 F.Supp.2d 219, 230 (S.D.N.Y. 2008). "Registered trademarks are presumed to be distinctive and should be afforded the utmost protection." Luis Sportswear, USA v. Levi Strauss & Co., 799 F.2d 867, 871 (2nd Cir. 1986). The argument of Defendants that Plaintiff doesn't hold a registered trademark for Miss Cleo is now moot.

As laid out earlier herein, the Miss Cleo Mark is clearly distinctive, long associated with Plaintiff PRN, and entitled to protection. Even an unregistered Mark is entitled to protection under State law – We would point out to the Court that the

application was filed on September 28, 2023, long before the Film was released. – In short, as the Mark is now registered, with a date of first use back to 2000, the Mark satisfies the first prong of the two-prong test. (Dichter Decl. Ex. 3).

**b. Defendants Cannot Hide Behind the Rogers Case to Escape Liability.**

The decision in the Rogers case was subsequently reviewed by the U.S. Supreme Court in Jack Daniels v. VIP Products, 599 U.S. 140 (2023). The Supreme Court held that Rogers heightened First Amendment protection does not apply "when the alleged infringer uses a trademark in the way the Lanham Act cares most about: as a designation of source for the infringer's own goods." That is exactly the case here. Defendants' use of the famous Mark, "Miss Cleo," is solely to palm off PRN's Mark to promote its own Lifetime Channel's product.

Post Jack Daniels, the Second Circuit revisited its standard in Vans, Inc. v. MSCHF Product Studio, 88 F.4th 136 (2nd Cir. 2023), cert. denied 144 S. Ct. 1339 (2024). In Vans, the Court rejected the same arguments made here by Defendants of protection as a form of expression. The Court found that where the use of Vans' Mark by MSCHF was in much the same way as Vans used the Mark, then Defendants' use of the Mark is as a source identifier. The Court then applied the traditional Polaroid factors for determining likelihood of confusion and not Rogers.

The Polaroid factors raise issues of fact that need not be addressed at the motion to dismiss stage. "Determination of likelihood of confusion" is not an inquiry appropriate on a motion to dismiss." Deere and Co. v. MTD Prods, Inc., 2001 WL 435613 (SDNY 2001). "[T]he hurdle for Plaintiff's claim regarding the likelihood of confusion is

exceedingly low." Scotch & Soda BV v. Scotch & Iron LLC, 2018 WL 2224997 (SDNY 2018).

If the Court looks to the Polaroid factors at this time, applying Polaroid, the Miss Cleo Mark is strong. Defendants' use of the Mark is identical to PRN's. A&E used the Mark Miss Cleo on the poster and in its trailer for the Film in the same manner as PRN to promote its product. They both utilized television to promote their product and services. The fact that the public associates Miss Cleo with Plaintiff's psychic reading service is likely to cause confusion as to whether PRN is associated with Defendants' Film. As the Film is a story about the Miss Cleo character, the substantiality of the portions used is self-evident and purely for commercial purpose. Thus, even though not appropriate to do so at this stage, the Polaroid factors weigh heavily in PRN's favor.

As the allegation of the Complaint are sufficient to allege likelihood of confusion (Complaint ¶¶34-36), accordingly, Defendants' Motion to Dismiss the Lanham Act claim is without merit.

**c. Defendants' Use of the Mark is for a Commercial Purpose and Does Not Qualify As Fair Use**

The fair use defense fails on several grounds. Even under the caselaw cited by Defendants, it is clear that Defendants' infringing use of the Mark is not protected under the fair use doctrine. First, "[N]omative fair use allows a defendant to use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of the defendant's product or the Mark holder's sponsorship or affiliation." (Defendants" MOL, p. 16 – quoting Fizz 30 Corp. v. Flower Au., Inc., 2024 WL 4264842 (SDNY 2024)). As detailed above, Plaintiff alleges Defendants' use of the Mark has caused likelihood of confusion and therefore Fair Use is not a defense.

Second, under Vans, discussed above, Defendants' use of Plaintiff's Mark is used as a source identifying and therefore fair use is also not applicable for that reason.

Third, to qualify as fair use, the Mark must be used in a fashion other than as a Mark; in a descriptive sense and in good faith. A review that is more commonly and appropriately undertaken at the summary judgment stage. The Miss Cleo Mark is not merely descriptive, rather it is famous and distinctive. Fourth, regardless, fair use is not an affirmative defense to a trademark infringement claim. International Info. Sys., Inc. v. Security University, LLC, 823 F.3d 153 (2nd Cir. 2016).

