**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PSYCHIC READERS NETWORK, INC.<br><br>Plaintiff,<br><br>vs.<br><br>A&E TELEVISION NETWORKS, LLC AND HILLIONAIRE PRODUCTIONS LLC,<br><br>Defendants. | Case No.: 1: 24-cv-08155-DEH |

**DEFENDANTS A&E TELEVISION NETWORKS, LLC'S AND HILLIONAIRE PRODUCTIONS LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

Scott J. Sholder, Esq.
CeCe M. Cole, Esq.
COWAN DEBAETS ABRAHAMS
& SHEPPARD, LLP
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Fax: (212) 974-8474

*Attorneys for Defendants A&E Television Networks, LLC and Hillionaire Productions LLC*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 1

I. PLAINTIFF'S COPYRIGHT CLAIM FAILS ON MULTIPLE GROUNDS. ..... 1

A. Undisputed Sections of the MTD Should Be Granted. ..... 1

B. Registrations Missing from the Complaint Cannot Be Added Now ..... 2

C. The "Miss Cleo" Character Is Not Sufficiently Delineated. ..... 3

II. *ROGERS* AND NOMINATIVE FAIR USE BAR PRN'S TRADEMARK CLAIM. ..... 4

III. PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED AND LACK MERIT. ..... 6

IV. PLAINTIFF FAILS TO DEFEND ITS DEFAMATION CLAIM. ..... 7

A. Plaintiff Fails to Plead Defamation or Defend the Claims in the Complaint ..... 7

B. Plaintiff Improperly Attempts to Introduce New Statements in Its Brief. ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES


Cases Page(s)

*Afftrex, Ltd. v. Gen. Elec. Co.*,
161 A.D.2d 855 (3d Dep't 1990) ..... 10

*Allen v. Scholastic Inc.*,
739 F. Supp. 2d 642 (S.D.N.Y. 2011) ..... 3

*Anderson v. Stallone*,
1989 WL 206431 (C.D. Cal. Apr. 25, 1989) ..... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 6

*Brown v. Showtime Networks, Inc.*,
394 F. Supp. 3d 418 (S.D.N.Y. 2019) ..... 5, 6

*Cariou v. Prince*,
714 F.3d 694 (2d Cir. 2013) ..... 6

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) ..... 7

*Clark v. Kitt*,
2014 WL 4054284 (S.D.N.Y. Aug. 15, 2014) ..... 1, 2, 9

*Cole v. John Wiley & Sons*,
2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) ..... 2

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
125 F.3d 28 (2d Cir. 1997) ..... 5

*Diamond Collection, LLC v. Underwraps Costume Corp.*,
2018 WL 1832928 (E.D.N.Y. Apr. 16, 2018) ..... 6

*Dillon v. City of New York*,
261 A.D.2d 38 (1st Dep't 1999) ..... 10

*Down to Earth Organics, LLC v. Efron*,
2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024) ..... 5

*Fairstein v. Netflix, Inc.*,
553 F. Supp. 3d 48 (S.D.N.Y. 2021) ..... 10

*In re Jackson*,
972 F.3d 25 (2d Cir. 2020)....................4

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
599 U.S. 140 (2023)....................4

*JBrick, LLC v. Chazak Kinder, Inc.*,
2022 WL 17177854 (E.D.N.Y. Nov. 23, 2022)....................7

*JTH Tax LLC v. AMC Networks, Inc.*,
694 F. Supp. 3d 315 (S.D.N.Y. 2023)....................5, 7

*Kelly v. L.L. Cool J.*,
145 F.R.D. 32 (S.D.N.Y. 1992)....................2

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006)....................10

*Kolari v. N.Y.-Presbyterian Hosp.*,
455 F.3d 118 (2d Cir. 2006)....................7

*Leidig v. BuzzFeed, Inc.*,
371 F. Supp. 3d 134 (S.D.N.Y. 2019)....................7

*Lewinson v. Henry Holt & Co. LLC*,
659 F. Supp. 2d 547 (S.D.N.Y. 2009)....................4

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
83 F. Supp. 3d 501 (S.D.N.Y. 2015)....................2

*Logfret, Inc. v. Gerber Fin., Inc.*,
559 F. Supp. 3d 348 (S.D.N.Y. 2021)....................2

