UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

Psychic Readers Network, Inc.,

                  Plaintiff,

       v.

A&E Television Networks, LLC and
Hillionaire Productions, LLC,

                  Defendants.

--------------------------------------------------------X

**CASE NO. 24-cv-08155(DEH)**

## Amended Complaint for Copyright and Trademark Infringement
DEMAND FOR JURY TRIAL

Plaintiff Psychic Readers Network, Inc. ("PRN"), by their attorneys, Dichter Law LLC, for its amended complaint against Defendants A&E Television Networks, LLC ("A&E") and Hillionaire Productions, LLC ("Hillionaire") (collectively "Defendants") alleges as follows:

<u>Introduction</u>

This case involves the Defendants' production of a movie entitled "Miss Cleo: Her Rise and Fall" (the "Film") that appeared on the A&E-owned Lifetime Channel about the psychic character, Miss Cleo. The Miss Cleo persona promoting Plaintiff's psychic reading services became an iconic character in the early 2000's. The brand, "Miss Cleo", had been established in the consciousness of the public by way of a long, detailed advertising campaign costing the brands' rightful owners and creators, PRN, hundreds of millions of dollars. When Defendants elected to copy outright the "Miss Cleo" brand they effectively piggy-backed on Miss Cleo's iconic recognition in this country and saved themselves the huge sum of marketing investment and many years of

development which was already borne by PRN by producing a film based entirely upon PRN's Miss Cleo Character for which PRN had  created a ready-made audience.  So famous was the character that it was parodied on late night talk shows such as Leno and Saturday Night Live.  The Film, produced by Defendant Hillionaire, promoted and aired on A&E's Lifetime Network, infringes upon Plaintiff's copyrighted television commercials and other works featuring the Miss Cleo character by copying the "treatment, details, scenes, events and characterization."  Plaintiff's Miss Cleo Character is itself entitled to copyright protection.  Defendants' entire movie is an unauthorized and infringing recreation of the character, Miss Cleo, owned by PRN, including mimicking the character's clothing, voice, mannerisms and catch phrases. Thus, Plaintiff owns valid copyright registrations for works featuring the Miss Cleo Character that Defendants have copied original elements of without consent; thereby, Defendants are infringing upon Plaintiff's copyrights.

<u>Jurisdiction and Venue</u>

1.    This action arises under the United States Copyright Act, 17 U.S.C. §101 et seq., and New York law as to unfair competition and defamation.

2.    Jurisdiction of the subject matter of this action is conferred on this Court by 28 U.S.C. §§1331, 1338, and 1367.

3.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391 and 1400.

<u>The Parties</u>

4.    Plaintiff Psychic Readers Network, Inc. ("PRN") is a corporation organized and existing under the laws of the State of Delaware, with it primary place of

2

business in Ft. Lauderdale, FL. PRN operates a business offering psychic-related services and products to the public including the production of television commercials as well as services and products featuring the psychic known as "Miss Cleo". PRN offered or offers services directly and through a number of wholly-owned subsidiaries and affiliates including: (1) Radar Communications, Inc. ("Radar"), a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Ft. Lauderdale FL, and (2) Oshun 5 Communications, Inc. ("Oshun"), a corporation organized and existing under the laws of the State of Florida. PRN is the holder of copyrights (including copyrights assigned to PRN by Radar) and trademarks pertaining to the production of marketing materials, advertisements, products, promotions and services related to "Miss Cleo" visual, artistic and written works.

5.    Plaintiff is informed and believes, and thereon alleges, that Defendant A&E is a limited liability corporation organized and existing under laws of the State of Delaware with its principal office located in New York, New York.  A&E is the owner of several brands, including Lifetime.  A&E produces, sells, distributes and streams media throughout the United States, internationally, in the State of New York and within the district, including a film entitled "Miss Cleo: Her Rise and Fall."

6.    Plaintiff is informed and believes that Defendant Hillionaire is a limited liability corporation organized and existing under the laws of the State of Florida with its primary places of business in Casselberry, Florida.  Plaintiff is further informed and believes that Defendant Hillionaire is responsible for the creation and production of films and other media, including "Miss Cleo: Her Rise and Fall."

<u>Background Facts</u>

3

PRN Created the Miss Cleo Character and
Copyrighted Works Featuring the Miss Cleo Character

7.     In the 1990's, Plaintiff commenced offering psychic reading services over the telephone. Plaintiff's business grew over the years and generated hundreds of millions of dollars in revenue through the sale of pay-per-call services and products.

