**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PSYCHIC READERS NETWORK, INC.<br><br>Plaintiff,<br><br>vs.<br><br>A&E TELEVISION NETWORKS, LLC AND HILLIONAIRE PRODUCTIONS LLC,<br><br>Defendants. | Case No.: 1: 24-cv-08155-DEH |

**DEFENDANTS A&E TELEVISION NETWORKS, LLC AND HILLIONAIRE PRODUCTIONS LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**

Scott J. Sholder, Esq.
CeCe M. Cole, Esq.
COWAN DEBAETS ABRAHAMS
& SHEPPARD, LLP
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Fax: (212) 974-8474

*Attorneys for Defendants A&E Television Networks, LLC and Hillionaire Productions LLC*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT & BACKGROUND ..... 1
ARGUMENT ..... 1
I. AMENDING PRN'S COPYRIGHT CLAIMS WOULD BE FUTILE ..... 2
A. PRN Still Lacks Registrations for Most of the "Miss Cleo Creatives." ..... 2
B. PRN Again Fails to Adequately Plead Copyright Infringement. ..... 3
C. PRN Cannot Show That the "Miss Cleo" Character is Sufficiently Delineated. ..... 4
D. The Film and the Miss Cleo Commercial are Not Substantially Similar. ..... 5
E. The Film's Dramatized Depiction of the Commercial Constitutes Fair Use. ..... 7
F. Counts II and III are Futile Because PRN's Direct Copyright Claim Fails. ..... 8
II. AMENDMENT OF PRN'S TRADEMARK CLAIM IS FUTILE BECAUSE IT LACKS STANDING AND CANNOT WITHSTAND A MOTION TO DISMISS. ..... 9
A. PRN Still Lacks Standing Because it is Not the "Registrant" of the Mark. ..... 10
B. PRN's Trademark Claim is Still Barred by *Rogers v. Grimaldi* and Its Progeny. ..... 10
C. There is No Likelihood of Confusion. ..... 13
D. Defendants are Protected by the Fair Use Doctrine. ..... 16
III. PRN'S STATE LAW CLAIMS IN COUNTS IV AND VI ARE STILL PREEMPTED. ..... 17
A. Plaintiff's Unjust Enrichment Claim is Still Preempted. ..... 18
B. Plaintiff's N.Y. Gen. Bus. L. § 349 Claim is Still Preempted. ..... 19
C. The Court Should Not Exercise Supplemental Jurisdiction Over Counts IV and VI. ..... 19
IV. PRN'S DEFAMATION CLAIM STILL CANNOT WITHSTAND DISMISSAL. ..... 20
A. Plaintiff Still Lacks Standing to Bring its Defamation Claim. ..... 20
B. Plaintiff's Amended Defamation Claim Cannot Withstand a Motion to Dismiss. ..... 21
CONCLUSION ..... 25

# TABLE OF AUTHORITIES

Cases Page(s)

*Adjmi v. DLT Ent. Ltd.*,
97 F. Supp. 3d 512 (S.D.N.Y. 2015)........ 8

*Afftrex, Ltd. v. Gen. Elec. Co.*,
161 A.D.2d 855 (3d Dep't 1990)........ 20

*Ahmed v. GEO USA LLC*,
2015 WL 1408895 (S.D.N.Y. Mar. 27, 2015)........ 14

*Alexander v. Murdoch*,
2011 WL 2802899 (S.D.N.Y. May 27, 2011)........ 6

*Allen v. Scholastic Inc.*,
739 F. Supp. 2d 642 (S.D.N.Y. 2011)........ 5, 7

*AM Gen. LLC v. Activision Blizzard, Inc.*,
450 F. Supp. 3d 467 (S.D.N.Y. 2020)........ 16

*Anderson v. Stallone*,
1989 WL 206431 (C.D. Cal. Apr. 25, 1989)........ 5

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023)........ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........ 1, 2, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........ 1, 14

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d. Cir. 2004)........ 18

*Broidy Cap. Mgmt. LLC v. Benomar*,
944 F.3d 436 (2d Cir. 2019)........ 1

*Brown v. Showtime Networks, Inc.*,
394 F. Supp. 3d 418 (S.D.N.Y. 2019)........ 11, 12, 13

*Burch v. Pioneer Credit Recovery, Inc.*,
551 F.3d 122 (2d Cir. 2008)........ 1

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) ... 20

*Celle v. Filipino Rep. Enters. Inc.*,
209 F.3d 163 (2d Cir. 2000) ... 24

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
125 F.3d 28 (2d Cir. 1997) ... 17

*Crawford v. Franklin Credit Mgmt. Corp.*,
758 F.3d 473 (2d Cir. 2014) ... 19

*DeClemente v. Columbia Pictures Indus., Inc.*,
860 F. Supp. 30 (E.D.N.Y. 1994) ... 15

*Diamond Collection, LLC v. Underwraps Costume Corp.*,
2018 WL 1832928 (E.D.N.Y. Apr. 16, 2018) ... 20

*Dillon v. City of New York*,
261 A.D.2d 34 (1st Dep't 1999) ... 21, 23, 24, 25

*Down to Earth Organics, LLC v. Efron*,
2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024) ... 11

*Fairstein v. Netflix, Inc.*,
553 F. Supp. 3d 48 (S.D.N.Y. 2021) ... 23, 24, 25

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*,
726 F.3d 62 (2d Cir. 2013) ... 10

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
586 U.S. 296 (2019) ... 2, 3

*Ganske v. Mensch*,
480 F. Supp. 3d 542 (S.D.N.Y. 2020) ... 24

*Gayle v. Allee*,
2021 WL 120063 (S.D.N.Y. Jan. 13, 2021) ... 16

*Georgia Malone & Co. v. Rieder*,
19 N.Y.3d 511 (2012) ... 18

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
590 F. Supp. 2d 625 (S.D.N.Y. 2008) ... 15

*Green v. Lindsey*,
885 F. Supp. 469 (S.D.N.Y. 1992) .......... 6, 7

*Gross v. N.Y. Times Co.*,
82 N.Y.2d 146 (1993) .......... 24

*Hollander v. Pressreader, Inc.*,
2020 WL 2836189 (S.D.N.Y. May 30, 2020) .......... 20, 21

*In re Jackson*,
972 F.3d 25 (2d Cir. 2020) .......... 5

*Intellect Art Multimedia, Inc. v. Milewski*,
24 Misc. 3d 1248(A) (Sup. Ct. 2009) .......... 24

*JA Apparel Corp. v. Abboud*,
568 F.3d 390 (2d Cir. 2009) .......... 17

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
599 U.S. 140 (2023) .......... 11

*Jacob v. Lorenz*,
626 F. Supp. 3d 672 (S.D.N.Y. 2022) .......... 20, 22

*JJFM Corp. v. Mannino's Bagel Bakery*,
132 N.Y.S.3d 582 (N.Y. Sup. Ct. 2020) .......... 15

*JTH Tax LLC v. AMC Networks, Inc.*,
694 F. Supp. 3d 315 (S.D.N.Y. 2023) .......... 11, 12, 16

*Kelly v. L.L. Cool J.*,
145 F.R.D. 32 (S.D.N.Y. 1992) .......... 4

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006) .......... 21, 23

*Kolari v. N.Y.-Presbyterian Hosp.*,
455 F.3d 118 (2d Cir. 2006) .......... 20

*Krasnyi Oktyabr, Inc. v. Trilini Imports*,
2007 WL 1017620 (E.D.N.Y. Mar. 30, 2007) .......... 10

*Leidig v. BuzzFeed, Inc.*,
371 F. Supp. 3d 134 (S.D.N.Y. 2019) .......... 21

*Lewinson v. Henry Holt & Co. LLC*,
659 F. Supp. 2d 547 (S.D.N.Y. 2009)........................................................................ 5

*Lopez v. Adidas Am., Inc.*,
2020 WL 2539116 (S.D.N.Y. May 19, 2020) .................................................................. 9, 16

*Lopez v. Nike, Inc.*,
2021 WL 128574 (S.D.N.Y. Jan. 14, 2021) .................................................................. 13

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't, Inc.*,
868 F. Supp. 2d 172 (S.D.N.Y. 2012).................................................................. passim

*Marks v. Energy Materials Corp.*,
2015 WL 3616973 (S.D.N.Y. June 9, 2015) .................................................................. 18

