UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X
Psychic Readers Network, Inc., CASE NO. 24-CV-8155

Plaintiff,

v.

A&E Television Networks, LLC and Hillionaire Productions, LLC,

Defendants.
-----------------------------------------------------X

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT**

**Joel R. Dichter**
**DICHTER LAW, LLC**
**483 Cherry Street, Suite 100**
**Bedford Hill, NY 10507**
**Tel: (212) 593-4202**
**Attorneys for Plaintiff**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ..... 1

PRN's Registrations ..... 3

Rule 8 ..... 3

Access ..... 6

Trademark Standing ..... 7

Trademark infringement ..... 8

Rogers Case ..... 9

Trademark Fair Use ..... 10

Defamation ..... 10

State Law Claims ..... 11

Conclusion ..... 11

# TABLE OF AUTHORITIES

**Page**

Cases

Cooper v Parsky, 140 F. 3d 433, 440 (2d Cir. 1998) ........ 8

Croak v Saatchi & Saatchi N. Am, Inc., 174 F. Suppl 3d 829, 834 (SDNY 2016) ........ 10

Deere and Co. v. MTD Prods, Inc., 2001 WL 435613 (SDNY 2001) ........ 13

ESPN, Inc. v. Quiksilver, Inc., 586 F.Supp.2d 219, 230 (S.D.N.Y. 2008) ........ 12

First Nat'l Bank of Waverly v. Winters, 225 N.Y. 47 (1918) ........ 14

Great American Fun Corp. v. Hosung New York Trading, Inc, 935 F. Supp. 488,489 (SDNY 1996) ........ 7, 11

Gruner and John USA Publishing v. Meredith Corp., 991 F.2d 1072 (2nd Cir. 1993) ........ 12

Halicki Films LLC v Sanderson, 547 F. 3d 1213, 125 (9th Cir. 2008) ........ 8

Hamil Am, Inc v. GFI, 193 F.3d 92, 98 (2nd Cir. 1993) ........ 7

Jack Daniels v. VIP Products, 599 U.S. 140 (2023) ........ 13

Krasselt v. Seagram, 2002 WL 1997926 (SDNY 2002) ........ 7

LaLuna Enterprises, Inc. v. CBS Corp., 74 F. Supp. 2d 384 (1999) ........ 14

Luis Sportswear, USA v. Levi Strauss & Co., 799 F.2d 867, 871 (2nd Cir. 1986) ........ 12

Maverick Rec. Co. v Goldshteyn, 2006 WL 2166870 (EDNY 2006) ........ 8

N.Y. Soc. For Suppression of Vice v. Macfaddin Publ., 260 N.Y. 167 (1932) ........ 14

Northstar Financial v. Schwab, 779 F.3d 1036 (9th Cir. 2015) ........ 12

Penguin Random House, LLC v. Colting, 270 F. Supp 3d 736,746 (SDNY 2017) ........ 8

Psychic Readers Network, Inc. v Take-Two Interactive Software, Inc., 2018 WL 1517690 (SD FL) ........ 10

Restis v. American Coalition against Nuclear Iran,
53 F.Supp.3d 705 (SDNY 2014) .......... 15

Scahill v. District of Columbia, 909 F.3d 1177, (D.C. Cir. 2018).......... 11

Scotch & Soda BV v. Scotch & Iron LLC, 2018 WL 2224997 (SDNY 2018) .......... 13

Srcam v. Saakshi Enter., Inc., 2017 WL 2633510 (EDNY 2017) .......... 11

Travelers Ins. Co. v. 633 Third Associates, 973 F.2d 82 (2nd Cir. 1992) .......... 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------X
Psychic Readers Network, Inc., CASE NO. 24-CV-8155

Plaintiff,

v.

A&E Television Networks, LLC and Hillionaire Productions, LLC,

Defendants.
----------------------------------------------------X

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiff Psychic Readers Network hereby submits its reply in support of its motion for leave to amend the complaint. (Dkt. 53).

**Preliminary Statement**

Defendants in their opposition to the motion do not even attempt to rebut that Plaintiff meets the liberal standard under Rule 15(d) for granting permission to amend the Complaint (Dkt. 56). Defendants cannot argue undue delay or dilatory motive as the amendment was submitted within the timeframe set by the Court. As this is the first amended complaint, they cannot argue there have been repeated failures to cure through prior amendments. There certainly is no undue prejudice to Defendants from the timely submissions and the claims of infringement are asserted in good faith. Thus, under the liberal standard of Ruel 15(d), leave to file the amended complaint should be granted.