Defendants use of the Mark is not for some independent artistic purpose, but rather to palm off Plaintiff's Mark to promote its commercial enterprise based upon PRN's Miss Cleo. In this capacity, it is held that "the larger the volume (or greater the importance of the original taken), the less likely the taking will qualify as fair use." Cariou v. Prince, 714 F.3d 594 (2nd Cir. 2013); -- no fair use found -- Salinger v. Colting, 641 F.Supp.2d 250 (SDNY 2009) – Holding that a fair use defense does not protect the author of a novel that continues the story of Catcher in the Rye and its character Holden Caufield from an infringement claim. The Second Circuit upheld this finding. 607 F.3d 68 (2010) (but reversed on other grounds). Warner Bros. Ent. v. RDR Books, 575 F.Supp.2d 513 (SDNY 2008) (creator of Harry Potter encyclopedia – not fair use). There is nothing transformative about the replication and copying of a character and dialogue.

Here, the Mark "Miss Cleo" is clearly being used by Defendants as a Mark to identify PRN's Miss Cleo Mark, not for some other purpose. The Complaint alleges they did so in bad faith as Defendants at no time reached out to Plaintiff for permission to use

its intellectual property. (Complaint ⁋22). Rather, it chose to unilaterally exploit Plaintiff's property. A fair use defense has no place here.

**3. A Corporation May Maintain An Action for Defamation for Harm to the Corporation**

There has long been established that a corporation may sue for defamation where its reputation is injured by a false statement harming the corporation's business reputation. LaLuna Enterprises, Inc. v. CBS Corp., 74 F.Supp. 20 184 (1999); N.Y. Soc. For Suppression of Vice v. Macfaddin Publ., 260 N.Y. 167 (1932).

Where a corporation is the Plaintiff in an action for defamation, the Court or jury determines whether the published statement relates to its business and injures its reputation. It has been held that a charge that a business is operated dishonestly is defamatory per se and damages are presumed. First Nat'l Bank of Waverly v. Winters, 235 N.Y. 47 (1918). That is the case here. The Film depicts PRN as a dishonest business through false assertions. The reliance by Defendants on the FTC are inappropriate here as it calls on the Court to make finding of fact. Nevertheless, the Film does not portray the case or its resolution accurately. No fine was assessed and no finding of wrongdoing was made. Further, the allegation that large sums were paid to "victims" is equally inaccurate. The falsehoods are alleged to be harmful to PRN. The defamatory statements go well beyond that. The Film's dialogue includes PRN was "ripping off millions of people," "pulling [psychics] off the street." It utilizes the real names of PRN's officers to disparage the management of the corporation and thereby the corporation. It portrays PRN's principal, Steven Feder, as a drunk at the office and in business meetings. Thus, the defamatory remarks in the Film, even if directed at its owners, all are within the context of operating the business and harm its reputation.

In this case, for example, the Film falsely states that one of PRN's principals, Peter Stolz, tells the Miss Cleo character in the Film that Steven Feder, as owner of PRN, laughed at a man falling down a staircase and dying. The false statement clearly injures not just Mr. Feder, but his corporation's reputation. The Film also asserts that PRN paid a large sum to "victims." This is equally false and harms PRN's reputation. As evidenced by the actions of General Mills, LVMH and Take-Two Interactive, PRN's Miss Cleo remains a popular and valuable Mark that Defendants' actions have now tarnished and harmed. Thus, the Complaint allegations that PRN's reputation was harmed by the false statements is sufficient to withstand the Motion to Dismiss.

Moreover, there is no heightened standard for defamation claims commenced in Federal Court. The general principals of Rule 8 apply. The Plaintiff meets the notice pleading requirements by alleging false statements published to third parties without consent. Restis v. American Coalition against Nuclear Iran, 53 F.Supp.3d 705 (SDNY 2014). Here, the Film was published to hundreds of thousands and likely millions of viewers.

**4. State Law Claims**

Plaintiff does not deny that when the Court denies the Defendants' Motion to Dismiss as to the copyright and trademark claims, that those State Law Claims related to intellectual property are preempted. However, to the extent the Court finds a lack of Federal jurisdiction to any claim, State Law remedies are available and may be addressed by the Court through diversity. In addition, the defamation claim is not preempted.

**5. Leave to Amend Would Be Appropriate**

If the Court finds that Plaintiff's Complaint is deficient in any manner, as shown herein, any shortcomings can be addressed through an amended complaint. Defendants' arguments go whether the pleading requirements are met and not that there is no claim as a matter of law. Indeed, the Defendants' arguments largely are based upon the Court making findings of fact. Thus, Plaintiff respectfully requests the opportunity to amend should the need arise.

## Conclusion

Based upon all of the above, Plaintiff Psychic Readers Network respectfully requests that the Motion to Dismiss of Defendants must be denied in its entirety.

DATED: Beford Hills, New York
February 27, 2025

DICHTER LAW, LLC

/Joel R. Dichter/

Joel R. Dichter, Esq.
Dichter Law, LLC
483 Cherry Street, Suite 100
New York, NY 10507
Telephone: (212) 593-4202
Fax: (212) 994-5394
*(pro hac vice)*

Attorneys for Plaintiff
Psychic Readers Network, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of February, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will generate and serve a Notice of Electronic Filing to the following:

/Joel R. Dichter/

Joel R. Dichter