*Longo v. Ortiz*,
2016 WL 5376212 & n.5 (S.D.N.Y. Sept. 26, 2016)....................2

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't, Inc.*,
868 F. Supp. 2d 172 (S.D.N.Y. 2012)....................5

*Maroney v. Woodstream Corp.*,
695 F. Supp. 3d 448 (S.D.N.Y. 2023)....................8

*Martinez v. Sanders*,
2004 WL 1234041 (S.D.N.Y. June 3, 2004)....................1, 7

*Medina v. Dash Films, Inc.*,
2016 WL 3906714 (S.D.N.Y. July 14, 2016) .......... 5

*Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co., Inc.*,
900 F. Supp. 1287 (C.D. Cal. 1995) .......... 4

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990) .......... 10

*Mosher v. Veyda*,
2024 WL 4932621 (S.D.N.Y. Dec. 2, 2024) .......... 7

*Olivet Univ. v. Newsweek Digital LLC*,
2024 WL 1892563 (S.D.N.Y. Apr. 30, 2024) .......... 7, 9, 10

*Phillies v. Harrison/Erickson*,
2021 WL 5936523 (S.D.N.Y. Aug. 10, 2021) .......... 3, 4

*Piuggi v. Good for You Prods. LLC*,
739 F. Supp. 3d 143 (S.D.N.Y. 2024) .......... 6

*Press v. Primavera*,
685 F. Supp. 3d 216 (S.D.N.Y. 2023) .......... 8

*Rice v. Fox Broad. Co.*,
330 F.3d 1170 (9th Cir. 2003) .......... 3

*Roberts v. Bliss*,
229 F. Supp. 3d 240 (S.D.N.Y. 2017) .......... 6, 7

*Royal Canin U. S. A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) .......... 7

*Salinger v. Colting*,
641 F. Supp. 2d 250 (S.D.N.Y. 2009) .......... 6

*Sapon v. DC Comics*,
2002 WL 485730 (S.D.N.Y. Mar. 29, 2002) .......... 4

*Silverman v. CBS, Inc.*,
870 F.2d 40 (2d Cir. 1989) .......... 3

*Simmons v. Trans Express Inc.*,
16 F.4th 357 (2d Cir. 2021) .......... 8

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
709 F.3d 1273 (9th Cir. 2013) .... 3

*Stephens v. Trump Org. LLC*,
205 F. Supp. 3d 305 (E.D.N.Y. 2016) .... 10

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017).... 10

*Thorsen v. Sons of Norway*,
996 F. Supp. 2d 143 (E.D.N.Y. 2014) .... 8

*Toney v. L'Oreal USA, Inc.*,
406 F.3d 905 (7th Cir. 2005) .... 4

*Twentieth Century Fox Television v. Empire Dist., Inc.*,
875 F.3d 1192 (9th Cir. 2017) .... 5, 10

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*,
88 F.4th 125 (2d Cir. 2023) .... 4, 5

*Warner Bros. Ent. Inc. v. RDR Books*,
575 F. Supp. 2d 513 (S.D.N.Y. 2008).... 6

*Warner Bros., Inc. v. Am. Broad. Cos.*,
530 F. Supp. 1187 (S.D.N.Y. 1982).... 4

Statutes

28 U.S.C. § 1367(a) .... 7
N.Y. Gen. Bus. Law § 349.... 6

Rules

CPLR 3016(a) .... 10
Fed. R. Civ. P. 8.... 10

Defendants AETN and Hillionaire respectfully submit their reply in further support of their Motion to Dismiss.[1]

## PRELIMINARY STATEMENT

Plaintiff's brief in opposition to Defendants' MTD ("Opposition", ECF 38) concedes material points and fails to rebut or address others, misrepresents Defendants' arguments, and attempts to introduce new facts and claims not in the Complaint. The Opposition fails to defend Plaintiff's claims in any meaningful way, let alone explain its significant pleading deficiencies.