8.     In or about the late-1990's, Youree Dell Harris became one of many psychic advisors on the telephone for psychic services offered by Plaintiff ("Ms. Harris"). Plaintiff advised psychic advisors for its services that they were looking for technical assistance on accurately utilizing tarot cards in marketing media.  Plaintiff ultimately selected Ms. Harris to provide the assistance.  Thereafter, Plaintiff decided to test Ms. Harris to be a spokesperson for the business.  The uniquely developed character of Miss Cleo was not successfully at first until through numerous iterations a style, manner and design was developed by PRN creating a Miss Cleo character that wears vibrant caftans and turbans and large necklaces, speaks with a fake Jamaican accent, developed sets with a unique mystical look, created a bio for the character, gave readings from tarot cards, and repeatedly uses catch phrases among other features.  The result is the development of a unique character ("Miss Cleo Character").  Plaintiff, through these various iterations, created the Miss Cleo Character and persona, portrayed by Ms. Harris. Plaintiff coined the name and trademark that became known to the world as "Miss Cleo". Plaintiff retained all worldwide rights, title and interest to the Miss Cleo intellectual property, associated copyrights, materials and in the character Miss Cleo.

9.     Commencing in or around 2000, Plaintiff created television commercials, infomercials, press relations, campaigns, radio spots, books, tarot cards and numerous other materials all featuring the Miss Cleo Character, portrayed by Ms. Harris, promoting

4

its psychic service and products ("Miss Cleo Creatives").  Plaintiff selected Ms. Harris's wardrobe, set design, dialect and wrote the scripts and otherwise was entirely responsible for the "look," "feel" and "sound" the public associates with Miss Cleo (collectively the "Look"). Plaintiff disseminated the Miss Cleo Creatives nationwide and was entitled to all revenues arising therefrom. Plaintiff spent in excess of $100 million advertising and promoting their services through marketing efforts utilizing the Miss Cleo Creatives. Therefore, the Miss Cleo Character became PRN's crucial intellectual property in connection with its success in the psychic reading business.

10.     The frequency of the commercials airing by Plaintiff on television was so prevalent that the Miss Cleo persona became iconic. The Miss Cleo persona is so famous that the commercials were parodied on Saturday Night Live, (by Tracy Morgan and Will Ferrell), MAD TV (by Leona Campbell) and the Dave Chappelle show among many others.  More recently, the Miss Cleo Character was used by General Mills, LVMH and Take Two Interactive to promote products.  PRN sought to and did protect its IP rights in each instance.

11.     Pursuant to a series of agreements in which Ms. Harris was represented by Attorney William J. Cone (who is listed as an executive producer of the Film), Ms. Harris was paid a fee for her participation and held no rights whatsoever to the Miss Cleo trademark, character or Miss Cleo Creatives. The agreements provide that all services performed by Ms. Harris for Plaintiff were works for hire.  Per the Agreement, Ms. Harris had no right to utilize the Miss Cleo Character in any fashion other than through PRN and the agreements provided a duty of Ms. Harris to assist in protecting PRN's intellectual property rights.  Ms. Harris passed away in July 2016 resulting in countless

5

obituaries in leading newspapers, published articles and other media recounting the phenomena that is Miss Cleo.

12.     Plaintiff 's subsidiary Radar obtained three (3) valid copyright registrations for Miss Cleo Creatives.  The Radar registrations encompassed  an originally designed tarot deck with the Miss Cleo character on the face of the deck with an originally designed legend, a book about the fictional life of Miss Cleo, an educational video of the Miss Cleo Character portrayed by Ms. Harris, instructing on how to read tarot cards, were registered on August 7, 2002. The tarot deck and video copyright registrations of Radar were subsequently assigned to Plaintiff PRN in 2015.  See Exhibit 1 for a true and correct printout from the US Copyright Office  website, copyright.gov, of the Certificates of registration obtained by Radar works in connection with the Miss Cleo brand. The Certificate indicates the recording of the assignment of all rights in two of the three copyright registrations to PRN.  Thus, PRN is the owner of the validly registered copyrights with the U.S. Copyright Office in the tarot deck, book and Film.  Radar, a wholly owned subsidiary of PRN, still holds the copyright in the legend.