*Marvullo v. Gruner & Jahr*,
105 F. Supp. 2d 225 (S.D.N.Y. 2000)........................................................................ 2

*McGillvary v. Rolling Stone, LLC*,
2025 WL 1455911 (S.D.N.Y. May 21, 2025) .................................................................. 2

*Medina v. Dash Films, Inc.*,
2016 WL 3906714 (S.D.N.Y. July 14, 2016).............................................................. 2, 11, 13

*Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co., Inc.*,
900 F. Supp. 1287 (C.D. Cal. 1995) ........................................................................ 5

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990)...................................................................................... 25

*Miller v. Richman*,
184 A.D.2d 191 (4th Dep't 1992)........................................................................ 25

*Monbo v. Nathan*,
623 F. Supp. 3d 56 (E.D.N.Y. 2022) ........................................................................ 6, 9

*Mosher v. Veyda*,
2024 WL 4932621 (S.D.N.Y. Dec. 2, 2024) .................................................................. 20

*Myrieckes v. Woods*,
2009 WL 884561 (S.D.N.Y. Mar. 31, 2009) .............................................................. 17, 18

*OffWhite Prods., LLC v. Off-White LLC*,
480 F. Supp. 3d 558 (S.D.N.Y. 2020).................................................................. 14, 15

*Olivet Univ. v. Newsweek Digital LLC*,
2024 WL 1892563 (S.D.N.Y. Apr. 30, 2024) .......... 21, 23

*Outhouse PR, LLC v. Northstar Travel Media, LLC*,
2020 WL 2512092 (S.D.N.Y. May 15, 2020) .......... 16, 17

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010) .......... 2, 5, 6

*Phillies v. Harrison/Erickson*,
2021 WL 5936523 (S.D.N.Y. Aug. 10, 2021) .......... 5

*Pickett v. Migos Touring, Inc.*,
420 F. Supp. 3d 197 (S.D.N.Y. 2019) .......... 2, 6

*Pirri v. Cheek*,
2019 WL 3936798 (S.D.N.Y. Aug. 20, 2019) .......... 20

*Piuggi v. Good for You Prods. LLC*,
739 F. Supp. 3d 143 (S.D.N.Y. 2024) .......... 19

*Polaroid Corp. v. Polarad Elecs. Corp.*,
287 F.2d 492 (2d Cir. 1961) .......... 14

*Press v. Primavera*,
685 F. Supp. 3d 216 (S.D.N.Y. 2023) .......... 22

*Rice v. Fox Broad. Co.*,
330 F.3d 1170 (9th Cir. 2003) .......... 5

*Roberts v. Bliss*,
229 F. Supp. 3d 240 (S.D.N.Y. 2017) .......... 20

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) .......... 10, 11, 13

*Santos v. Kimmel*,
745 F. Supp. 3d 153 (S.D.N.Y. 2024) .......... 8

*Sapon v. DC Comics*,
2002 WL 485730 (S.D.N.Y. Mar. 29, 2002) .......... 5

*Shull v. TBTF Prods., Inc.*,
2021 WL 3027181 (2d Cir. 2021) .......... 1

*Silverman v. CBS, Inc.*,
870 F.2d 40 (2d Cir. 1989) ... 4

*Simmons v. Trans Express Inc.*,
16 F.4th 357 (2d Cir. 2021) ... 22

*Singh v. Deloitte LLP*,
123 F.4th 88 (2d Cir. 2024) ... 2

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
709 F.3d 1273 (9th Cir. 2013) ... 5

*Spin Master v. Aciper*,
2022 WL 992888 (S.D.N.Y. Apr. 1, 2022) ... 14, 15

*Star Indus., Inc. v. Bacardi & Co.*,
412 F.3d 373 (2d Cir. 2005) ... 15

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
588 F.3d 97 (2d Cir. 2009) ... 14

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017) ... 21, 25

*Thea v. Kleinhandler*,
807 F.3d 492 (2d Cir. 2015) ... 2, 20

*Tiffany (NJ) Inc. v. eBay Inc.*,
600 F.3d 93 (2d Cir. 2010) ... 17

*Torres v. CBS News*,
1995 WL 810041 (N.Y. Sup. Ct. Oct. 11, 1995) ... 25

*TufAmerica, Inc. v. Universal Music Publ'g, Inc.*,
2025 WL 2700249 (S.D.N.Y. Sept. 23, 2025) ... 2

*Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*,
155 F. Supp. 2d 1 (S.D.N.Y. 2001) ... 19

*Twentieth Century Fox Television v. Empire Dist., Inc.*,
875 F.3d 1192 (9th Cir. 2017) ... 11, 13

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
996 F.2d 1366 (2d Cir. 1993) ... 12

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*,
88 F.4th 125 (2d Cir. 2023) ..... 11

*We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.)*,
221 F. Supp. 3d 396 (S.D.N.Y. 2016) ..... 19

*Williams v. A & E Television Networks*,
122 F. Supp. 3d 157 (S.D.N.Y. 2015) ..... 8

*Wolstenholme v. Hirst*,
271 F. Supp. 3d 625 (S.D.N.Y. 2017) ..... 2

*Yang v. Mic Network, Inc.*,
405 F. Supp. 3d 537 (S.D.N.Y. 2019) ..... 7, 8

Statutes

15 U.S.C. § 1060(a)(3) ..... 10
15 U.S.C. § 1114 ..... 9, 13
15 U.S.C. § 1115(b)(4) ..... 16
15 U.S.C. § 1127 ..... 10
17 U.S.C. § 102 ..... 18
17 U.S.C. § 102(b) ..... 19
17 U.S.C. § 106 ..... 3, 18
17 U.S.C. § 301(a) ..... 18
17 U.S.C. § 411(a) ..... 2
N.Y. Gen. Bus. L. § 349 ..... 19

Rules

Fed. R. Civ. P. 15(a)(2) ..... 1
N.Y. C.P.L.R. 3016(a) ..... 25

Other Authorities

Restatement (Second) of Torts § 560 (1977) ..... 21

Defendants A&E Television Networks, LLC and Hillionaire Productions LLC respectfully submit this memorandum of law in opposition to Plaintiff Psychic Readers Network, Inc.'s Motion for Leave to File an Amended Complaint ("Motion to Amend" (ECF 53)) because Plaintiff's Proposed Amended Complaint ("PAC" (ECF 53-2)) cannot withstand a Rule 12(b)(6) motion.

## PRELIMINARY STATEMENT & BACKGROUND[1]

After its initial complaint ("Initial Complaint" (ECF 1)) was dismissed by this Court ("Order" (ECF 52)), PRN now tries to remedy its defective pleadings by filing its PAC. But one does not need to be a fortune teller to know that PRN's Motion to Amend should be denied (and discovery should remain stayed) as its claims in the PAC are futile for the reasons set forth below.

## ARGUMENT

While Rule 15 states that leave to amend "shall be freely give[n]," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny" this relief. *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).[2] Leave to amend "should generally be denied in instances of futility . . . ." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). Here, PRN's Motion to Amend should be denied on the basis of futility because the PAC cannot "withstand a motion to dismiss" under Rule 12(b)(6). *Shull v. TBTF Prods., Inc.*, 2021 WL 3027181, at *3 (2d Cir. 2021). Under that well-established standard, PRN's PAC's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Since "legal

---

[1] Defendants refer to its Motion to Dismiss the Initial Complaint (ECF 27) for the full background of this action. Capitalized yet undefined terms shall have the meanings ascribed to them as set forth in Defendants' motion to dismiss.

[2] Citations and quotations are omitted from, and emphasis added to, all citations herein unless otherwise indicated.

conclusions" need not be accepted as true, *id.*, "[b]road, sweeping allegations of infringement do not comply with Rule 8." *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000).

Courts—including this one—routinely deny motions for leave to amend where the amendment would be futile under the motion to dismiss standard. *See*, *e.g.*, *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024); *TufAmerica, Inc. v. Universal Music Publ'g, Inc.*, No. 24 CIV. 2585 (DEH), 2025 WL 2700249, at *5 (S.D.N.Y. Sept. 23, 2025); *McGillvary v. Rolling Stone, LLC*, No. 23 CIV. 10428 (DEH), 2025 WL 1455911, at *5 (S.D.N.Y. May 21, 2025). Because Plaintiff's PAC "fail[s] to cure prior deficiencies," *Thea v. Kleinhandler*, 807 F.3d 492, 496–97 (2d Cir. 2015), and cannot withstand a motion to dismiss, its Motion to Amend should be denied.