Defendants' left with no basis to oppose the motion instead submit an opposition that reads more like a premature motion for summary judgment. Defendants improperly debate issues of fact in a spurious attempt to argue futility. Although its opposition is misguided in the purview of the pending motion, we will address their arguments within the limitations of a reply in the hope of moving on to the merits. One doesn't need to be prescient to know the Amended Complaint addresses the shortcomings found by the Court in the original Complaint.

With respect to the copyright cause of action, the Court cited three primary reasons for its decision (Dkt. 52, Opinion and Order, September 3, 2025. ("Order")). One, that all the copyright registrations could not be considered as only three were attached to the Complaint. (Order, p. 5). The Amended Complaint ("AC") references and attaches the ten (10) copyright registrations of which demonstrate that Psychic Readers Network (Plaintiff or "PRN") is the owner of the registered works featuring Miss Cleo (DKT. 53, Attachment 3 is the Amended Complaint, the registrations are included in Exs. 1,2 thereto). The works include television commercials, a feature length pay per view video, tarot cards, a book and an educational video that all feature the Miss Cleo character. (AC, paras. 12-14). Second, the Court held there was insufficient specificity under Rule 8 as to the infringing acts. (Order, p. 7). The AC specifically delineates the infringing acts including Defendants copying verbatim its copyrighted television commercial (AC, paras 19-24). Third, the Complaint failed to plead that the copyrights of Plaintiff extended to the Miss Cleo Character itself (Order, p.6. fn. 4). The AC now clearly states that PRN asserts the infringement extends to the Miss Cleo character embodied within the registered works and that Defendants misappropriated the character for its film Miss Cleo; Her Rise and Fall (the "Film"). (AC, p. 2, paras. 33,36). Thus, the AC now meets the standard of Rule 8 to withstand a motion to dismiss, let alone a motion for leave to amend the complaint.

The AC also cures the issue as to standing to bring the action for trademark infringement (Order, p.9). In the Second Circuit, an amended complaint that brings forth events happening since the date of the commencement of the action may cure defects in standing. That is the case here as the subsequent registration by the USPTO of the mark Miss Cleo occurred after the filing of this action. Moreover, as PRN is closely identified with Miss Cleo, the complaint alleges a likelihood of confusion which is sufficient at this stage of the proceeding.

**PRN's Registrations**

The Amended Complaint now lists each of the copyright registrations and attaches copies of the ten registrations. That is sufficient for the Court to find a rebuttable presumption of ownership. A certificate of registration from the Copyright Office is prima facia proof of ownership and validity. Hamil Am, Inc v. GFI, 193 F.3d 92, 98 (2nd Cir. 1993). Thus, Plaintiff has satisfied the first prong of the two-tier test for a copyright infringement claim, ownership of a valid copyright. (AC ⁋13-14); Exs. 1,2).

**Rule 8**

The AC sets forth specific acts that it alleges are infringing including but not limited to the copying verbatim of its registered television commercial within the Film. (AC paras. 19-24). As held in Krasselt v. Seagram, 2002 WL 1997926 (SDNY 2002):

. "At this stage of the litigation, Plaintiff is not required to specify exactly which individual elements of the Proposals are original in order to put Defendants on fair notice of the claims against them; nor is it necessary that Plaintiff state exactly which of the thirty proposed advertisements that constitute the Proposals were infringed. See Great American Fun Corp. v. Hosung New York Trading, Inc, 935 F. Supp. 488,489 (SDNY 1996) (refusing to dismiss complaint as insufficiently specific under Rule 8, even though plaintiff did not allege which of defendant's elements in the Story are those protected by DC Comics' copyrights."

See Also, Maverick Rec. Co. v Goldshteyn, 2006 WL 2166870 (EDNY 2006):

Defendants clearly have notice of the claims and acts of misappropriation. (AC, paras. 19-24). Therefore, Defendants resort to arguing there is no substantial similarity. (Def Opp, pp.4-7). That raises genuine issues of fact for trial. "The task of the Court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Cooper v Parsky, 140 F. 3d 433, 440 (2d Cir. 1998). Defendants improperly ask the Court to weigh the evidence while considering a motion for leave to amend.

Addressing the Court's findings head on, the AC asserts that the Miss Cleo Character is distinct and entitled to copyright protection. (AC pp. 2,12, paras. 33,36). "Copyright law does protect characters who are sufficiently delineated to be original." Penguin Random House, LLC v. Colting, 270 F. Supp 3d 736,746 (SDNY 2017). Here, the character Miss Cleo has "displayed consistent, widely identifiable traits" that are original and subject to protection. Halicki Films LLC v Sanderson, 547 F. 3d 1213, 125 (9th Cir. 2008). So distinct is the character that the Miss Cleo Character became a pop icon parodied on SNL and many others. (AC para. 10).