## ARGUMENT

### I. PLAINTIFF'S COPYRIGHT CLAIM FAILS ON MULTIPLE GROUNDS.

#### A. Undisputed Sections of the MTD Should Be Granted.

Plaintiff does not oppose several of Defendants' arguments regarding the deficiency of PRN's copyright claims; portions of the MTD should be granted with prejudice. (*See* MTD at 3-6.) *See, e.g.*, *Martinez v. Sanders*, 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004). Plaintiff does not refute that the Miss Cleo Works do not appear in the Film. Rather, PRN argues that Miss Cleo appears on the Tarot Card box and the Film's promo poster. (Opp. at 3; Dichter Decl. (ECF 39)[2] Ex. 2 (ECF 39-2).) But the registration for the Miss Cleo Tarot Cards does not say it includes the box cover art (*see* ECF 1-1), nor does the Complaint allege similarity between the box and poster.[3]

---

[1] Capitalized terms bear the same meaning as in Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("MTD", ECF 27), and internal quotation marks and citations are omitted unless otherwise indicated herein.

[2] The Court should ignore the portions of and exhibits to the Dichter Declaration that try to "advance factual averments or legal arguments." *Clark v. Kitt*, 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014), *aff'd*, 619 F. App'x 34 (2d Cir. 2015) ("[D]eclarations of counsel are generally properly used only to describe the documents attached to them as exhibits for the Court's consideration…not to advance factual averments or legal arguments.").

[3] The poster comparison should be excluded as improper testimony, *Clark*, 2014 WL 4054284, at *7, and does not even include the Miss Cleo Tarot Cards or box; PRN instead provides a screenshot from an unidentified "Miss Cleo Clip 1." (ECF 39-2; Opp at 3.) Even so, the images are not substantially similar when placed side by side. (*Id.*)

Plaintiff also does not meaningfully oppose Defendants' access argument and rather misrepresents that point. Defendants argued PRN never *pleaded* access, an essential element of copyright infringement. (*See* MTD at 6.) This point is undeniable and unopposed. Defendants also argued they could not have accessed the *Miss Cleo Video*, which per its registration, was unpublished. (*See* MTD at 6 & ECF 1-3.) Plaintiff now claims—improperly via the Dichter Declaration—that the Miss Cleo Video was on "pay per view" (Opp. at 6; ECF 39 at ¶ 3), contradicting the Video's registration. (*See* ECF 1-3.) *See Clark*, 2014 WL 4054284, at *7.

### B. Registrations Missing from the Complaint Cannot Be Added Now.

PRN controlled which works to put at issue yet only included the three Miss Cleo Works in its Complaint and AO-121 form. (*See* Compl., Exs. 1-3; ECF 3.) Now PRN claims no fewer than nine more works are at issue. The Complaint did not include registrations for commercials. The Opposition is not the time and Dichter Declaration not the place for Plaintiff to first introduce these registrations.[4] (*See* ECF 39-1.) *See Longo v. Ortiz*, 2016 WL 5376212, at *4 & n.5 (S.D.N.Y. Sept. 26, 2016); *Logfret, Inc. v. Gerber Fin., Inc.*, 559 F. Supp. 3d 348, 361 (S.D.N.Y. 2021).

While Plaintiff makes vague passing references to commercials in the Complaint, it certainly could have included them. (*See, e.g.*, Compl. ¶ 13.)[5] Defendants are not the alleged psychics here and could not have known what commercials PRN was referring to in the Complaint. It is PRN's obligation under Rule 8 to give Defendants notice of what works it claims were infringed. *See, e.g.*, *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 507-09 (S.D.N.Y. 2015); *Cole v. John Wiley & Sons*, 2012 WL 3133520, at *11-14 (S.D.N.Y. Aug. 1, 2012); *Kelly*

---

[4] The Court should strike Dichter Declaration ¶¶ 8-12 because counsel inappropriately testifies as a fact witness and tries to further PRN's legal arguments. (ECF 39 at ¶ 8 (Film available on "streaming services"); ¶ 9 ("I compared the [Film's] recreated Miss Cleo television commercial…with one of PRN's copyrighted commercials"); ¶¶ 10-11 ("I called the 800 number" used in the Film); ¶ 12 (Film incorporates PRN's material). *Clark*, 2014 WL 4054284, at *7.

[5] The Complaint inexplicably refers to seven copyrights, yet only attached three, and now PRN claims there are twelve.