13.     Additionally, Plaintiff PRN produced countless copyrighted television commercials and infomercials featuring the Miss Cleo Look and Character.  PRN registered seven videos featuring the Miss Cleo Character.  Including the registrations filed by Radar, PRN is the holder of ten (10) valid and enforceable registered copyrights for Miss Cleo Creatives and the Miss Cleo Character embodied in the registered works. Additionally, all of the Miss Cleo Creatives contain copyright notices of PRN reserving all rights.

14.    Annexed hereto is a true and correct printout downloaded from the United States Copyright Office's website, copyright.gov, summarizing the registrations held by PRN related to Miss Cleo and the certificates of registration for each of the works. The registrations identify PRN as the owner of the valid copyrights.  (Exhibit 2 hereto).  In all, the printouts are of the copyright registrations of PRN (including the two assigned by Radar Communications to PRN under one registration, Keeping It real and 1 other title). The works consist of numerous television commercials, an infomercial, a full-length movie, a book, a set of tarot cards and a videotape of the Miss Cleo character describing tarot cards, all featuring the Miss Cleo Character.  The full-length movie was published as a Pay-Per-View offering on cable networks.  The valid PRN registrations are:

| **TITLE** | **REGISTRATION NO.** | **DATE REGISTERED** |
|---|---|---|
| Back Burner | PA0001984540 | 2015 |
| Gifts of Miss Cleo: from my heart to yours | PAu002617294 | 2001 |
| Keepin' it real: a practical guide for spiritual living/Miss Cleo & 1 other title | V9934D842 | 2015 |
| Rev. Booty Call | PA0001984551 | 2015 |
| Rev. Green Eyes Date | PA0001984536 | 2015 |
| Rev. Spooky Date | PA0001984533 | 2015 |
| Spooky Eyes | PA0001984550 | 2015 |
| Take To Church | PA0001984546 | 2015 |

15.    Oshun 5 Communications, Inc. ("Oshun") originally applied for registration of the mark "Miss Cleo" with the United States Patent and Trademark Office

with a date of first use of July 3, 2000 (Serial No. 98201700).  ("the Mark").  Ms. Harris consented to the registration of the trademark by Oshun and acknowledged that all ownership rights in the trademark "Miss Cleo" belong to Oshun.  See Exhibit 3.  The application was not pursued at that time, but was subsequently refiled and registered.  On September 28, 2023, well before the Film was released, Oshun 5 filed another application for registration of the Miss Cleo trademark with the same date of first use in 2000.  As PRN's rights pre-date Defendants' use of the Mark by over 20 years, PRN's common law rights are vastly superior to Defendants.  On January 7, 2025, the USPTO granted the registration of "Miss Cleo" to PRN's subsidiary Oshun 5.  See Exhibit 4.   All rights in the Mark Miss Cleo were then assigned to PRN.  Thus, Miss Cleo is now a registered Mark of PRN with protection against trademark infringement back to the date of first use in 2000.

16.    PRN is thus the creator of the Miss Cleo Look and Miss Cleo Creative and Mark, and holds all intellectual property rights to not just the copyrighted materials and Mark, but to the Miss Cleo Character portrayed therein.  Courts have repeatedly ruled that the character within a copyrighted work (i.e. Rocky Balboa, Holden Caulfield) is entitled to the full scope of protections afforded under the Copyright Act.  As such, Defendants have infringed upon each and every copyright registration of PRN as they all include the famous and iconic Miss Cleo Character.

<u>Defendants' Infringement of Miss Cleo</u>

17.    Plaintiff is informed and believes that Defendants produced and began distributing the film "Miss Cleo: Her Rise and Fall" ("the Film") in the United States commencing with the release of an official trailer on July 16, 2024, and the prime time premier of the Film on the Lifetime Network on August 10, 2024. Lifetime Network is owned by Defendant A&E.

18.    According to USTVDB, the Film debuted to an audience of 398,000, which exceeds Lifetime purported normal primetime audience by 33%.  The Film remains available for rent or purchase through various outlets including Amazon Prime.