## I. AMENDING PRN'S COPYRIGHT CLAIMS WOULD BE FUTILE.

The PAC once again fails to (1) identify most of the works PRN claims were infringed, let alone allege they are registered; (2) allege access to, or copying of, most of PRN's works; and (3) show substantial similarity. The Court may consider the (a) Film; (b) Miss Cleo Tarot Cards; (c) Miss Cleo Book; and (d) Miss Cleo Commercials, which are all either "referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit . . . ." *Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 633 (S.D.N.Y. 2017).[3] *See Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 206 (S.D.N.Y. 2019); *see also Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010); *cf. Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *4 (S.D.N.Y. July 14, 2016).

### A. PRN Still Lacks Registrations for Most of the "Miss Cleo Creatives."

Per 17 U.S.C. § 411(a), a plaintiff must "apply for registration and receive the Copyright Office's decision on [the] application before instituting suit." *Fourth Estate Pub. Benefit Corp. v.*

[3] The Film, Miss Cleo Tarot Cards, and Miss Cleo Book were previously submitted to the Court via the Declaration of Scott J. Sholder in Support of Defendants' Motion to Dismiss the Initial Complaint. (ECF 28 at Exs. B, C, & D.)

*Wall-Street.com, LLC*, 586 U.S. 296, 308 (2019). Like the Initial Complaint, the PAC claims that Defendants infringed PRN's so-called "Miss Cleo Creatives, and the Miss Cleo Character embodied therein, by reproducing, distributing, and making" the Film available to the public.[4] (PAC ¶ 36.) Per the PAC, the "Miss Cleo Creatives" include "television commercials, infomercials, press relations, campaigns, radio spots, books, tarot cards and numerous other materials all featuring the Miss Cleo Character, portrayed by Ms. Harris," supposedly created by PRN. (*Id.* ¶ 9.) Despite this long list, PRN provides registrations covering only the Miss Cleo (1) Book (ECF 53-5 at 13); (2) Tarot Cards (ECF 53-4); (3) Video (ECF 53-5) (collectively, the "Initial Miss Cleo Works"); and the Commercials (*id.*). As a matter of law, PRN can claim copyright infringement only as to the Initial Miss Cleo Works and the registered Miss Cleo Commercials; its claims as to the remaining unspecified "Miss Cleo Creatives," including the character herself divorced from her expressive embodiment in a particular registered work, cannot survive, *see Fourth Estate Pub.*, 586 U.S. at 299; *see* Order at 6, and the character herself is not covered by any of the registrations at issue here.

### B. <u>PRN Again Fails to Adequately Plead Copyright Infringement.</u>

The Court has already concluded that PRN failed to plead that the Film infringed the Initial Miss Cleo Works (*see* Order at 4-7), and PRN does not remedy these defects. Rather, PRN's PAC "does not so much as even mention if, when, and where the three [Initial Miss Cleo Works] appear in the allegedly infringing biopic," and so the claim, even as amended, "cannot stand." (*Id.* at 7.)[5] Given the Court's Order, Defendants incorporate by reference their prior argument regarding

[4] Making a work available to the public is not an exclusive right under the Copyright Act. *See* 17 U.S.C. § 106.

[5] PRN's allegation that the Miss Cleo Tarot Cards appear in the "[p]oster used by Defendants to promote the Film" (PAC ¶ 19) is insufficient because (1) PRN has not demonstrated that Miss Cleo Tarot Cards registration includes the box cover art (*see* ECF 53-4; *see also* ECF 1-1); (2) the PAC does not allege similarity between the box and poster (PAC ¶ 19 at 11); and (3) the screenshot of the Miss Cleo Video does not show that the Miss Cleo Tarot Cards are visible in the Film's poster (because they are not) (*id.*; *see also* ECF 28-3).

PRN's continual failure to plead that Defendants had access to the Initial Miss Cleo Works or that they are substantially similar to the Film. (*See generally* PAC; *but see* n.5 *supra*; *see also* ECF 27.)

As to the other amorphous works, PRN's infringement claims remain fatally vague. (*See generally* PAC.) PRN again claims that "Defendants have infringed Plaintiff's **validly registered** copyrights in **the** Plaintiff's Miss Cleo Creatives**, and the Miss Cleo Character embodied therein,** by reproducing, distributing, and making available to the public the infringing 'Miss Cleo: Her Rise and Fall' production." (PAC ¶ 36 (new material in bold); *compare id.*, *with* Init. Compl. ¶ 26; *see* Order at 7.) The PAC further claims that "[t]he Film freely copies and recreates **the original elements of** Plaintiff's copyrighted materials including, but not limited to, **the Miss Cleo Character, the** use of the Look [sic] of Plaintiff's television commercials, including the Miss Cleo Character's appearance, dress, **accent, tarot reading capabilities and style, dialogue, set designs[,]** and tag lines such as 'Call Me Now.'" (PAC ¶ 19 (new material in bold); *compare id.*, *with* Init. Compl. ¶ 17; Order at 7.) As the Court already held, "these statements are not enough to 'give the defendant[s] fair notice of'" PRN's copyright claims (Order at 7), so PRN's "sweeping allegations of infringement" once again "do not comply with Rule 8." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 n.3 (S.D.N.Y. 1992).

### C. <u>PRN Cannot Show That the "Miss Cleo" Character is Sufficiently Delineated.</u>

PRN still fails to show that Miss Cleo is "sufficiently delineated" to receive copyright protection. *See Silverman v. CBS, Inc.*, 870 F.2d 40, 50 (2d Cir. 1989). PRN claims that the Miss Cleo character as portrayed by Ms. Harris (the "Character") "wears vibrant caftans and turbans and large necklaces, speaks with a fake Jamaican accent, developed sets with a unique mystical look, created a bio for the character, gave readings from tarot cards, and repeatedly uses catch phrases among other features." (PAC ¶ 8.) These unremarkable, stock characteristics are insufficient to "sufficiently delineate" Miss Cleo, who is not copyrightable.

In assessing character copyright protection, "courts look at the many elements of the character—visual depictions, name, dialogue, relationships with other characters, actions and conduct, personality traits, and written descriptions—to determine whether it is sufficiently delineated such that it is a unique expression." *Phillies v. Harrison/Erickson*, 2021 WL 5936523, at *24 (S.D.N.Y. Aug. 10, 2021) (Phillies mascot not "sufficiently delineated"); *see Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1175 (9th Cir. 2003) (magician "in standard magician garb" and "limited to performing and revealing magic tricks" not copyrightable).

Miss Cleo is nothing like the copyrightable characters upon whom massive commercial empires and intricate worlds are built. *See e.g., Sapon v. DC Comics*, 2002 WL 485730, at *11 (S.D.N.Y. Mar. 29, 2002) (Batman); *Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co., Inc.*, 900 F. Supp. 1287, 1295-97 (C.D. Cal. 1995) (James Bond); *Anderson v. Stallone*, 1989 WL 206431, at *7-8 (C.D. Cal. Apr. 25, 1989) (Rocky). Instead, Miss Cleo is an amalgamation of stock characteristics and clichés, who is merely an alternate personality of the late Ms. Youree Dell Harris. *See Phillies*, 2021 WL 5936523, at *24; *see also Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 660 (S.D.N.Y. 2011); *Lewinson v. Henry Holt & Co. LLC*, 659 F. Supp. 2d 547, 567 (S.D.N.Y. 2009). The Character is merely the stage "persona, portrayed by Ms. Harris." (PAC ¶ 8), which is not copyrightable. *See e.g.*, *In re Jackson*, 972 F.3d 25, 45 (2d Cir. 2020); *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1279 (9th Cir. 2013). PRN provides no examples of how Miss Cleo is a character distinct from Harris, let alone the works in which she is fixed.