The AC alleges the entire look and persona of the Miss Cleo Character, as portrayed by Ms. Harris, originated with PRN. Miss Harris assigned all rights to PRN and states her efforts were work for hire. (AC, para. 11). The cases referenced by Defendants are distinguishable. The 50 Cent case held that though his voice may not be copyrighted, the copyrighted musical work is protected. The same here. Plaintiff doesn't allege Ms. Harris's voice is copyrighted, but rather that the distinctive copyrighted character of Miss Cleo is entitled to protection.

In response to the Court's direction (Order, p. 7), the AC alleges that Defendants infringed its copyright in the Miss Cleo Character. (AC ⁋⁋ 33,36). "Plaintiff's Miss Cleo Character is itself entitled to copyright protection. Defendants' entire movie is an unauthorized and infringing recreation of the character, Miss Cleo, owned by PRN, including mimicking the character's clothing, voice, mannerisms and catch phrases." (AC, p.2). In response to the need for more specificity, (Order, p. 6), the AC pleads the acts and times by which Defendants infringed its copyrights. (AC ⁋⁋ 19-24). The AC continues that the Film "copies and recreates the original elements of Plaintiff's copyrighted materials, including the Miss Cleo Character, the use of look of Plaintiff's registered television commercials." (AC, ⁋19). It notes the Film's Miss Cleo dresses in the same style, uses the same fake Jamaican accent, uses tarot cards, is presented in commercials for psychic reading service, has similar backdrops and otherwise copies Miss Cleo. The side-by-side comparison of screen shots from the Film and from the registered works set forth in the AC (⁋19) are more than enough for a lay person to find substantial similarity.




In a prior claim by PRN for copyright infringement, the Court denied a motion to dismiss the copyright claim raising the same arguments as presented here by Defendants, the Court held:

"The Complaint also sets forth a side-by-side visual comparison demonstrating that PRN's copyrighted Miss Cleo is virtually identical to Take-Two's Auntie Poulet. ¶ 26. The similarities are more than substantial enough for a jury to plausibly find Take-Two has infringed upon PRN's copyrights. Take-Two's attempts in the motion to dismiss to characterize Miss Cleo as a mere composite of purely generic unprotectable individual elements or characteristics, or a *scènes à faire*, are belied by the numerous factual allegations in the Complaint which plausibly allege that the Miss Cleo character is a unique, widely identified character in American pop culture." Id. (Psychic Readers Network, Inc. v Take-Two Interactive Software, Inc. 2018 WL 1517690 (SD FL).

Defendants even copied verbatim one of its registered television commercials. (AC, para. 20). There is little doubt that "an average lay observer would recognize the alleged copy [of Miss Cleo] as having been appropriated form the copyrighted work" of PRN. Croak v Saatchi & Saatchi N. Am, Inc., 174 F. Suppl 3d 829, 834 (SDNY 2016).

In sum, the entire purpose of the Film is to generate profits for Defendants by infringing upon PRN's famous Miss Cleo Character. It is a continuing infringement as the Film is still available for viewing through streaming services (AC, ⁋ 18). Thus, the AC complies fully with Rule 8 and corrects the deficiencies of the Complaint identified in the Order of the Court. As Defendants' basis for objecting to the contributory and vicarious copyright infringement claims rests upon its challenge to the direct infringement, these arguments of Defendants also fail.

**Access**

Defendants attempt to claim a lack of access to the copyrighted materials. Are Defendants suggesting that their psychic abilities permitted them to create a replica of Miss Cleo out of thin air. The Plaintiff's copyrighted materials are available online through YouTube. (AC para. 21). The Film's Director and lead actress admit to studying PRN's commercials to duplicate the Miss Cleo character. (AC para. 21). Nor is there any requirement that every single work featuring Miss Cleo be registered. All of PRN's commercials display "© All rights reserved." Defendants add a non-existent "must" to its quote of the Lanham Act provisions on

registration. Courts have consistently ruled that it is sufficient that the registered works embody the character alleged to be infringed. Great American Fun Corp. v. Hosung New York Trading, Inc, 935 F. Supp. 488,489 (SDNY 1996).