*v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994). Plaintiff failed to do so, and the Court should disregard these belated registrations and infringement claims.[6]

### C. The "Miss Cleo" Character Is Not Sufficiently Delineated.

PRN fails to show that Miss Cleo is "sufficiently delineated" to receive copyright protection. *See Silverman v. CBS, Inc.*, 870 F.2d 40, 50 (2d Cir. 1989). In assessing character copyright protection, "courts look at the many elements of the character—visual depictions, name, dialogue, relationships with other characters, actions and conduct, personality traits, and written descriptions—to determine whether it is sufficiently delineated such that it is a unique expression." *Phillies v. Harrison/Erickson*, 2021 WL 5936523, at *24 (S.D.N.Y. Aug. 10, 2021) (Phillies mascot not "sufficiently delineated"). The Complaint is bare of any descriptions of the elements required to delineate a character; it is not enough that "[h]er image, voice and expressions are the result of PRN's creative endeavors and have little in common to a psychic with a globe." (Opp. at 12.) *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1175 (9th Cir. 2003) (magician "in standard magician garb" and "limited to performing and then revealing magic tricks" not copyrightable).

Even if PRN properly pleaded the existence of works of authorship at issue containing the Miss Cleo character (it did not), this would make no difference. Miss Cleo is an amalgamation of stock characteristics, tropes, and clichés, who is merely an alternate personality of the late Ms. Youree Dell Harris; like the Philly Phanatic, she was at best a PRN mascot that was not sufficiently delineated. *See Phillies*, 2021 WL 5936523, at *24; *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1279 (9th Cir. 2013) ("[Ed] Sullivan's charismatic personality…is not copyrightable."); *see also Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 660 (S.D.N.Y. 2011) (characters based on

[6] And it should strike the other "comparisons" in Exhibit 2 to the Dichter Declaration. These "snapshot comparisons" also constitute improper testimony (Dichter Decl. ¶ 5), are not authenticated, are clearly cherry-picked from much longer videos, and one of them does not even indicate which commercial it is. (*Id.* Ex. 2).

a "general prototype [are] too indistinct to merit copyright protection"); *Lewinson v. Henry Holt & Co. LLC*, 659 F. Supp. 2d 547, 567 (S.D.N.Y. 2009) (stock characters not copyrightable).

Miss Cleo is nothing like iconic and copyrightable characters upon whom massive commercial empires and intricate worlds and universes are built. *See e.g., Sapon v. DC Comics*, 2002 WL 485730, at *11 (S.D.N.Y. Mar. 29, 2002) (Batman); *Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co., Inc.*, 900 F. Supp. 1287, 1295-97 (C.D. Cal. 1995) (James Bond); *Anderson v. Stallone*, 1989 WL 206431, at *7-8 (C.D. Cal. Apr. 25, 1989) (Rocky); *Warner Bros., Inc. v. Am. Broad. Cos.*, 530 F. Supp. 1187, 1193 (S.D.N.Y. 1982) (Superman). She is merely the stage "persona, portrayed by Ms. Harris" (Compl. ¶ 8), not a well-developed character embodied in creative properties. *See In re Jackson*, 972 F.3d 25, 45 (2d Cir. 2020) (noting that "neither stage names nor voices—nor a person's identity or likeness—are works of authorship that fall within the subject matter of copyright"); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) (same, and persona not "fixed"). Plaintiff provides no examples of how Miss Cleo is a delineated character distinct from Harris herself, let alone the works in which she is fixed.[7]

## II. ***ROGERS* AND NOMINATIVE FAIR USE BAR PRN'S TRADEMARK CLAIM.**

PRN erroneously claims that Defendants are not protected under *Rogers v. Grimaldi* because the "Miss Cleo" Mark is being used as a source identifier. PRN's reliance on *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023) and *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125 (2d Cir. 2023) (Opp. at 19-20), is misguided. The *Jack Daniel's* Court clarified that *Rogers* fails to apply only where defendants used plaintiff's mark "as a designation of source" for its whiskey bottle-shaped dog toy. (MTD at 9 n.4.) *Jack Daniel's Props., Inc.*, 599 U.S. at 148,

[7] Plaintiff argues Miss Cleo is sufficiently delineated because she was "parodied" on TV (*see* Compl. ¶ 10; Opp. at 12), but this fails because PRN is not the author of such performances. *See Phillies*, 2021 WL 5936523, at *24.

159–61. Likewise, *Rogers* did not apply where "MSCHF used Vans' trademarks—particularly its red and white logo—to brand its own" sneakers, which is "quintessential trademark use." *Vans, Inc.*, 88 F.4th at 138–39. These cases dealt with infringing products that directly traded on plaintiff's trademarks as *source identifiers*.