19.    The Film freely copies and recreates the original elements of Plaintiff's copyrighted materials including, but not limited to, the Miss Cleo Character, the use of the Look of Plaintiff's television commercials, including the Miss Cleo Character's appearance, dress, accent, tarot reading capabilities and style, dialogue , set designs. and tag lines such as "Call Me Now."  In the Film, the Miss Cleo Character dresses in the same style of vibrant caftans and turbans, uses the same fake Jamaican accent, and reads tarot cards.  Here are side-by-side comparison screenshots from PRN copyright works and screenshots taken from the Film:

SCREENSHOT FROM PRN'S COPYRIGHT REGISTERED TV COMMERCIAL –
BOOTY CALL





SCREENSHOT FROM MISS CLEO: HER RISE AND FALL



Screenshot of the Poster used by Defendants to promote the Film on the left compared to

the cover of the copyrighted tarot deck on the right and Gifts of Miss Cleo copyrighted

feature length video. The Film recreates the Miss Cleo Character appearing in the Gifts of

Miss Cleo and other copyrighted works.   By copying the original elements of the Miss

Cleo Look and Character that appear in all the video copyrighted works of PRN,

Defendants have infringed upon each and every copyrighted work.



The bottom screen is a screenshot from the copyrighted video of PRN entitled Booty Call As could easily be found by a reasonable person, Defendants have copied constituent elements of the work that are original to PRN's Miss Cleo's Character and Look that far surpass substantial similarity.  The Miss Cleo Character became a famous character due to its originality.  Stock psychics do not become iconic. original elements.  Defendants appropriated the Miss Cleo Character withour consent to profit off of its uniqueness.  As

the Film is a recreation of the original elements of the works involving the Miss Cleo Creatives, Look and Character, Defendants infringed upon each and every one of PRN's registered copyrights.

20.    Defendants' infringement includes copying virtually verbatim the dialogue of one of PRN's copyrighted and registered works (Registration No. PA0001984546). Defendants recreate a copyrighted Miss Cleo television commercial in the Film (34:23 – 34:53 timestamp).  The Film copies PRN's copyrighted commercial word for word. Not only is the dialogue copied, the manner in which it is delivered are identical to PRN's commercial.  Defendants even incorporated Miss Cleo's famous catch-phrase "Call Me Now."  In PRN's television commercial the full exchange between the Miss Cleo character and a caller is as follows:

Miss Cleo:    Who asked you to go out of town, the stupid young one or the married one?

Caller:    The married one.

Miss Cleo:    That is what I thought.  Don't go.  You hear me?

Caller:    Hmm.

Miss Cleo:    I see you are not listening to me.  I see you going.

Caller:    Hmm.

Miss Cleo:    I am just trying to spare the heartbreak.

The dialogue in the Film is virtually identical, including the caller's "hmms" in response to the Miss Cleo Character's advice. The Film also copies Miss Cleo's dress and Jamaican accent and set design. The Film even displays an actual toll-free number

previously used by PRN. The commercial and corresponding clip from the movie may be viewed through the following link:

https://drive.google.com/file/d/1Gld1a52rMjNOFEXIWtV6QYiK00af-OjN/view?usp=sharing

https://drive.google.com/file/d/1wawRws_QpY2r69EPU4gMVlHxNnh6fDlv/view?usp=sharing

     21.     The Film is based entirely upon PRN's Miss Cleo Character and works. The copying of dialogue verbatim alone establishes access by Defendants to the copyrighted works.  However, PRN's commercials can easily be found with a simple Google search for "Miss Cleo."  In interviews with the Lady of Rage, the actress that portrays Miss Cleo in the Film freely acknowledges that she studied and prepared for the role by watching informercials and "old footage" of PRN's commercials on the Internet to prepare for the role of Miss Cleo.  See https://www.youtube.com/watch?v=kD-2VMSbzQI . The director of the Film, Tim Reid, states in interviews that we knew that Miss Cleo was not real and that the role allowed the Lady of Rage to "discover the Character [Miss Cleo] as much as portray" the "cultural icon" and "phenomenon" of the Miss Cleo. character. https://www.youtube.com/watch?v=z0HcQVe1_Ig   The Film is intentionally designed to duplicate the original elements of PRN's copyrighted works and Character.

     22.     The Film's screenplay and dialogue incorpores copying of many of the catch phrases and expressions used by the Miss Cleo Character in PRN's copyrighted works including:  "Call Me Now," "Sweet Pea," "Listen To Cleo Now if Cleo say No you forego," "Your mother didn't raise a weak man," "Run in the Other Direction child,"

"Whoa Girl You got into trouble with this one," "Don't go blindly through life and, Cleo doesn't lie," pronunciation of "Tings" in lieu of "Things", use of "Me" in place of "I", and "Dat" instead of "That." Defendants outright recreated the Miss Cleo Character to make money.