**D. <u>The Film and the Miss Cleo Commercial are Not Substantially Similar.</u>**

The test for substantial similarity "is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same" and if that "lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Peter F. Gaito Architecture, LLC*, 602 F.3d at 66. When the works

"have both protectible and unprotectible elements," the analysis "must be 'more discerning,' and [courts] instead must attempt to extract the unprotectible elements from [] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Id.*

Here, PRN attempts to make three claims regarding the Film's alleged substantial similarity to PRN's works: (1) "In the Film, the Miss Cleo Character dresses in the same style of vibrant caftans and turbans, uses the same fake Jamaican accent, and reads tarot cards" (PAC ¶ 19); (2) the Film uses "verbatim [] dialogue" from and was delivered in a matter "identical to" PRN's copyrighted commercial titled "Take To Church" (the "Commercial") (*id.* ¶ 20); and (3) the Film uses "catch phrases and expressions used by the Miss Cleo Character in PRN's copyrighted works" (*id.* at ¶ 22). All these theories are meritless.[6]

Theories one and three are facially devoid of merit. As to theory (1), a character's style, dress, and accent are not, themselves, copyrightable. *See Green v. Lindsey*, 885 F. Supp. 469, 488 (S.D.N.Y. 1992), *aff'd*, 9 F.3d 1537 (2d Cir. 1993); *see also Alexander v. Murdoch*, 2011 WL 2802899, at *10 (S.D.N.Y. May 27, 2011). Moreover, the fact that a purported psychic reads tarot cards and wears colorful caftans is a classic example of scènes-à-faire. *See Monbo v. Nathan*, 623 F. Supp. 3d 56, 90 (E.D.N.Y. 2022). As to theory (3), "short phrases," "catch phrases," or "expressions" are not copyrightable. *See Pickett*, 420 F. Supp. at 206–07.

Theory (2)—that is, PRN's claim that its 30-second commercial is substantially similar to the Film (PAC ¶ 20)—is not viable because when viewing the Film and the Commercial side-by-side, obvious fundamental differences preclude a finding of substantial similarity. *See Peter F. Gaito Architecture, LLC*, 602 F.3d at 64; *see also Pickett*, 420 F. Supp. 3d at 206; *see* Film; PAC

---

[6] PRN only alleges similarities between the Film and the Commercial titled "Take To Church" and the Court should dismiss any copyright claims as to the other commercials mentioned in the PAC.

¶ 20. *First*, the Commercial features Miss Cleo alone, in a non-descript room, conducting a "psychic reading" for an unidentified female caller where she tells the unknown woman not to go out of town with a married man. (*See* PAC ¶ 20 (Commercial)) This is nothing like the Film, which uses a montage to dramatically reenact the realities of callers responding to the various commercials advertising Miss Cleo's services and asking for (and receiving) her advice. (*See id.* (Film clip).) The Film depicts varying viewpoints—switching among the female caller (who, unlike in the Commercial, is visually depicted as a young blonde woman), a woman watching in bed while her husband sleeps, and Miss Cleo—to underscore the ubiquity of Miss Cleo. (*See id.*)

*Second*, the commercials dramatically reenacted in the Film contain cosmic and colorful backgrounds, which feed into the mystic stereotypes of psychics, while the Commercial features Miss Cleo sitting in a mostly beige, unadorned room. (*See id.*) They are markedly different.

*Finally*, the Film does not reproduce the Commercial's dialogue "verbatim." (*Id.*) Indeed, the idea of a telephone psychic advising a single woman against going out of town with a married man is neither copyrightable nor original, *see Allen*, 739 F. Supp. 2d at 656–65, and the short snippets of dialogue at issue are not, themselves, copyrightable either. *Green*, 885 F. Supp. at 488.

### E. **<u>The Film's Dramatized Depiction of the Commercial Constitutes Fair Use.</u>**

The Court may determine fair use when, like here, all four factors can be evaluated based on the PAC and accompanying materials. *See e.g.*, *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019). This is a textbook case of fair use.

*First*, the way the Film dramatized the Commercial is highly transformative in both appearance and purpose. As explained above, the 30-second Commercial, which just features Miss Cleo, is nothing like the short except from the Film. (PAC ¶ 20.) Moreover, the Film's storytelling underscores the fundamental purpose of the biopic—to show how Miss Cleo went from a pop culture icon to a disgraced imposter, parallel with PRN's own legal fall from grace. (*See generally*

Film.) The montage reenacting the Commercial ties directly into that narrative, highlighting various elements of the Commercial as part of its historical depiction of Miss Cleo and its criticism and commentary on her as well as PRN. On the other hand, the purpose of the Commercial was to be just that—an advertisement to lure in customers using Miss Cleo's notoriety. The first factor therefore weighs in favor of fair use. *See Yang*, 405 F. Supp. at 543–45.

*Second*, while the Commercial contains some copyrightable elements, much of it consists of scènes-à-faire, stock character elements, and unprotectable short snippets of dialogue. At worst, this factor is neutral. *Adjmi v. DLT Ent. Ltd.*, 97 F. Supp. 3d 512, 532 (S.D.N.Y. 2015).

*Third*, the Film is not a direct reproduction of the Commercial and includes different visual elements such as varying backgrounds and costumes. (PAC ¶ 20.) Even if the Court considers the "heart" of the work to have been used, Defendant's use is transformative, "render[ing] the third fair use factor of comparatively lesser importance." *Adjmi*, 97 F. Supp. 3d at 533–34.

*Finally*, the Film does not usurp the market for the Commercial, and PRN does not allege that there is any licensing market for the Commercial, or that it even still airs any commercials of the now-defunct Character. And the use of the Commercial was, at least in part, critical of PRN, and there is no licensing market for criticism of one's own work. *Santos v. Kimmel*, 745 F. Supp. 3d 153, 167 (S.D.N.Y. 2024), *aff'd*, 2025 WL 2825050 (2d Cir. Oct. 6, 2025). The fourth factor—now deemed the most important alongside the first factor, *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 536 n.12 (2023), weighs in favor of fair use.

### F. **Counts II and III are Futile Because PRN's Direct Copyright Claim Fails.**

PRN alleges that AETN is liable for contributory and vicarious copyright infringement (PAC ¶¶ 43-70) but "there can be no contributory infringement absent actual infringement and no vicarious infringement absent direct infringement." *Williams v. A & E Television Networks*, 122 F. Supp. 3d 157, 165 (S.D.N.Y. 2015) (cleaned up). And even if PRN's direct copyright

infringement claim was not dismissed, its indirect copyright claims fail because they consist of threadbare legal conclusions that merely recite "the elements of a cause of action," which are baldly bolstered by "mere conclusory statements." *Iqbal*, 556 U.S. at 678; PAC ¶¶ 51-55, 64-70.

## II. AMENDMENT OF PRN'S TRADEMARK CLAIM IS FUTILE BECAUSE IT LACKS STANDING AND CANNOT WITHSTAND A MOTION TO DISMISS.

PRN's trademark infringement claim as to the MISS CLEO mark ("Mark") was already dismissed for lack of standing (*see* Order at 7-9) and its PAC does nothing to remedy the Initial Complaint's defects. As a threshold matter, it is now unclear whether PRN is bringing its trademark infringement claim under 15 U.S.C. § 1114 or common law. While the PAC references the Lanham Act (*see*, *e.g.*, PAC ¶¶ 79-80), PRN claims Defendants have violated "PRN's Common Law and statutory rights in the [Miss Cleo] Mark." (*Id.* ¶ 79.) Regardless, the PAC again "provides no evidence that PRN 'owns a valid protectible mark' in Miss Cleo" (Order at 8), so PRN's infringement claim should be dismissed with prejudice.

Even if PRN had standing to pursue its trademark infringement claim—whether under the Lanham Act or common law—its claim cannot withstand a motion to dismiss. "Courts evaluate Lanham Act trademark infringement claims using a two-prong test." (Order at 7-8.) "The plaintiff must show that: (1) the plaintiff owns a valid protectable mark; and (2) defendant's use of a similar mark is likely to cause consumer confusion as to the origin or association of the goods or services." (*Id.* at 8 (cleaned up).) New York common law trademark infringement claims are analyzed under a "virtually identical" standard. *Lopez v. Adidas Am., Inc.*, 2020 WL 2539116, at *15 (S.D.N.Y. May 19, 2020). PRN's trademark infringement claim is still barred by *Rogers*, the absence of a plausible likelihood of confusion, and fair use. *See*, *e.g.*, *Monbo*, 623 F. Supp. 3d at 144.