Trademark Standing

As noted in the Order, Plaintiff's filed an application for a trademark in "Miss Cleo" well prior to the production of the Film. The USPTO can take a year or longer to review applications for a mark. Although pending at the time this lawsuit was commenced, Miss Cleo is now a registered trademark, and Plaintiff falls squarely within the definition of a "registrant" as defined in the Lanham Act., which includes legal representatives, successors and assigns (AC para. 15, Ex. 4). There is no debate that Defendants utilized the Mark "Miss Cleo" in the promotion for and in the infringing work. (AC para. 17). Any "person who infringes on a trademark shall be liable in a civil action by the registrant." Srcam v. Saakshi Enter., Inc., 2017 WL 2633510 (EDNY 2017). Thus, the issue becomes whether the subsequent registration, now incorporated in the AC, provides standing for PRN to pursue its trademark infringement claim under Section 1114 of the Lanham Act. .

There has been a prevailing movement towards finding that an Amended Complaint can cure a standing defect based upon ensuing events. In Scahill v. District of Columbia, 909 F.3d 1177, (D.C. Cir. 2018), the Appellate. Court held that standing may be found when the Amended Complaint sets forth events occurring after the date of the commencement of the action. It held that Rule 15(d) permits a Plaintiff to correct such alleged defects in the Complaint through an amendment setting out the subsequent events.

The Second Circuit has discussed the issue of whether a defect in standing may be cured through an Amended Complaint. In Travelers Ins. Co. v. 633 Third Associates, 973 F.2d 82 (2nd Cir. 1992), it was opined, "To the extent Plaintiff seeks to incorporate transactions or occurrences or events which happened since the date of the pleading…. If the complaint as amended alleges sufficient facts to support the requisite injury … plaintiff will have established standing …"). The decision was cited favorably in the Ninth Circuit case of Northstar Financial v. Schwab, 779 F.3d 1036 (9th Cir. 2015) in reaching the same conclusion. Here, the mark had already been approved on October 11, 2025, for publication by the USPTO, per uspto.gov, before the lawsuit was commenced. As registration was finalized shortly after the commencement of the action, it supports the curing of standing through the AC. Plaintiff should be punished due to delays at the USPTO. As the AC incorporates the registration of Miss Cleo, the standing issue raised by this Court has now been cured through the Amended Complaint. PRN is a registrant of Mark, Miss Cleo, and may pursue the action under the Lanham Act.

**Trademark infringement**

There is a two-prong test for trademark infringement: (1) whether the Mark is entitled to protection; and (2) whether Defendants' use of the Mark is likely to cause consumer confusion as to the origin or sponsorship of the Defendants' product or services. Gruner and John USA Publishing v. Meredith Corp., 991 F.2d 1072 (2nd Cir. 1993).; ESPN, Inc. v. Quiksilver, Inc., 586 F.Supp.2d 219, 230 (S.D.N.Y. 2008). "Registered trademarks are presumed to be distinctive and should be afforded the utmost protection." Luis Sportswear, USA v. Levi Strauss & Co., 799 F.2d 867, 871 (2nd Cir. 1986). Here, the application was filed on September 28, 2023, long before the Film was released. – In short, as the Mark is now registered, with a date of first use

back to 2000, the Mark satisfies the first prong of the two-prong test and is entitled to protection. (AC, Ex 4). As to the second prong at this stage, it is sufficient that the AC alleges a likelihood of confusion from the long and well-known association with Miss Cleo. It is not a bare bones allegation as PRN is closely aligned with Miss Cleo, as Defendants aptly demonstrate in their brief. (AC, paras. 74-80). The trailer and poster promote Miss Cleo's true story and thus it is certainly more than colorable that consumers would associate the Film with Plaintiff. Lifetime is viewed as the network on which it airs, not the creator of the Film.

**Rogers Case**

The decision in the Rogers case was subsequently reviewed by the U.S. Supreme Court in Jack Daniels v. VIP Products, 599 U.S. 140 (2023). The Supreme Court held that Rogers heightened First Amendment protection does not apply "when the alleged infringer uses a trademark in the way the Lanham Act cares most about: as a designation of source for the infringer's own goods." That is exactly the case here. Despite Defendants' position to the contrary, Defendants' use of the famous Mark, "Miss Cleo," is solely to palm off PRN's Mark to promote its own Lifetime Channel's product.

The Court applies the traditional Polaroid factors for determining likelihood of confusion, not Rogers. The Polaroid factors raise issues of fact that need not be addressed at the motion to dismiss stage. "Determination of likelihood of confusion" is not an inquiry appropriate on a motion to dismiss." Deere and Co. v. MTD Prods, Inc., 2001 WL 435613 (SDNY 2001). "[T]he hurdle for Plaintiff's claim regarding the likelihood of confusion is exceedingly low." Scotch & Soda BV v. Scotch & Iron LLC, 2018 WL 2224997 (SDNY 2018).