Here, the facts are completely different. Plaintiff's Mark is for the provision of "new age and psychic services, namely astrological forecasting, tarot card readings, psychic consultation and advice, via telephone, television and the internet." (ECF 1-4.) Defendants—a television and film production company and a distributor—do not plausibly offer any related services, nor does Plaintiff so allege. Rather, the use of the name "Miss Cleo" was in the Film's title, body, and promotional material because the Film is about Miss Cleo. Further, the presence of the Defendants' *own trademarks* in the Film's promotional materials dispels any notion that the Mark was used to identify the source of Defendants' services as opposed to being an artistically relevant and, indeed, a necessary element of the title and substance of the Film. *See Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30–31 (2d Cir. 1997). These are precisely the circumstances where *Rogers* and its progeny apply. *See, e.g.*, *Down to Earth Organics, LLC v. Efron*, 2024 WL 1376532, at *4 (S.D.N.Y. Mar. 31, 2024); *JTH Tax LLC v. AMC Networks, Inc.*, 694 F. Supp. 3d 315, 332-33 (S.D.N.Y. 2023); *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 441-44 (S.D.N.Y. 2019); *Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *6 (S.D.N.Y. July 14, 2016); *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't, Inc.*, 868 F. Supp. 2d 172, 177-84 (S.D.N.Y. 2012); *Twentieth Century Fox Television v. Empire Dist., Inc.*, 875 F.3d 1192, 1197–98 (9th Cir. 2017). Plaintiff notably does not oppose Defendants' analysis under *Rogers* concerning artistic relevance and explicit misleadingness.

Also, it fundamentally makes no sense that Plaintiff argues on the one hand that Defendants' use of the Mark is likely to cause confusion, and on the other hand, the Film is defamatory. *See Brown*, 394 F. Supp. 3d at 443. The average consumer would not believe that PRN is associated with an allegedly defamatory movie about itself. *Cf. Roberts v. Bliss*, 229 F. Supp. 3d 240, 251–52 (S.D.N.Y. 2017) (dismissing Lanham Act claim where defendant parodied plaintiff's trademark). The Court need not accept as true Plaintiff's threadbare legal conclusions that there is a likelihood of confusion. (Opp. at 19-20; MTD at 11-15.) *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Finally, in opposition to Defendants' argument that their use of the Mark is nominative fair use, Plaintiff relies on three cases that dealt with fair use under the *Copyright Act*, which are inapplicable. (Opp. at 21 (citing *Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013); *Salinger v. Colting*, 641 F. Supp. 2d 250 (S.D.N.Y. 2009); *Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513 (S.D.N.Y. 2008). Plaintiff's token opposition to fair use should be deemed a waiver of this issue.

## III. PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED AND LACK MERIT.

Plaintiff concedes its claims under New York's Deceptive & Unfair Trade Practices Law and for unjust enrichment are preempted but conditions their admission on its copyright claim not being dismissed. (*See* Opp. at 23.) Defendants certainly agree these claims are preempted, but the Court may find preemption *and* dismiss the copyright infringement claim. *See Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 170 (S.D.N.Y. 2024) (dismissing copyright infringement claim and finding that unjust enrichment claim was preempted); *Diamond Collection, LLC v. Underwraps Costume Corp.*, 2018 WL 1832928, at *8 (E.D.N.Y. Apr. 16, 2018) (dismissing copyright and trademark claims and finding N.Y. Gen. Bus. Law § 349 claim preempted).

PRN fleetingly argues—with no citation to case law—that this Court should exercise supplemental jurisdiction over all three state law claims regardless of preemption. Federal courts

rarely retain jurisdiction over state law claims under 28 U.S.C. § 1367(a) once the anchor federal claims are dismissed unless "judicial economy, convenience, fairness, and comity" counsel otherwise. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). This is not a case where the Court should exercise supplemental jurisdiction if it dismisses the federal claims, as this case is in its early stages and "there has been no significant activity" aside from the MTD. *Roberts*, 229 F. Supp. 3d at 253–54; *see also Mosher v. Veyda*, 2024 WL 4932621, at *10 (S.D.N.Y. Dec. 2, 2024) (declining to exercise supplemental jurisdiction after dismissing federal claims); *JTH Tax LLC*, 694 F. Supp. 3d at 341 (same).