<u>It Is The Film's Screenplay That Is Deceptive</u>

23.    The Film is marketed by Defendants as telling the true story of Miss Cleo. Nothing could be further from the truth. First of all, Miss Cleo is a character, not a real person, and as a created character has no true story. Ms. Harris portrays Miss Cleo and holds no rights to the Character. It is the use of the Miss Cleo Character and Mark that attracts an audience. The Film is replete with false statements and inaccuracies. For example, contrary to the Film's assertions, Plaintiff was not found to violate any laws and resolved any actions related to the Miss Cleo brand without any admission of wrongdoing. Further, the Film states that Ms. Harris worked in a call center. Ms. Harris never worked in a on-premises call center as portrayed in the Film, never was asked to read from or provided scripts to use in speaking with customers. She did not create or have any rights in the Miss Cleo character. Further, contrary to the assertion in the Film, Plaintiff worked at all times to protect Ms. Harris and compensated her for her work for hire.

24.    The Film's dialogue included numerous false and harmful assertions. The following statements are alleged by PRN to be false and defamatory:

-    With respect to hiring psychic advisors, a principal of the Company states in dialogue that he was "pulling people off the street." (@ 46 minutes).

-    That the Company was "ripping off millions of people." (@ 54 minutes).

- That the Company charged people whose telephone numbers were "disconnected months or years ago." (@ 52 minutes).

- A principal of PRN tells the Miss Cleo character: "One time a guy died at his [Feder's] house, he fell down a staircase drunk after a night of partying. The first thing Steven [Feder] does is tell a bad joke. The guy's an asshole." (@ 1:00).

- At the end of the Film, an on-screen message appears that includes the statement that "Steven Feder and Peter Stolz paid hefty sums … to victims." (@ 1:25).

25.     The Film has been repeatedly published to hundreds of thousands of viewers, if not millions globally.

26.     The Film uses actual names of the Company and its officers, despite including the usual disclaimer at the end of the Film of not using real names and being fictionalized. The false portrayal of an officer of PRN as a drunken, ruthless Wall Street CEO is totally inaccurate and offensive and tarnishes the image and goodwill of PRN and the famous Miss Cleo Character.

27.     The above statements are false with the clear intent of placing PRN's business in a poor light. The copying of the Miss Cleo copyrighted materials by Defendants was at all times, and is, without the authorization or permission of Plaintiff. PRN owns valid registrations for works Miss Cleo and Defendants engaged in copying of original elements thereof, including the Miss Cleo Character.

<u>Prior to filing the law suit Plaintiff attempted to contact Defendants but its effort were ignored and actual  harm incurred</u>

28.    Plaintiff's rights and use of the Miss Cleo Mark pre-dates Defendants' misappropriation of the Mark by over twenty years.  As such, Defendants' use of the Miss Cleo Mark is in derogation of PRN's common law and statutory rights in the Miss Cleo trademark.

29.    Prior to commencement of this action, Plaintiff provided a DMCA notice to Defendant A&E pursuant to the instructions provided on the A&E homepage.  No response has been received.

30.    The actions of Defendants have created actual harm to the Plaintiff and its reputation and Defendants' acts rise to the level of "per se" harm.

## COUNT I

### FOR COPYRIGHT INFRINGEMENT
### PURSUANT TO 17 U.S.C §§ 106 and 501

31.    Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 30 as if fully stated herein.

32.    PRN is the owner of ten works with copyright registrations featuring the Miss Cleo Character.

33.    The Miss Cleo Creatives, and the rendering of expression of elements therein, constitutes copyrightable expression protected by the Copyright Act, 17 U.S.C. § 101, *et seq.*  PRN's rights extend to the Miss Cleo Character portrayed in PRN's Miss Cleo Creatives.

34.    As the copyright owner of the Miss Cleo Creatives under U.S.C. §§ 106 and 501, Plaintiff is the legal owner of the exclusive rights to reproduce the Miss Cleo

Creatives, prepare derivative works based upon the copyrighted work and Character therein, distribute copies of the copyrighted works and display the copyrighted works publicly.

35.    The Miss Cleo Creatives and the Film are substantially similar in look, sound, elements, tone, character and feel.