### A. <u>PRN Still Lacks Standing Because it is Not the "Registrant" of the Mark.</u>

As this Court already acknowledged, "only registrants—as statutorily defined—have 'statutory standing' to bring an action under Section 32(1)." (Order at 9.) Accordingly, a cause of action under Section 32(1) is available only "to 'registrant[s]' of the trademarks at issue, a term the [Lanham] Act defines as embracing the actual registrant's 'legal representatives, predecessors, successors and assigns.'" *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013) (citing 15 U.S.C. § 1127) (cleaned up).

Here, Oshun 5 Communications, Inc. ("Oshun") is the registrant. (*See* PAC ¶ 15; ECF 53-7.) PRN claims, without more, that "[a]ll rights in the Mark Miss Cleo were then assigned to PRN." (PAC ¶ 15.) But the Court already ruled that such bald assertions cannot "substantiate [PRN's] claim that its subsidiary would or 'has assigned all rights to the 'Miss Cleo' Mark to PRN.'" (Order at 9, n.7; *compare* Init. Compl. ¶ 14, *with* PAC ¶ 15.) Also, assignment under the Lanham Act requires (1) "the relevant assigning document to be effected 'by instrument in writing duly executed,' 15 U.S.C. § 1060(a)(3)"; and (2) that "the assignment [] transfer an ownership interest in the marks at issue." *SPI Spirits Ltd.*, 726 F.3d at73 (cleaned up). PRN again fails to establish that it is an assignee of the Mark and accordingly lacks standing to bring a federal trademark claim. PRN also does not have standing to bring a common law trademark infringement claim because it has not alleged to be the Mark's "exclusive licensee" or Oshun's "legal representative." *Cf. Krasnyi Oktyabr, Inc. v. Trilini Imports*, 2007 WL 1017620, at *9 (E.D.N.Y. Mar. 30, 2007).

### B. <u>PRN's Trademark Claim is Still Barred by *Rogers v. Grimaldi* and Its Progeny.</u>

Even if PRN had standing, Count III still would fail under *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), and its progeny. *Rogers* held that the Lanham Act does not apply to titles of "artistic works" if the use of the mark is both "artistically relevant" to the work and is not "explicitly mislead[ing] as to the source or the content of the work," and subsequent cases have

broadened the test to include the body of expressive works. *See*, *e.g.*, *Twentieth Century Fox Television v. Empire Dist., Inc.*, 875 F.3d 1192, 1197–98 (9th Cir. 2017) (use of "Empire" in title and body of TV show); *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't, Inc.*, 868 F. Supp. 2d 172, 177-84 (S.D.N.Y. 2012) (use of Luis Vuitton bag in movie "The Hangover: Part II").[7]

1. Defendants Do Not Use "Miss Cleo" as a Source Identifier.

Defendants are "using ['Miss Cleo' ] simply to identify the subject matter" of the Film, and not as a source identifier for their own services (e.g., film production or distribution), so *Rogers* applies.[8] *Down to Earth Organics, LLC v. Efron*, 2024 WL 1376532, at *4 (S.D.N.Y. Mar. 31, 2024); *JTH Tax LLC v. AMC Networks, Inc.*, 694 F. Supp. 3d 315, 332-33 (S.D.N.Y. 2023) (use of trademark in TV show was relevant to plot and not a source identifier). *Rogers* is especially apt where claims involve titles of expressive works. *See, e.g.*, *Down to Earth Organics*, 2024 WL 1376532, at *9 (dismissing trademark claim alleging defendant's online series infringed plaintiff's health-food and clothing brand); *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 441-44 (S.D.N.Y. 2019) (same regarding a documentary about Whitney Houston); *Medina*, 2016 WL 3906714, at *6 (same regarding claims over title that allegedly infringed a band name).

2. Defendants' Use of the "Miss Cleo" Mark is Artistically Relevant.

Defendants need only show that the Mark has any "artistic relevance to the underlying work whatsoever," i.e., that the use was "not arbitrarily chosen just to exploit the publicity value of [the plaintiff's mark] but instead ha[d] genuine relevance to the film's story." *Rogers*, 875 F.2d at 999, 1001. This bar is "purposely low." *Louis Vuitton*, 868 F. Supp. 2d at 178. "The artistic

[7] Courts also apply *Rogers* to common law trademark claims. *See e.g.*, *See Medina*, 2016 WL 3906714, at *12.

[8] *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023) does not apply because Defendants are not using the Mark "as a designation of source for the [Defendants'] own goods." 599 U.S. at 148. *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125 (2d Cir. 2023) is irrelevant here because "MSCHF used Vans' trademarks—particularly its red and white logo—to brand its own" sneakers, which is "quintessential trademark use." 88 F.4th at 138–39.

relevance prong ensures that the defendant intended an artistic—*i.e.,* noncommercial—association with the plaintiff's mark," rather than intent "to associate with the mark to exploit the mark's popularity and good will." *Brown*, 394 F. Supp. 3d at 442. Here, the title "Miss Cleo: Her Rise and Fall" is artistically relevant because the Film is *about Miss Cleo*, specifically the highs and lows of her career and how the woman who portrayed her, once a mega-star, fell from grace. (*See generally* Film.) PRN cannot plausibly allege that the Film's title was chosen just to exploit the Mark. The same is true as to use of the Mark in the body of the Film. *See e.g., JTH Tax LLC*, 2023 WL 6215299, at *8; *Louis Vuitton*, 868 F. Supp. 2d at 178.

3. Defendants' Use of the "Miss Cleo" Mark is Not Explicitly Misleading.

The second *Rogers* prong considers "whether the defendant's use of the mark is misleading in the sense that it induces members of the public to believe the work was prepared or otherwise authorized by the plaintiff." *Louis Vuitton*, 868 F. Supp. 2d at 179 (cleaned up). To satisfy this prong, "the finding of likelihood of confusion [by assessing the Second Circuit's *Polaroid* factors] must be particularly compelling to outweigh the First Amendment interest recognized in *Rogers*." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993). On motions to dismiss, "courts have disposed of trademark claims where simply looking at the work itself, and the context in which [the mark] appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work." *Brown*, 394 F. Supp. 3d at 443. Such is the case here. As a threshold matter, PRN only claims that "[a]s a result of Defendants' unauthorized use of PRN's 'Miss Cleo' Mark, consumers are likely to believe that the [i]nfringing media has been approved by or is otherwise associated with Plaintiff and otherwise dilute the Mark." (PAC ¶ 77.) This conclusory allegation "fails to even allege the type of confusion

that could potentially overcome the *Rogers* protection," *Louis Vuitton*, 868 F. Supp. 2d at 181, and does not meet the requirements of "stat[ing] a cognizable claim of confusion." *Id.*

Even so, the Film's title is the exact type of use of a celebrity's name/trademark that *Rogers* protects; here, "the slight risk that such use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, and the Lanham Act is not applicable." *Rogers*, 875 F.2d at 1000; *id.* at 1001 (movie title "Ginger and Fred," contained "no explicit indication that [Ginger] Rogers endorsed the film"). The same logic is even stronger here; "Miss Cleo: Her Rise and Fall" implies some degree of unflattering overtones such that consumers would be unlikely to believe the owner of the Mark would endorse it (assuming they even associate the Mark with PRN). *Brown*, 394 F. Supp. 3d at 443–44. The same is true as to the Film itself, as well as the as the "production, advertising, promotion, distribution, offering for sale and sale of the Film." (PAC ¶ 76.) *See*, *e.g.*, *Twentieth Century Fox Television*, 875 F.3d at 1197–98; *Louis Vuitton*, 868 F. Supp. 2d at 177-78.

Finally, PRN makes no credible claim that "the public would [] interpret [the title] to be, a source-denoter." *Medina*, 2016 WL 3906714, at *5. It is implausible that PRN itself would be the source of a film about Miss Cleo's embroilment in claims of fraud and deception.

### C. <u>There is No Likelihood of Confusion.</u>

In any event, PRN fails to state a claim for trademark infringement because it does not (and cannot) establish essential elements. PRN does not even plead that Defendants engaged in a "use in commerce" (which Defendants do not concede), nor do they show that they used the Mark in a way that "is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Lopez v. Nike, Inc.*, 2021 WL 128574, at *4 (S.D.N.Y. Jan. 14, 2021); 15 U.S.C. § 1114.