**Trademark Fair Use**

As with a claim of copyright infringement, the consideration of fair use at this stage is premature. In order to assert a successful fair use defense to a trademark infringement claim, the defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith. *See* 15 U.S.C. § 1115(b)(4); *EMI Catalogue P'ship,* 228 F.3d at 64. These elements raise issue of fact more appropriate after discovery. What is clear is that Defendants use of the Mark is not for some independent artistic purpose, but rather to palm off Plaintiff's Mark to promote its commercial enterprise based upon PRN's Miss Cleo. Its use was not merely descriptive but to identify PRN's intellectual property and the failure to seek permission for use was not acting in good faith.

**Defamation**

It has long been established that a corporation may sue for defamation where the entity's reputation is injured by a false statement harming the corporation's business reputation. LaLuna Enterprises, Inc. v. CBS Corp., 74 F. Supp. 2d 384 (1999); N.Y. Soc. For Suppression of Vice v. Macfaddin Publ., 260 N.Y. 167 (1932). The Film's depiction of Plaintiff's operation as unscrupulous and unlawful, and its owners, necessarily impacts on the reputation of PRN and diminishes the value of its intellectual property in the Miss Cleo brand. (AC, paras. 24-27).

Where a corporation is the Plaintiff in an action for defamation, the Court or jury determines whether the published statement relates to its business and injures its reputation. It has been held that a charge that a business is operated dishonestly is defamatory per se and damages are presumed. First Nat'l Bank of Waverly v. Winters, 225 N.Y. 47 (1918). That is the case here. The Film depicts PRN as a dishonest business through false assertions. The AC alleges numerous instances of falsehoods that are to be deemed true at this stage. (AC, paras. 84-

91). For example, no fine and no finding of wrongdoing was made by the FTC. The allegation that large sums were paid to "victims" is equally inaccurate. The Film's dialogue includes that PRN was "ripping off millions of people," "pulling [psychics] off the street." It utilizes the real names of PRN's officers to disparage the management of the corporation and thereby the corporation. It portrays PRN's principal, Steven Feder, as a drunk at the office and in business meetings. The Film falsely states that one of PRN's principals, Peter Stolz, tells the Miss Cleo character in the Film that Steven Feder, as owner of PRN, laughed at a man falling down a staircase and dying. (AC para. 89). Thus, the defamatory remarks in the Film, even if directed at its owners, all are within the context of operating the business and harm its reputation. (AC, paras. 86-91).

The Plaintiff meets the notice pleading requirements by alleging false statements published to third parties without consent. Restis v. American Coalition against Nuclear Iran, 53 F.Supp.3d 705 (SDNY 2014). Here, the Film was published to hundreds of thousands and likely millions of viewers. Thus, the AC allegations that PRN's reputation was harmed by the false statements are sufficient.

**State Law Claims**

Plaintiff does not deny that the copyright and trademark claims preempt State Law Claims. However, to the extent the Court finds a lack of Federal jurisdiction to any claim, State Law remedies are available and may be addressed by the Court through diversity.

**Conclusion**

Plaintiff has satisfied all the requirements under Rule 15(d) for amending the Complaint. In turn, Defendants have made another motion to dismiss based upon the Amended Complaint. As the AC cures the defects set forth by the Court, Plaintiff respectfully requests the Court to

grant leave to file the Amended Complaint, set a deadline for Defendants answer, open discovery and schedule a conference for adoption of a revised Case Management Plan.

DATED: Bedford Hills, New York
October 30, 2025

DICHTER LAW, LLC

/Joel R. Dichter/

Joel R. Dichter, Esq.
Dichter Law, LLC
483 Cherry Street, Suite 100
New York, NY 10507
Telephone: (212) 593-4202
Fax: (212) 994-5394
*(pro hac vice)*

Attorneys for Plaintiff
Psychic Readers Network, Inc.

**CERTIFICATION OF WORD COUNT**

I HERBY CERTIFY that I performed a word count of the foregoing Reply Memorandum in Support of Motion to Amend the Complaints utilizing the word count feature of Word. The resulting word count is less than the 3,500 permitted for a reply. The word count is 3,271 excluding the signature block and certifications.

/Joel R Dichter/

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of October 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will generate and serve a Notice of Electronic Filing to the following:

/Joel R. Dichter/

Joel R. Dichter