Finally, even if Plaintiff's federal claims survive, the state law claims still fail as a matter of law, which PRN failed to refute (MTD at 17-25.) As such, the Court should deem this portion of Defendants' MTD unopposed and dismiss Counts III-V with prejudice. *See JBrick, LLC v. Chazak Kinder, Inc.,* 2022 WL 17177854, at *3 (E.D.N.Y. Nov. 23, 2022); *Martinez*, 2004 WL 1234041, at *3.

## IV. <u>PLAINTIFF FAILS TO DEFEND ITS DEFAMATION CLAIM.</u>

### A. <u>Plaintiff Fails to Plead Defamation or Defend the Claims in the Complaint.</u>

PRN did not adequately plead its defamation claim and failed to defend its Complaint. *See* Opp. at 22-23; *JBrick*, 2022 WL 17177854, at *3; *Martinez*, 2004 WL 1234041, at *3. A defamation plaintiff must "plausibly allege that the challenged statement is 'substantially false'" and damaging. *Olivet Univ. v. Newsweek Digital LLC*, 2024 WL 1892563, at *4 (S.D.N.Y. Apr. 30, 2024), *aff'd* 2024 WL5001841 (2d Cir. Dec. 6, 2024)*; Leidig v. BuzzFeed, Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019), *aff'd*, 788 F. App'x 76 (2d Cir. 2019). This is not a "heightened" pleading standard as Plaintiff alleges; PRN merely repeats its conclusory allegations without

discussion or cites (*see* Opp. at 22-23) and waived any opposition to Defendants' substantive arguments. *See, e.g.*, *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 171–72 (E.D.N.Y. 2014).

PRN also argues that the Court should not consider the FTC Complaint, FTC Judgment, or press release because "it calls on the Court to make finding of fact [sic]." (Opp. at 22; *see* ECF 28-1, 28-7–8.) But Defendants have not asked the Court to do so and instead requested that the Court take judicial notice of (1) the "acknowledge[ment]" ***by PRN itself*** in the FTC Judgment "that the FTC ***has a good faith basis for the allegations*** made in its Complaint" (FTC Judgment ¶ 8); (2) the remedies in the FTC Judgment; and (3) the nature of the claims in the FTC Complaint (i.e., "unfair or deceptive acts or practices"; violations of "procedures for billing and collecting charges for pay-per-call services" and disclosures regarding the same; and injuries to consumers who "have suffered monetary losses") (FTC Compl. ¶¶ 59, 73, 83), which are all integral to Defendant's truth defense to PRN's defamation claims. *See Press v. Primavera*, 685 F. Supp. 3d 216, 224 (S.D.N.Y. 2023) (judicial notice of court filings); *see also Simmons v. Trans Express Inc.*, 16 F.4th 357, 360–61 (2d Cir. 2021) (same of documents indicating the claims plaintiff brought in small claims court, the remedies sought, and judgment awarded); *Maroney v. Woodstream Corp.*, 695 F. Supp. 3d 448, 453 (S.D.N.Y. 2023) (same of agency records such as FTC consent orders).

Plaintiff also disingenuously tries to split hairs regarding statements relating to the FTC actions. *First*, Plaintiff claims that the Film contains the supposedly defamatory "allegation that large sums were paid to 'victims'" (Opp. at 22-23.) This statement is absent from the Complaint (*see generally* Compl.) and was raised for the first time in the Opposition and is therefore waived. Regardless, the statements made in the Film are true, or at a minimum, substantially true.

For full context, a text "card" at the end of the Film states that "Steven Feder and Peter Stolz paid hefty sums to the FTC and multiple states and victims for the billions of dollars they

reaped through [PRN].” (Film at 1:25:40.) The FTC Judgment (at 8, § VI) reads similarly: the court entered judgment against the FTC Defendants for $250,000,000, with judgment to be suspended upon the collective “Defendants’” payment of $5,000,000 to the FTC, with such money to be deposited into a fund administered by the FTC to be used for, *inter alia*, “consumer redress.” The FTC Defendants “acknowledge[d] that the FTC has a good faith basis for the allegations made in its Complaint” (*id.* at 2), which catalogued how “Consumers throughout the United States have suffered monetary losses and other injury as a result of Defendants’ unlawful acts or practices.” (*See generally* FTC Compl. at 13-18.) It is true that “hefty sums” were paid and there were “victims.” At worst, the words used were technically incorrect, which does not constitute defamation. *See Olivet Univ.*, 2024 WL 1892563, at *4.