36.    Through Defendants' conduct as alleged herein, Defendants have infringed Plaintiff's validly registered copyrights in the Plaintiff's Miss Cleo Creatives, and the Miss Cleo Character embodied therein, by reproducing, distributing, and making available to the public the infringing "Miss Cleo: Her Rise and Fall" production without authorization in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

37.    Defendants' acts of infringement were willful, intentional and purposeful, and in disregard of and with indifference to Plaintiff's rights.

38.    As a direct and proximate result of the infringement by Defendants, Plaintiff is entitled to damages in an amount to be proven at trial.

39.    Plaintiff is also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

40.    Alternatively, the Plaintiff is entitled to maximum statutory damages of $150,000 for each act of copyright infringement or such other amount as may be proper under 17 U.S.C. § 504 (c).

41.    Plaintiff is further entitled to its attorney's fees and full costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

42.     As a direct and proximate result of Defendants' acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis allege, that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in Plaintiff's Miss Cleo Creatives. Plaintiff is entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing and infringing conduct.

## COUNT II

**(Contributory Copyright Infringement – Copyright Act § 101, *et seq.*)**
**(Against A&E)**

43.     Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 42 as if fully stated herein.

44.     The Miss Cleo Creatives, and the rendering of expression of elements therein, constitutes copyrightable expression protected by the Copyright Act, 17 U.S.C. § 101, *et seq.*  PRN's rights extend to the Miss Cleo Character portrayed in PRN's Miss Cleo Creatives.

45.     As the copyright owner of the Miss Cleo Creatives under U.S.C. §§ 106 and 501, Plaintiff is the legal owner of the exclusive rights to reproduce the Miss Cleo Creatives, prepare derivative works based upon the copyrighted work and Character therein, distribute copies of the copyrighted works and display the copyrighted works publicly.

46.     The Miss Cleo Creatives and the Film are substantially similar in look, sound, elements, tone, character and feel.  At a minimum, the Film is a derivative work of the Miss Cleo Creatives and Character.

47.    In conjunction with the promotion and distribution of the Film, A&E copied the Miss Cleo Creatives, recreated a copyrighted commercial verbatim and the expressions contained therein, without Plaintiff's license, authority or consent.

48.    A&E produced, distributed, disseminated and displayed the infringing Film in the United States.

49.    By engaging in the conduct described above, A&E has committed and continues to commit copyright infringement in violation of the Copyright Act § 101, *et seq.*

50.    A&E's misappropriation of the Miss Cleo Creatives and Character for commercial purposes without Plaintiff's license, authority or consent is a willful and conscious disregard of Plaintiff's rights under the Copyright Act.

51.    A&E had knowledge of, and involvement with, Hillionaire's direct infringement of Plaintiff's copyrighted works, the Miss Cleo Creatives and Character.  As a result, A&E had knowledge of Hillionaire's decision to infringe on the Miss Cleo Creatives and to create, develop, produce, publish and distribute the infringing work, "Miss Cleo: Her Rise and Fall."

52.    A&E intentionally induced, encouraged or materially contributed to the direct infringement by overseeing, supervising, controlling, approving and/or encouraging Hillionaire's creative, development, production, broadcast and distribution of the Film. A&E had the final authority to green-light the production and development of the Film. Such acts demonstrate A&E's substantial and continuing connection with Hillionaire's direct infringement of the Miss Cleo Creatives and character.

53.     As a direct and proximate result of A&E's contributory infringement of Plaintiff's copyright interest in the Miss Cleo Creatives and Character, Plaintiff has been damaged and continues to be damaged in an amount to be determined at trial.

54.     As a direct and proximate result of A&E's contributory infringement of Plaintiff's copyright interest in the Miss Cleo Creatives and character, A&E has made and will continue to make profits attributable to their infringement.  The amount of these profits will be determined at the time of trial and are one measure of the damages due to PRN.

55.     Plaintiff has been and will continue to be damaged as a direct and proximate result of A&E's continuing acts of contributory infringement and threatened infringement, including but not limited to lost revenues and profits, damaged relations with existing and prospective business partners, and continuing harm to its copyright interests in the Miss Cleo Creatives and Character.

## COUNT III

### (Vicarious Copyright Infringement – Copyright Act § 101, *et seq.*)

56.     Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 55 as if fully stated herein.