1. <u>Plaintiff Once Again Fails to Plead Likelihood of Confusion.</u>

PRN again failed to plead, let alone plausibly allege, the key element of trademark infringement. (*See generally* PAC.) "Ultimately, satisfaction of the likelihood-of-confusion standard requires a probability of confusion [of numerous ordinary prudent purchasers], not a mere possibility." *OffWhite Prods., LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 564 (S.D.N.Y. 2020). On a Rule 12 motion, the Court must determine whether PRN's allegations meet this standard and rise "above the speculative level." *Twombly*, 550 U.S. at 555. They do not and amendment is futile.

When assessing whether there is likely confusion, courts rely on the following factors:

> (1) [the] strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009); *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). No factor is dispositive and the "ultimate question [is] whether, looking at the products in their totality, consumers are likely to be confused." *Starbucks Corp.*, 588 F.3d at 115. Many courts have dismissed Lanham Act claims without conducting this fact-intensive analysis where, as here, the complaint lacks any details regarding likelihood of confusion. *See*, *e.g.*, *Ahmed v. GEO USA LLC*, 2015 WL 1408895, at *3 (S.D.N.Y. Mar. 27, 2015).

Here, PRN makes the same conclusory allegation as in the Initial Complaint that "Defendants' production, advertising, promotion, distribution, offering for sale and sale of the Film is likely to cause confusion, mistake or deception as to the source or sponsorship of the Infringing Film." (PAC ¶ 76.) This sweeping claim is insufficient to plausibly plead likelihood of confusion and can "easily" be dismissed. *OffWhite Prods., LLC*, 480 F. Supp. 3d at 565; *cf. Spin*

*Master v. Aciper*, 2022 WL 992888, at *5 (S.D.N.Y. Apr. 1, 2022) (court could not "rely on 'legal conclusions'").

2. There is No Plausible Basis for a Likelihood of Confusion.

Basic pleading failures aside, even if the Court were to consider the *Polaroid* factors, on the face of the PAC, there is no basis to believe that there is or would be any likelihood of confusion.[9] To plausibly allege that the public likely believes that PRN "sponsored or otherwise approved the [Defendants'] use of the [Mark]," *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005), PRN must raise "a serious question as to the likelihood of confusion." *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 634 (S.D.N.Y. 2008). PRN cannot, and the Court can discern implausibility by "looking at the [Film], and the context in which [the Mark] appears." *OffWhite Prods., LLC*, 480 F. Supp. 3d at 564; *see Louis Vuitton*, 868 F. Supp. 2d at 183 (collecting cases).

***Second Factor.***[10] The Mark and the Film's title "are used for different purposes and are presented to the public differently," so "even though they say the same thing, they are dissimilar." *See DeClemente v. Columbia Pictures Indus., Inc.*, 860 F. Supp. 30, 48 (E.D.N.Y. 1994). PRN "suppl[ies] no facts" about how "Defendants' production, advertising, promotion, distribution, offering for sale and sale of the Film" (PAC ¶ 76) "would create [a] likelihood of confusion," *Spin Master*, 2022 WL 992888, at *5. This factor weighs in favor of Defendants.

***Third Factor.*** The Mark and the Film's title are not in proximity given that the parties operate in different markets. The Mark is registered in connection with "psychic reading services" and Defendants are in the documentary film production and program distribution industry; there

---

[9] Like federal claims, likelihood of confusion for common law trademark infringement is assessed through the *Polaroid* factors. *JJFM Corp. v. Mannino's Bagel Bakery*, 132 N.Y.S.3d 582, 589 (N.Y. Sup. Ct. 2020).
[10] Defendants currently take no position on the first *Polaroid* factor, which would not be dispositive anyway.

is no plausible competition between them. *See* ECF 53-7; *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 481 (S.D.N.Y. 2020) (no proximity between vehicles and video games).

***Fourth Factor.*** PRN does not allege it would "bridge the gap" by expanding into feature films, including "biopics" or "docudramas." *See Louis Vuitton*, 868 F. Supp. 2d at 184 n.19.

***Fifth Factor.*** PRN has not offered any examples of actual consumer confusion.

***Sixth Factor.*** PRN has not pleaded beyond mere conclusory statements that Defendants named the Film in bad faith; as discussed above, the Film's name is directly relevant to the subject matter thereof. *Gayle v. Allee*, 2021 WL 120063, at *4 (S.D.N.Y. Jan. 13, 2021) (favoring defendant where plaintiff only made conclusory allegations regarding bad faith) (*see* PAC ¶ 79).

***Seventh Factor.*** PRN makes no claim about quality; the Film is a professionally produced feature created by reputable filmmakers. *See Adidas Am., Inc.*, 2020 WL 2539116, at *12.

***Eighth Factor.*** PRN has not pleaded that the sophistication level of Defendants' audience would cause confusion. *See JTH Tax LLC*, 694 F. Supp. 3d at 340. Indeed, Defendants' Film is on its face *about* Miss Cleo, is not presented as sponsored by PRN, and explores the dark side of Miss Cleo's career and PRN's legal woes. And PRN's defamation claims belie any notion that audiences of reasonable intelligence would believe PRN sponsored the Film.

**D. <u>Defendants are Protected by the Fair Use Doctrine.</u>**

Defendants' use of the Mark is also a textbook example of fair use, which provides a statutory defense to a trademark infringement claim where the use of the mark "is a use, otherwise than as a mark . . . which is descriptive of and used fairly and in good faith only to describe the goods . . . of such party . . . ." 15 U.S.C. § 1115(b)(4). Fair use may be decided on a motion to dismiss where, as here, "the facts necessary to establish the defense are evident on the face of the complaint." *Outhouse PR, LLC v. Northstar Travel Media, LLC*, 2020 WL 2512092, at *4 (S.D.N.Y. May 15, 2020).

***First***, "nominative fair use allows a defendant to use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of the defendant's product or the mark-holder's sponsorship or affiliation." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010) (cleaned up). Here, Defendants use "Miss Cleo" to describe the Film's subject matter, not endorse PRN's products or suggest an affiliation between them. *See Outhouse PR,* 2020 WL 2512092, at *6 (descriptive use means "words were used to describe the ingredients, quality or composition of a product, not the source of the product").

***Second***, when the alleged use of a plaintiff's mark is accompanied "by the prominent display of the defendants' own trademarks," this generally does not constitute trademark use. *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30–31 (2d Cir. 1997). Here, PRN again complains that Defendants infringed the Mark through "advertising" and "promotion" (PAC ¶ 76), but Defendants' promotional poster prominently displays the Lifetime® trademark in *two places*. (ECF 28-6 (full version of poster seen at PAC ¶ 19).)

***Finally*****,** PRN has pleaded no factual basis that Defendants used the name "Miss Cleo" in bad faith. "[T]he inquiry into the defendant's good faith concerns the question whether the user of a mark intended to create consumer confusion as to source or sponsorship." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 401 (2d Cir. 2009). The Film is *about* Miss Cleo, and its source (Defendants) "is clearly identified by the prominent display of" the Lifetime trademark. *Cosmetically Sealed*, 125 F.3d at 30. There is no bad faith, and PRN fails to even plead the same.

## III. PRN'S STATE LAW CLAIMS IN COUNTS IV AND VI ARE STILL PREEMPTED.

PRN's claims for unjust enrichment (Count IV) and Deceptive Trade Practices (Count VI) are preempted and cannot be saved as a matter of law because "[t]here is no way for Plaintiff to reformulate [them] such that they do not derive from the" purported unauthorized use of the alleged copyrighted material (i.e., the Miss Cleo Creatives or Character). *Myrieckes v. Woods*, 2009 WL

884561, at *7 (S.D.N.Y. Mar. 31, 2009) (collecting cases). The Copyright Act preempts state law claims that assert the same rights as those protected by copyright, *see* 17 U.S.C. § 301(a), when: (1) the work "to which the claim is being applied falls within the type of works protected by the Copyright Act" and (2) "the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d. Cir. 2004). Both elements are satisfied here.