*Second*, Plaintiff claims the Film falsely said that “PRN was fined by a Federal Agency” (Compl. ¶ 50) and “Plaintiff bills customers who’s [sic] phones had been ‘disconnected years ago.’” (*Id.* ¶ 51(d).) The word “fine” is not even used in the Film, which as noted above and in the Dichter Declaration, truthfully refers to “hefty sums.” (Film at 1:25:42; ECF 39 at ¶ 7.) As to the statement regarding disconnected phones (MTD at 20), this was in the FTC Complaint (at ¶ 48).

**B. <u>Plaintiff Improperly Attempts to Introduce New Statements in Its Brief.</u>**

PRN attempts to shoehorn new facts and elements into its Complaint by raising more allegedly defamatory statements for the first time in its Opposition and the Dichter Declaration. (Opp. at 22-23; ECF 39 at ¶ 7.[8]) In its Complaint, PRN claims that “[t]he Film sets forth numerous false and misleading statements that portray Plaintiff and its officers in a false light” but then only offers a smattering of allegedly defamatory examples, which as discussed in the MTD, are true, hyperbole, or opinion. (*See* Compl. ¶ 48; MTD at 22-23.) Plaintiff’s bald assertions are not enough,

[8] These statements should be stricken. *Clark*, 2014 WL 4054284, at *7

*Olivet Univ.*, 2024 WL 1892563, at *4, and it now tries to amend these deficiencies by claiming it was defamed by dialogue in the Film such as, "PRN was 'ripping off millions of people,' [and] 'pulling [psychics] off the street.'" (Opp at 22-23; ECF 39 at ¶ 7.) Having failed to allege these statements in the Complaint, they cannot be considered now. *See generally* Fed. R. Civ. P. 8; CPLR 3016(a); *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999); *Stephens v. Trump Org. LLC*, 205 F. Supp. 3d 305, 310 (E.D.N.Y. 2016).

In any event, the Court should reject Plaintiff's arguments as meritless. The Film does not, in fact, claim that "PRN was 'ripping off millions of people;'" instead, the Florida state prosecutor depicted in the Film was speaking about *Miss Cleo*, not PRN. *See* Film at 54:00-54:05; *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 80 (S.D.N.Y. 2021). It is also unclear—and Plaintiff makes no argument—how the statement "pulling [psychics] off the street" is defamatory. *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017). This statement constitutes loose, figurative, and/or hyperbolic rhetoric concerning PRN's practices that is protected by the First Amendment. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990).

Finally, PRN cites no case law for the proposition that supposed defamation of non-party Steven Feder can be attributed to PRN. (Opp. at 22-23.) *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006). Nor can Plaintiff explain how such statements were "of and concerning" PRN as opposed to Feder, personally. *Id.* (collecting cases); *Afftrex, Ltd. v. Gen. Elec. Co.*, 161 A.D.2d 855, 856 (3d Dep't 1990).

## CONCLUSION

For the reasons stated above and in the MTD, the Court should dismiss Plaintiff's entire Complaint with prejudice.

Dated: New York, New York
March 21, 2025

Respectfully submitted,

**COWAN DEBAETS ABRAHAMS & SHEPPARD, LLP**

By: /s/ Scott J. Sholder
Scott J. Sholder, Esq.
CeCe M. Cole, Esq.
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Fax: (212) 974-8474
ssholder@cdas.com
ccole@cdas.com

*Attorneys for Defendants A&E Television Networks, LLC and Hillionaire Productions LLC*

**CERTIFICATE OF SERVICE**

I, Scott J. Sholder, hereby certify that a true and correct complete copy of the foregoing Defendants A&E Television Networks, LLC and Hillionaire Productions LLC's Reply Memorandum of Law in Further Support of their Motion to Dismiss has been served on all counsel of record via the Court's CM/ECF service.

/s/ Scott J. Sholder
Scott J. Sholder

## CERTIFICATE OF WORD COUNT

I, Scott J. Sholder, hereby certify that this memorandum complies with Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and based on the word-count function of Microsoft Word, the memorandum contains 3,500 words, excluding the caption, prefatory tables, and signature blocks.

/s/ Scott J. Sholder
Scott J. Sholder