57.     The Miss Cleo Creatives and Character, and the rendering of expression of elements therein, constitutes copyrightable expression protected by the Copyright Act, 17 U.S.C. § 101, *et seq.*

58.     As the copyright owner of the Miss Cleo Creatives and under U.S.C. §§ 106 and 501, Plaintiff is a legal or beneficial owner of the exclusive rights to reproduce the Miss Cleo Creatives and Character, prepare derivative works based upon the copyrighted work, distribute copies of the copyrighted work and display the copyrighted work publicly.

59.    The Film aims to be substantially similar in look, elements, tone, character and feel to the famous Miss Cleo Creatives and character.  At a minimum, the Film is a derivative work of the Miss Cleo Creatives and character.

60.    In connection with the development and distribution of the Film, A&E has copied the Miss Cleo Creatives and character, and the expression contained therein, without Plaintiff's license, authority or consent.

61.    A&E produced, distributed, disseminated and displayed the infringing Film in the United States.

62.    By engaging in the conduct described above, A&E has committed and continues to commit copyright infringement in violation of the Copyright Act § 101, *et seq.*

63.    A&E's copying of the Miss Cleo Creatives and Character without Plaintiff's license, authority or consent is a willful and conscious disregard of Plaintiff's rights under the Copyright Act.

64.    A&E had the right and ability to supervise Hillionaire's direct infringement of the Miss Cleo Creatives and character because it oversees, approves and/or controls the creation, production and content of Hillionaire's production, including without limitation, Hillionaire's decision to create, develop and produce the Film.  Such acts demonstrate A&E's substantial and continuing connection with Hillionaire's direct infringement of the Miss Cleo Creatives and character.

65.    Further, A&E had the right or ability to supervise Hillionaire's direct infringement of the Miss Cleo Creatives and Character because it contributed to the cost of production, marketed, distributed, disseminated and sold the Film in the United States.

66.     As a result of its ability to supervise Hillionaire, A&E could stop or limit Hillionaire's direct infringement of the Miss Cleo Creatives and character, but did not take any action to do so.

67.     A&E had a direct financial interest in Hillionaire's production, distribution and publishing of the Film and thus profited from their direct infringement of the Miss Cleo Creatives and character.

68.     As a direct and proximate result of A&E's vicarious infringement of Plaintiff's copyright interest in the Miss Cleo Creatives and character, Plaintiff has been damaged and continues to be damaged in an amount to be determined at trial.

69.     As a direct and proximate result of A&E's vicarious infringement of Plaintiff's copyright interest in the Miss Cleo Creatives and Character, A&E has made and will continue to make profits attributable to their infringement.  The amount of these profits will be determined at the time of trial and are one measure of the damages due to PRN by Defendants A&E.

70.     Plaintiff has been and will continue to be damaged as a direct and proximate result of A&E's continuing acts of vicarious infringement and threatened infringement, including but not limited to lost revenues and profits, damaged relations with existing and prospective business partners and continuing loss of value of its copyright interest in the Miss Cleo Creatives and character.

## COUNT IV

**(Unjust Enrichment)**
**(Defendants)**

71.     Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 70 as if fully stated herein.

72.     By using Plaintiff's Miss Cleo Character and Look, without paying Plaintiff, Defendants acquired a benefit from Plaintiff.

73.     Defendant has retained the benefit under circumstances that would make it unjust and inequitable for Defendants to retain the benefits without paying Plaintiff for the value of the benefits acquired.

## COUNT V

### TRADEMARK INFRINGEMENT

74.     Plaintiff's repeats and realleges the allegations set forth in Paragraphs 1 through 73 as if fully set forth herein.

75.     Plaintiff's registration for the Mark, Miss Cleo, provides a date of first use in 2000 or 24 years before Defendants use of the Mark.  Thus, Plaintiff's rights in the trademark are superior to Defendants.

76.     Defendants' production, advertising, promotion, distribution, offering for sale and sale of the Film is likely to cause confusion, mistake or deception as to the source or sponsorship of the Infringing Film.

77.     As a result of Defendants' unauthorized use of PRN's "Miss Cleo" Mark, consumers are likely to believe that the Infringing media has been approved by or is otherwise associated with Plaintiff and otherwise dilute the Mark.

78.     Such usage falsely represents that Defendants are legitimately connected with and/or authorized by PRN and places beyond PRN's control its own reputation and ability to control the use of the "Miss Cleo" Mark and/or the quality of the program or services bearing the Mark.