## A. <u>Plaintiff's Unjust Enrichment Claim is Still Preempted.</u>

PRN's copyright claim is rooted in its allegation that Defendants "infringed Plaintiff's validly registered copyrights in the Plaintiff's Miss Cleo Creatives, and the Miss Cleo Character embodied therein" which, for purposes of this argument, are presumably protectable works under 17 U.S.C. § 102. (PAC ¶¶ 9, 36.) PRN claims Defendants were unjustly enriched because they "[used] Plaintiff's Miss Cleo Character and Look [in the Film] without paying Plaintiff" and "acquired a benefit from Plaintiff." (PAC ¶ 72.) But this claim involves at least two exclusive rights in 17 U.S.C. § 106, e.g., reproduction and distribution, and is bare of any other elements that differentiate it from its copyright claim. (*Compare* PAC ¶¶ 31-42 (direct copyright claim), *with* ¶¶ 71-73 (unjust enrichment claim).) *See Briarpatch*, 373 F.3d at 306 (unjust enrichment preempted by copyright claim); *Myrieckes*, 2009 WL 884561, at *6 (same).

Regardless, this claim fails as a matter of law because "while a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment, there must exist a relationship or connection between the parties that is not too attenuated." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012); *see Marks v. Energy Materials Corp.*, 2015 WL 3616973, at *6 (S.D.N.Y. June 9, 2015). Here, Plaintiff fails to allege any relationship with Defendants, and its threadbare allegation that "Defendants acquired a benefit from Plaintiff" by using the "Miss Cleo Character and Look [in the Film] without paying Plaintiff" is not enough. (PAC ¶ 72.)

**B. <u>Plaintiff's N.Y. Gen. Bus. L. § 349 Claim is Still Preempted.</u>**

PRN claims Defendants violated New York's Deceptive and Unfair Trade Practices Law, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349; PAC ¶¶ 81-84. To establish a such claim, PRN must plead that: (1) "the challenged act or practice was consumer-oriented"; (2) "it was misleading in a material way"; and (3) it "suffered injury as a result of the deceptive act." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014).

PRN alleges—without meaningful amendment—that Defendants "trade[d] on the Miss Cleo Creatives and Character willfully and in bad faith, misappropriating Plaintiff's business ideas and concepts by using them in the infringing material in commerce without Plaintiff's authorization or approval and in doing so in a false and misleading manner and light." (PAC ¶ 82.) PRN is referring, at least in part, to works within the scope of copyright protection (i.e., the "Miss Cleo Creatives"), and "[t]he right being challenged through this claim is the very right protected by the Copyright Act," i.e., alleged copying and distribution of supposedly copyrighted works. *We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.)*, 221 F. Supp. 3d 396, 412 (S.D.N.Y. 2016). The PAC essentially "contend[s] that the Defendants are misleading the public by asserting their copyright," *id.*, making preemption appropriate here.

To the extent Plaintiff's claim is based on "Plaintiff's business ideas and concepts" (PAC ¶ 82), which are not copyrightable, 17 U.S.C. § 102(b), it still fails because it does not plead any "public harm" as required by § 349. *See Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 155 F. Supp. 2d 1, 26 (S.D.N.Y. 2001). There is no plausible public harm under these facts.

**C. <u>The Court Should Not Exercise Supplemental Jurisdiction Over Counts IV and VI.</u>**

Assuming PRN's federal claims are dismissed, the Court should still "decline[] to exercise jurisdiction over PRN's state law claims." Order at 9; *see Piuggi v. Good for You Prods. LLC*, 739

F. Supp. 3d 143, 170 (S.D.N.Y. 2024); *Diamond Collection, LLC v. Underwraps Costume Corp.*, 2018 WL 1832928, at *8 (E.D.N.Y. Apr. 16, 2018). Federal courts rarely retain supplemental jurisdiction once the anchor federal claims are dismissed unless "judicial economy, convenience, fairness, and comity" counsel otherwise. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). This case is in its early stages and "there has been no significant activity" aside from Defendants' Motion to Dismiss, so the exceptions do not apply. *See Roberts v. Bliss*, 229 F. Supp. 3d 240, 253–54 (S.D.N.Y. 2017); *see also Mosher v. Veyda*, 2024 WL 4932621, at *10 (S.D.N.Y. Dec. 2, 2024).

## IV. PRN'S DEFAMATION CLAIM STILL CANNOT WITHSTAND DISMISSAL.

As a threshold matter, if the Court dismisses PRN's federal copyright infringement claim, it should decline to exercise supplemental jurisdiction over PRN's defamation claim for the same reasons stated above. *Cf. Pirri v. Cheek*, 2019 WL 3936798, at *4 (S.D.N.Y. Aug. 20, 2019). Regardless, allowing PRN to amend its defamation claim would be futile because PRN will never have standing to allege defamation for its corporate officers; any alleged defamation of a corporate officer cannot be attributed to PRN; and "statements dismissed due to being true, lacking defamatory meaning, or being hyperbole or opinion cannot be saved by amendment." *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 694 (S.D.N.Y. 2022); *see also Thea*, 807 F.3d at 496–97; *cf. Hollander v. Pressreader, Inc.*, 2020 WL 2836189, at *6 (S.D.N.Y. May 30, 2020).

### A. Plaintiff Still Lacks Standing to Bring its Defamation Claim.

As with the Initial Complaint, the PAC does not allege that the Film defamed *PRN*; instead, many of the alleged defamatory statements concern PRN's CEO, non-party Steven Feder. (PAC ¶¶ 85-91.) PRN lacks standing to sue for defamation on his behalf, which alone weighs against amendment. *See Afftrex*, *Ltd. v. Gen. Elec. Co.,* 161 A.D.2d 855, 856 (3d Dep't 1990).

Further, statements regarding Feder cannot be ascribed to PRN by virtue of a business association. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006). PRN must prove "the [defamatory] matter is published of and concerning the plaintiff." *Id.* PRN improperly seeks to impute statements "of and concerning" *Feder* to PRN by baldly alleging—even after amendment—that "[t]he false portrayal of an officer of PRN as a drunken, ruthless Wall Streat CEO is totally inaccurate and offensive and tarnishes the image and goodwill of PRN and the famous Miss Cleo Character." (PAC ¶ 26.) The comments—including, for example, that Feder was an "asshole" or had a "sick sense of [humor]" (*id.* ¶ 89)—are personal to him and cannot defame PRN. Nor can they defame "the famous Miss Cleo Characater." Fictional characters cannot be defamed and the actress who portrayed Miss Cleo, Ms. Harris, passed away in 2016 (*id.* ¶ 11), and the deceased also cannot be defamed. *See* Restatement (Second) of Torts § 560 (1977).

**B. <u>Plaintiff's Amended Defamation Claim Cannot Withstand a Motion to Dismiss.</u>**

Because Plaintiff's defamation claim cannot withstand a motion to dismiss, amendment is futile and its Motion to Amend should be denied. *Hollander*, 2020 WL 2836189, at *6.

1. <u>Plaintiff's Defamation Claim is Still Based on True Statements.</u>

Despite PRN's attempt to amend, its defamation claim remains dismissible as a matter of law by the absolute defense of truth. *See Leidig v. BuzzFeed, Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019); *Dillon v. City of New York*, 261 A.D.2d 34, 39 (1st Dep't 1999). PRN "must plausibly allege that the challenged statement is 'substantially false.'" *Olivet Univ. v. Newsweek Digital LLC*, 2024 WL 1892563, at *4 (S.D.N.Y. Apr. 30, 2024). "[I]f the challenged statement is 'substantially true,' then a claim for defamation is legally insufficient and must be dismissed." *Id.* "A statement is substantially true if [it] would not have a different effect on the mind of the reader from that which the pleaded truth would have produced," *Tannerite Sports, LLC v. NBCUniversal*

*News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017), accounting for "the entire publication and the circumstances of its issuance." *Jacob*, 626 F. Supp. 3d at 686–87.

PRN again cannot plausibly allege that the statements about PRN are substantially false. Plaintiff alleges that Defendants made the following statements: (1) "that PRN paid hefty sums to 'victims' as part of a settlement with the [Federal Trade Commission]" (PAC ¶¶ 24, 88) and (2) "that Plaintiff bills customers who's [sic] phones had been 'disconnected years ago'" (*id.* ¶ 24, 89(d)). Both statements are true or at least substantially true, so are not defamatory.