79.     Defendants' infringement of PRN's trademark is willful, intended to reap the benefit of the goodwill of PRN, and violates PRN's Common Law and statutory rights in the Mark.

80.     Defendants' aforementioned acts have been conducted willfully and intentionally, with deceptive intent, under common law and Plaintiff is entitled to damages therefore in amount to be determined at trial.

## COUNT VI

## NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES LAW

81.     Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 80 as if fully stated herein.

82.     Defendants, without the consent of Plaintiff, intended to and did trade on the Miss Cleo Creatives and Character willfully and in bad faith, misappropriating Plaintiff's business ideas and concepts by using them in the infringing material in commerce without Plaintiff's authorization or approval and doing so in a false and misleading manner and light.

83.     Defendants' actions constitute unfair and deceptive acts in violations of the New York Unfair Competition Law.

84.      As a result, Plaintiff has suffered and is entitled to injunction relief, an accounting of Defendant's damages and punitive damages and costs therefore.

## COUNT VII

## DEFAMATION

85.     Plaintiff restates and incorporates by reference the allegations contained in paragraphs 1 through 84 as if fully stated herein.

86.     The Film sets forth numerous substantially false and damaging statements that portray Plaintiff and its officers in a false light.

87.     PRN's CEO Steven Feder is portrayed as a drunk and ruthless wall street type.  Mr. Feder does not even drink alcohol.  Yet, rather than holding the Film out as a fiction, it is instead stated to be the "real story."  PRN is defamed and harmed by such fabricated dialogue and portrayals of the Company and its officers.

88.     It is represented that PRN paid hefty sums to "victims" as part of a settlement with the FTC.  The actions were settled without any admission of wrongdoing and without payment of any sums to "victims." The statement is the film is false and damaging to PRN. All of the allegations in the Film are presented as facts rather than as allegations, thereby presenting them as findings that have no basis in fact.

89.     The defamatory statements during the one-hour and twenty-four minute duration are too numerous to set forth.  A sample of the defamatory statements are as follows:

   a.   Falsely Alleges about Mr. Feder "Guy drunk at his home, fell down steps and died" and Feder "laughed" due to his "sick sense of honor;" The event never happened and is slanderous.

   b.   Alleges Plaintiff's officers are "stupid and lazy;" A statement that has no basis.

    c.   Manufactures the quote that an officer of Plaintiff stated as to Ms. Harris we "own her ass."  A falsehood, no such statement was ever made.

    d.    Alleges falsely that Plaintiff bills  customers who's phones had been "disconnected months or years ago;"  Aside from being false, it is presented as a fact rather than an allegation.

    e.    States about Plaintiff's CEO, "he's an asshole."

90.    The Film stylized as a biopic is a commercial for profit enterprise that contains countless substantial falsehoods, makes up events that never occurred, and falsely portrays PRN as ruthless, evil, and a rip-off.

91.    The false statements presented as the "true story" recklessly and willfully are disseminated through the display of the Film to hundreds of thousands, if not millions, without any regard to the actual truth thereof.  No effort was made to contact Plaintiff or its representatives prior to filming and airing the Film that has caused damage to PRN.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1.    For statutory, compensatory and/or punitive damages in such amount as may be found, or as otherwise permitted by law;

2.    For an accounting of, and the imposition of constructive trust with respect to, Defendants' profits attributable to their infringements of Plaintiff's copyrights and Mark.

3.       For a preliminary and permanent injunction prohibiting Defendants, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from continuing to infringe Plaintiff's copyright and trademark in the Miss Cleo Creatives.

4.       For the value of the benefits Defendants have acquired from the use of the Look of the Miss Cleo Creatives and Character;

5.       For prejudgment interest according to law;

6.       For Plaintiff's attorneys' fees, costs, and disbursements in this action;

7.       For such other and further relief as the Court may deem just and proper.

### **JURY DEMAND**

Plaintiff demands trial by jury.


DATED:       Bedford Hills, New York
                   September 20, 2025


                                                                 DICHTER LAW, LLC

                                                                 By:     /Joel R. Dichter/
                                                                 Joel R. Dichter, Esq.
                                                                 483 Cherry Street, Suite 100
                                                                 New York, NY 10507
                                                                 Telephone: (212) 593-4202
                                                                 Fax: (212) 994-5394

                                                                 Attorneys for Plaintiff