In February 2002, the Federal Trade Commission ("FTC") sued PRN, Feder, and others ("FTC Defendants") for violations of the FTC Act ("FTC Lawsuit"). (*See* ECF 28-7 ("FTC Complaint").) As part of the FTC Complaint, the agency detailed the FTC Defendants' pay-per-call billing practices and explained that they "often bill consumers for 900 calls placed from ***telephone lines that consumers had disconnected months or years before the date of the 900 call***.") (*Id.* ¶ 48.) In November 2002, the court entered a stipulated final judgment (*see* ECF 28-8 ("FTC Judgment")), wherein the FTC Defendants (while not admitting any wrongdoing) "acknowledge[d] that the FTC ***has a good faith basis for the allegations*** made in its Complaint." (*Id.* ¶ 8.)[11] The FTC Defendants were also held liable for monetary damages, required to "cease all collection efforts on [consumer] accounts or claims totaling approximately Five Hundred Million Dollars," and ordered them to pay the FTC $5 million. (*Id.* §§ VI, VII; *see* ECF 28-1.)

The Film's dialogue nearly mirrors the FTC Complaint and states that PRN reached a settlement that required it to pay "hefty sums." (*See* Film at 52:00-52:15, 1:22:05-1:22:49, 1:25:40; ECF 28-7, 28-8.) Additionally, a text "card" at the end of the Film states that "Steven Feder and

[11]The Court may judicially notice PRN's "acknowledge[ment]" in the FTC Judgment "that the FTC ***has a good faith basis for the allegations*** made in its Complaint" (*id.* ¶ 8) and the remedies therein; and the nature of the claims in the FTC Complaint (¶¶ 59, 73, 83), which are integral to Defendants' truth defense. *See Press v. Primavera*, 685 F. Supp. 3d 216, 224 (S.D.N.Y. 2023); *see also Simmons v. Trans Express Inc.*, 16 F.4th 357, 360–61 (2d Cir. 2021).

Peter Stolz paid hefty sums to the FTC and multiple states and victims for the billions of dollars they reaped through [PRN].” (Film at 1:25:40; *see* PAC ¶ 24.) The FTC Judgment (at 8, § VI) reads similarly: the court entered judgment against the FTC Defendants for $250,000,000, with judgment to be suspended upon the collective “Defendants’” payment of $5,000,000 to the FTC, with such money to be deposited into a fund administered by the FTC to be used for, *inter alia*, “consumer redress.” There, the FTC Defendants “acknowledge[d] that the FTC has a good faith basis for the allegations made in its Complaint” (*id.* ¶ 8), which catalogued how consumers “suffered monetary losses and other injury as a result of Defendants’ unlawful acts or practices.” (*See* FTC Compl. at 13-18.) It is true that “hefty sums” were paid and there were “victims.[12]

2. <u>Statements Not Made in the Film Still Cannot be a Basis for Defamation.</u>

Plaintiff’s claim that the Film describes its officers as “stupid and lazy” and states “[t]hat [PRN] was ‘ripping off millions of people’” still cannot proceed because such statements were never made. (PAC ¶¶ 24, 89.) *See Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 80 (S.D.N.Y. 2021) (dismissing defamation claim “not supported by actions or dialogue”). First, in the Film, Feder exclaims that he is “not going down because ***the public*** is too stupid or lazy to read the fine print.” (Film at 55:29-55:35.) Second, a Florida state prosecutor depicted in the Film speaking about ***Miss Cleo*** (not PRN) refers to “ripping off millions of people.” (*Id.* at 54:00-54:05.) Such statements, which do not exist in the Film or are not of and concerning PRN, cannot be defamatory.

3. <u>Statements of Opinions or Hyperbole Are Not Actionable.</u>

Statements of “pure opinion,” “imaginative expression,” or “rhetorical hyperbole” are privileged against defamation claims. *See, e.g.*, *Fairstein*, 553 F. Supp. 3d at 65; *see also Kirch*, 449 F.3d at 402; *Dillon*, 261 A.D.2d at 34, 38. “Since falsity is a necessary element of [] defamation

[12] Even if the terms were imprecise, technical inaccuracies are not defamatory. *See Olivet*, 2024 WL 1892563, at *4.

. . . only statements alleging facts can properly be the subject of a defamation action." *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152-53 (1993). Conversely, as there is "no such thing as a false idea," courts "distinguish[] between statements of fact, which may be defamatory, and expressions of opinion, which are not." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020).

Courts examine "the content of the whole communication, its tone and apparent purpose, in order to determine whether a reasonable person would view them as expressing or implying any facts," *Intellect Art Multimedia, Inc. v. Milewski*, 24 Misc. 3d 1248(A), at *5 (Sup. Ct. 2009), in "the context of the entire communication and of the circumstances in which [the words] were spoken or written." *Ganske*, 480 F. Supp. 3d at 551. Courts consider: (1) "whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous"; (2) "whether the statement is capable of being objectively characterized as true or false"; (3) "the full context of the communication in which the statement appears"; and (4) "the broader social context or setting surrounding the communication." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 178–79 (2d Cir. 2000).

Here, even if PRN had standing, any reasonable viewer would understand the statements about Feder and other PRN officers to be the filmmakers' opinions and hyperbolic representations. *See Fairstein*, 553 F. Supp. 3d at 80-82. Such expressions lack precise meaning or objective characterization as true or false, especially viewed in the context of the entire Film. Statements like Feder is an "asshole" or has a "sick sense of [humor]" (PAC ¶¶ 24, 89(a), (e); Film at 1:01:00-1:01-14), are clear opinions or hyperbole. *See, e.g.*, *Dillon*, 261 A.D.2d at 36-37, 41 (describing plaintiff as a "fucking asshole" was not defamatory). The same is true about the depiction of Feder saying PRN "own[s] [Harris's] ass." (PAC ¶ 89(c); Film at 45:02-45:11.) *See, e.g.*, *Fairstein*, 553 F. Supp. 3d at 80-82 (depicting plaintiff calling criminals "animals" was not defamatory).

With respect to PRN's claims that "Steven Feder is portrayed as a drunk and ruthless wall street [sic] type" (and that he supposedly does not drink) (PAC ¶ 87), this claim sounds in false light, a claim not recognized in New York, *Torres v. CBS News*, 1995 WL 810041, at *5 (N.Y. Sup. Ct. Oct. 11, 1995), rather than defamation. In any event, Feder is never shown as drunk (Film at 27:20-27:35, 28:53-29:06, 45:35-45:45, 1:19:42-1:19:50). Further, showing one acting "callous" or "ruthless" may be properly categorized as parody or a loose, figurative characterization akin to hyperbole or opinion about that person. *See Fairstein*, 553 F. Supp. 3d at 68; *Miller v. Richman*, 184 A.D.2d 191, 192-93 (4th Dep't 1992). Finally, stating that PRN was "pulling [psychics] off the street" is not defamatory. (PAC ¶ 24.) *See Tannerite Sports*, 864 F.3d at 251. This language is figurative, and such hyperbolic rhetorical language is protected by the First Amendment. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990).

4. PRN Still Inadequately Pleads All Other Claimed Defamatory Statements.

Aside from the above, PRN has failed to delineate any other instances of defamation in the Film. *See* N.Y. C.P.L.R. 3016(a). Conclusory claims of defamatory statements that "fail to specify time, place and manner of the communication" warrant dismissal. *Dillon*, 261 A.D.2d at 40. PRN makes the blanket allegation that "[t]he defamatory statements during the one-hour and twenty-four-minute duration are too numerous to set forth." (PAC ¶ 89.) Even after a proposed amendment, PRN does not plead what the other claimed statements are, when they were said, who said them, and how they were delivered, thus failing to notify Defendants and the Court what other aspects of the Film are allegedly defamatory. Allowing amendment of this claim would be futile.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiff's motion for leave to amend, and order that discovery continued to be stayed pending the Court's decision on the motion.

Dated: New York, New York
October 17, 2025

Respectfully submitted,

**COWAN DEBAETS ABRAHAMS & SHEPPARD, LLP**

By: /s/ Scott J. Sholder
Scott J. Sholder, Esq.
CeCe M. Cole, Esq.
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Fax: (212) 974-8474
ssholder@cdas.com
ccole@cdas.com

*Attorneys for Defendants A&E Television Networks, LLC and Hillionaire Productions LLC*

**CERTIFICATE OF SERVICE**

I, Scott J. Sholder, hereby certify that a true and correct complete copy of the foregoing Defendants A&E Television Networks, LLC and Hillionaire Productions LLC's Memorandum of Law in Opposition to Plaintiff Psychic Readers Network, Inc.'s Motion for Leave to Amend the Complaint has been served on all counsel of record via the Court's CM/ECF service.

/s/ Scott J. Sholder
Scott J. Sholder